JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
Mayor and City Council of Baltimore; and the Police Department of Baltimore City

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   **Baltimore City**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
United States Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                            *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 14141; 42 U.S.C. § 2000d; 42 U.S.C. § 3789d; 42 U.S.C. §§ 12131–12134

Brief description of cause:
Suit to remedy a pattern or practice of conduct by law enforcement officers that violates federal law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See Instructions):*
JUDGE _____        DOCKET NUMBER _____

DATE
01/12/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff; <br><br> v. <br><br> POLICE DEPARTMENT OF BALTIMORE CITY <br><br> and <br><br> MAYOR AND CITY COUNCIL OF BALTIMORE, <br><br> Defendants. | Civil Action No. ___ |

**COMPLAINT**

The United States of America ("United States") brings this action against the Police

Department of Baltimore City and the Mayor and City Council of Baltimore to remedy a pattern

or practice of conduct by law enforcement officers that deprives persons of rights, privileges, and

immunities secured and protected by the Constitution and laws of the United States.  The United

States brings this action under the Violent Crime Control and Law Enforcement Act of 1994,

42 U.S.C. § 14141, Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d ("Title VI"), the

Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d ("Safe Streets Act"),

and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131–12134 ("Title

II").

**JURISDICTION AND VENUE**

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 2201.

2.  The United States is authorized to initiate this suit under the Violent Crime Control and

    Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("§ 14141"), Title VI of the 1964 Civil

    Rights Act, 42 U.S.C. § 2000d, the Safe Streets Act, 42 U.S.C. § 3789d, and Title II of

    the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134.

3.  Under § 14141, the United States is authorized to bring suit against a state or local

    government in order to eliminate a pattern or practice of conduct by law enforcement

    officers that deprives persons of rights, privileges or immunities secured or protected by

    the Constitution or federal law.

4.  The United States is authorized to enforce Title VI, which, together with relevant

    implementing regulations, prohibits discrimination on the basis of race by recipients of

    federal financial assistance.

5.  The United States is authorized to enforce the Safe Streets Act, which, together with

    relevant implementing regulations, prohibits discrimination on the basis of race by

    recipients of funds from the U.S. Department of Justice.

6.  The United States is authorized to enforce Title II, which requires reasonable

    modifications to avoid discrimination against individuals with disabilities.

7.  Declaratory and injunctive relief is sought as authorized by § 14141, Title II, Title VI,

    and the Safe Streets Act, 28 U.S.C. §§ 2201 and 2202.

8.  Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b).  Defendants

    are located or reside in the District of Maryland, and the events giving rise to this claim

    occurred in Baltimore, within the District of Maryland.

**PARTIES**

9.  Plaintiff is the United States of America.

10. Defendant Police Department of Baltimore City ("BPD") is the primary law enforcement agency within the City.

11. Defendant Mayor and City Council of Baltimore ("the City") is a municipality located within the District of Maryland.  The City of Baltimore is a local government within the meaning of 42 U.S.C. § 14141.  The City is responsible for funding BPD and for the acts or omissions of BPD.

## FACTUAL ALLEGATIONS

12. BPD is the chief law enforcement agency in Baltimore and has jurisdiction throughout the City.

13. BPD employs approximately 3,000 personnel, including approximately 2,600 sworn officers.  BPD's jurisdiction is divided geographically among nine police districts that include local police stationhouses, referred to as district headquarters.

14. During the course of conduct described in this Complaint, Defendants have received federal financial assistance from the United States Department of Justice, either directly or through another recipient of federal financial assistance.

15. As a condition of receiving federal financial assistance, the City and BPD certified that they would comply with all requirements imposed by Title VI and the federal regulations implementing Title VI.  The assurances signed by the City bind subsequent recipients, including BPD to which the City disburses the funds.  The City and BPD are responsible for ensuring that BPD complies with the requirements of Title VI and its implementing regulations.

16. During the course of conduct described in this Complaint, Defendants have received
    funds from the Office of Justice Programs ("OJP") that are subject to the requirements of
    the Safe Streets Act.

17. As a condition of receiving OJP grants, the City and BPD certified that they would
    comply with all requirements imposed by the Safe Streets Act.

18. There is longstanding recognition of the need to reform BPD to ensure that BPD officers
    do not violate the constitutional rights of City residents.

19. In the late 1990s, BPD adopted zero tolerance policing strategies that prioritized officers
    making large numbers of stops, searches, and arrests for misdemeanor offenses without
    ensuring robust oversight to hold officers accountable for misconduct and protect the
    constitutional rights of City residents.  Current BPD Commissioner Kevin Davis and his
    predecessor, Anthony W. Batts, have both acknowledged publicly that this approach
    eroded community trust and impeded efforts to build partnerships that are central to
    effective policing.

20. Following the April 2015 death of Freddie Gray in police custody, Baltimore Mayor
    Stephanie Rawlings-Blake asked the United States Department of Justice, Civil Rights
    Division, to conduct a pattern-or-practice investigation of BPD's police practices.  The
    Civil Rights Division announced that it would conduct a pattern-or-practice investigation
    on May 8, 2015, and issued a Findings Report on August 10, 2016.

21. BPD engages in a pattern or practice of conduct that violates the Constitution and federal
    laws.  These violations include the following:

    a.  Making unconstitutional stops, searches, and arrests, in violation of the Fourth
        and Fourteenth Amendments;

      b.   Using excessive force, in violation of the Fourth Amendment.

      c.   Retaliating against individuals engaging in constitutionally-protected expression, in violation of the First Amendment.

      d.   Using enforcement strategies that disproportionately impact African Americans, in violation of Title VI, the Title VI implementing regulations, 28 C.F.R. §§ 42.101-112, and the Safe Streets Act and its implementing regulations.

      e.   Failing to make reasonable modifications to their practices regarding the use of force against individuals with disabilities, in violation of Title II.

22. BPD's violations of the Constitution and federal law are driven by BPD's practices – systemic deficiencies in policies, training, supervision, and accountability structures. Defendants have been aware of these structural challenges for many years, but have not taken adequate steps to comply with the Constitution and federal law.

**A.     Defendants' Unconstitutional Stops, Searches, and Arrests**

23. BPD engages in a pattern or practice of making unlawful stops, searches, and arrests in violation of the Fourth and Fourteenth Amendments.

24. BPD officers engage in a pattern of making stops without the individualized, reasonable suspicion of wrongdoing required by the Fourth Amendment. Officers frequently make stops without identifying reasonable suspicion, including stopping individuals standing on sidewalks or street corners without any indication that the individuals are connected to unlawful activity.

25. Only a small fraction of BPD's stops uncover involvement in criminal activity and result in a citation or arrest. BPD officers issued a criminal citation or made an arrest in only 3.7 percent of the more than 300,000 pedestrian stops documented from 2010-2015.

26. During stops, BPD officers conduct searches without probable cause and weapons frisks without reasonable suspicion that a person is armed.

27. BPD officers also conduct unconstitutional strip searches.  In some cases, BPD has conducted strip searches prior to arrest, without any exigent circumstances requiring the search, and/or in public view.

28. BPD makes arrests that are not supported by probable cause.  From November 2010–July 2015, supervisors at Baltimore's Central Booking released 6,736 arrestees without charge.  Prosecutors from the State's Attorney's Office declined to charge an additional 1,983 cases because the underlying arrests lacked probable cause.

29. In other cases, BPD detains individuals for significant periods of time for investigation without having the probable cause required to do so.

30. BPD likewise makes unconstitutional arrests pursuant to City ordinances banning trespassing and loitering.  BPD applies these ordinances in a manner that violates the Fourteenth Amendment's Due Process Clause.  BPD arrests individuals for "trespassing," "loitering," or failing to obey an officer's instruction to stop trespassing or loitering, where the arrested individuals are merely standing on public streets or sidewalks near publicly-owned property or private businesses.

### B.      Defendants' Discriminatory Policing

31. BPD engages in a pattern or practice of discrimination, through its use of enforcement strategies and other practices, that violate Title VI and the Safe Streets Act, which prohibit police practices that create an unjustified disparate impact based on race and other demographic factors.

32. For many years, BPD has employed policing strategies in certain Baltimore neighborhoods that emphasize officers making large numbers of stops, searches, and arrests, often for non-violent misdemeanor offenses, and with minimal supervisory review.  These tactics disproportionately impact African Americans.

33. BPD stops African Americans at higher rates than people of other racial backgrounds in each of its nine police districts.

34. During stops, BPD searches African Americans more often than similarly-situated non-African Americans, even though searches of African Americans were less likely to find contraband.  Racial disparities in search rates persist after controlling for non-racial factors relevant to whether an officer conducts a search.  These rates indicate that officers apply a lower threshold of suspicion when deciding to search African Americans during pedestrian and vehicle stops.

35. There are also racial disparities in BPD's warrantless arrests for misdemeanor offenses, including disorderly conduct, making a false statement, hindering or obstruction, and misdemeanor trespassing.  For each of these offenses, BPD arrests African Americans at disproportionate rates and reviewing officials are more likely to decline charges filed against African American arrestees.

36. BPD disproportionately arrests African Americans for drug possession offenses compared to similarly situated people of other racial backgrounds.  BPD charges African Americans for drug possession offenses at approximately five times the rate it files drug charges against people from other racial backgrounds.  This difference is not attributable to differences in drug usage rates among different racial groups.

37. These racial disparities are driven in part by deficient policies, training, supervision, and accountability.

38. BPD did not institute a "Fair and Impartial Policing" policy until 2015, leaving officers without guidance on how to lawfully perform their duties in an impartial manner. In some cases, BPD supervisors have encouraged racial profiling directly.

39. BPD officers have also used racial slurs and other derogatory language to address or refer to African Americans. When BPD has received complaints about such conduct, it has often misclassified or failed to investigate them.

40. In many cases, BPD investigators make comments during sexual assault investigations showing undue skepticism of victims' accounts and fail to collect available evidence that could corroborate them.

**C.     Defendants' Use of Excessive Force**

41. BPD engages in a pattern or practice of using force that is objectively unreasonable under the circumstances in which the force is applied, including the threat posed by the suspect and the severity of the alleged underlying crime, in violation of the Fourth Amendment.

    a) BPD uses ineffective tactics that escalate encounters, leading to the use of physical force when it is not necessary to resolve an incident.

    b) BPD uses unreasonable force against people who present little or no threat to them or others. For example, officers have used unreasonable force against individuals who are already restrained or who are fleeing away from officers.

    c) BPD uses unreasonable force against juveniles without applying accepted tactics to account for the age and developmental status of the youth they encounter.

    d) BPD uses unreasonable force against individuals with mental health disabilities.

e) In the use of force against individuals with mental health disabilities, BPD officers fail to make reasonable modifications necessary to avoid discrimination in violation of Title II of the Americans with Disabilities Act.

f) BPD also use unreasonable force against individuals in crisis.

g) BPD frequently escalates encounters with unarmed individuals with mental health disabilities and those in crisis, resulting in officers using unreasonable force. When responding to calls to escort individuals to the hospital for mental health treatment, BPD officers often use force if the individual does not follow officers' commands, even though the individuals have committed no crime and present no significant threat to officers or other members of the public.

h) BPD also subjects individuals to significant risk of harm by using deficient practices for transporting them.

i) BPD has not consistently secured detainees transported in vans or monitored detainees during transport.  For example, a 2012 BPD audit found that none of the 34 arrestees were secured with seatbelts.

j) BPD's failure to secure detainees during transport has resulted in serious injuries and death.

42. The repeated use of unreasonable force against individuals with mental health disabilities reveals that BPD fails to make reasonable modifications necessary to avoid discrimination in violation of Title II of the Americans with Disabilities Act.

43.  Under the ADA, training BPD officers on how to interact with individuals with mental health disabilities is a reasonable modification to policies, practices, and procedures to afford people with mental health disabilities the equal opportunity for a police

intervention that is free from unreasonable force.  BPD has failed to provide the

necessary training, however, resulting in BPD officers often resorting too quickly to

using force against individuals with mental health disabilities.

**D.     Defendants Retaliate Against Individuals Who Engage in Constitutionally-Protected Speech**

44. BPD arrests, detains, uses force, and otherwise retaliates against individuals who criticize

BPD or engage in other constitutionally-protected expression.

45. BPD stops and arrests individuals for speech that officers perceive to be rude, critical, or

disrespectful.

46. In addition, BPD interferes with individuals attempting to lawfully record police activity.

BPD officers seize recording devices without a warrant or probable cause, order

individuals to stop recording, and retaliate against individuals filming police activity.

**E.     BPD's Violations of the Constitution and Federal Law Are Rooted in Systemic Deficiencies in Supervision and Accountability**

47. Defendants' use deficient policies, training, supervision, and accountability systems

contributes to BPD's violations of the Constitution and federal law.  Defendants have

been on notice of these deficiencies for years, but have not implemented sufficient

reforms to ensure constitutional policing.

48. Defendants fail to supervise officers effectively or hold them accountable for misconduct,

contributing to a pattern of police actions that violate the Constitution and federal law.

49. BPD fails to adequately train and supervise its officers.  This deficiency manifests itself

in multiple ways, including a failure to guide officer activity through effective policies

and training; a failure to collect and analyze reliable data to supervise officer enforcement

activities; and the lack of a meaningful early intervention system  to identify officers who

may benefit from additional training or other guidance to ensure that they do not commit

constitutional violations.

50. BPD's accountability systems are not sufficient to deter misconduct.  BPD does not

consistently classify, investigate, adjudicate, and document complaints of misconduct.

51. In some cases, BPD improperly classifies complaints as alleging only minimal

misconduct, resulting in minimal investigation and accountability.

52. BPD also lacks external oversight to curb its pattern or practice of unconstitutional

policing.  The City-funded Civilian Review Board ("CRB") has statutory authority to

investigate certain types of complaints and make non-binding recommendations to BPD,

but the CRB lacks sufficient authority, staff, and funding to provide meaningful oversight

and accountability.

53. Together, these failures prevent BPD from deterring, identifying, and correcting

misconduct that contributes to a pattern or practice of violating the Constitution and

federal laws.


## FIRST CLAIM FOR RELIEF

**DEFENDANTS' PATTERN OR PRACTICE OF CONDUCT DEPRIVES
INDIVIDUALS OF RIGHTS, PRIVILEGES, AND IMMUNITIES SECURED BY
THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS
TITLE II, TITLE VI, AND THE SAFE STREETS ACT,
IN VIOLATION OF § 14141**

54. The United States re-alleges and incorporates by reference all the allegations set forth

above.

55. The First Amendment to the United States Constitution, applied to the states through the

Fourteenth Amendment, provides in pertinent part that "Congress shall make no law . . .

abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . . ."

56. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

57. Section II of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction equal protection of the laws."

58. Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  Defendants are public entities subject to Title II of the ADA, 42 U.S.C. § 12131(1).  Defendants violate the ADA by repeatedly failing to make reasonable modifications necessary to avoid discrimination against individuals with mental health disabilities.

59. Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Defendants receive federal financial assistance and are subject to Title VI requirements.

60. The Safe Streets Act provides that "[n]o person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this title." Defendants receive funding from the U.S. Department of Justice and is subject to the Safe Streets Act requirements.

61. By the actions set forth above, Defendants and their agents, including BPD officers, have engaged and continue to engage in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act, Title VI of the Civil Rights Act of 1964, and the Safe Streets Act, in violation of 42 U.S.C. § 14141.

62. Unless restrained by this Court, Defendants will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm to the people of Baltimore.

## SECOND CLAIM FOR RELIEF

### DEFENDANTS' LAW ENFORCEMENT ACTIVITIES VIOLATE TITLE VI

63. The United States re-alleges and incorporates by reference all the allegations set forth above.

64. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

65. Defendants received and continue to receive federal financial assistance for its programs and activities that are subject to the requirements of Title VI and its implementing regulations.

66. Defendants have engaged in law enforcement practices, including stops, searches, arrests, and uses of force, that have an adverse disparate impact on African Americans and that are unnecessary to achieve non-discriminatory objectives.

67. The United States has determined that all administrative requirements have been exhausted and that securing compliance from the Defendants cannot be achieved without a court order.

68. Defendants' discriminatory law enforcement practices violate Title VI.

**THIRD CLAIM FOR RELIEF**

**DEFENDANTS' LAW ENFORCEMENT ACTVITIES VIOLATE
THE SAFE STREETS ACT**

69. The United States re-alleges and incorporates by reference all the allegations set forth above.

70. The Safe Streets Act provides that "[n]o person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this title."

71. Defendants received and continue to receive funds from the Office of Justice Programs that are subject to the Safe Streets Act.

72. Defendants have engaged in a pattern or practice of law enforcement practices, including

stops, searches, arrests, and uses of force, that have an adverse disparate impact on

African Americans and that are unnecessary to achieve non-discriminatory objectives.

73. The United States has determined that all administrative requirements have been

exhausted and that securing compliance from the Defendants cannot be achieved without

a court order.

74. Defendants' discriminatory law enforcement practices violate the Safe Streets Act.

## FOURTH CLAIM FOR RELIEF

### DEFENDANTS VIOLATE TITLE II OF THE
### AMERICANS WITH DISABILITIES ACT

75. The United States re-alleges and incorporates by reference all the allegations set forth

above.

76. Title II of the Americans with Disabilities Act provides that "no qualified individual with

a disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity."

77. Defendants are public entities subject to Title II of the ADA, 42 U.S.C. § 12131(1).

78. Defendants repeatedly fail to make reasonable modifications necessary to avoid

discrimination against individuals with mental health disabilities.

79. The United States has determined that all administrative requirements have been

exhausted and that securing compliance from the Defendants cannot be achieved without

a court order.

80. Defendants' actions constitute discrimination in violation of Title II of the ADA,

42 U.SC. § 12132, and its implementing regulations, 28 C.F.R. 35.

**PRAYER FOR RELIEF**

81. WHEREFORE, the United States asks that the Court:

    a.  Declare that Defendants, their officers, agents, and employees have engaged in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, in violation of § 14141;

    b.  Declare that Defendants, their officers, agents, and employees have violated Title VI;

    c.  Declare that Defendants, their officers, agents, and employees have violated the Safe Streets Act;

    d.  Declare that Defendants, their officers, agents, and employees have violated Title II of the ADA;

    e.  Enjoin Defendants, their officers, agents, and employees from engaging in any of the predicate acts forming the basis of the pattern or practice of conduct and violations of Title VI and the Safe Streets Act;

    f.  Order Defendants, their officers, agents, and employees to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein, and to prevent Defendants, their officers, agents, and employees from depriving persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States; and

    g.  Order such other appropriate relief as the interests of justice may require.

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

ROBERT J. MOOSSY
Deputy Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief, Special Litigation Section
Civil Rights Division

TIMOTHY D. MYGATT
Deputy Chief, Special Litigation Section
Civil Rights Division

PUNEET CHEEMA
MICHAEL J. SONGER
MAUREEN JOHNSTON
SETH WAYNE
Trial Attorneys, Special Litigation Section
Civil Rights Division
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 514-2000