**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>        v.<br><br>POLICE DEPARTMENT OF BALTIMORE<br>CITY, *et. al.*,<br><br><br>                              Defendants. | Civil Action No. ___ |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR ENTRY OF
CONSENT DECREE**

Plaintiff, the United States of America ("United States"), and Defendants, the Police

Department of Baltimore City ("BPD") and the Mayor and  City Council of Baltimore (the

"City"), (collectively "the Parties"), have agreed upon and jointly move the Court to approve and

enter the attached Consent Decree as an Order of this Court.  The Consent Decree would resolve

litigation initiated by the United States with the concurrent filing of a Complaint pursuant to the

Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, Title VI of the

1964 Civil Rights Act, 42 U.S.C. § 2000d ("Title VI"), and the Omnibus Crime Control and Safe

Streets Act of 1968, 42 U.S.C. § 3789d ("Safe Streets Act").  The Parties seek entry of this

Decree to ensure that the agreed-upon comprehensive measures to reform BPD are implemented

fully and faithfully.  As set forth in Paragraphs 504-510 of the attached Decree, the Parties

request that the Court retain jurisdiction over the Decree for the purpose of enforcing its terms

until Defendants have achieved Full and Effective Compliance as defined by the Agreement and maintained that compliance in accordance with Paragraph 504.

In its Complaint, the United States alleges that Defendants violate the First, Fourth and Fourteenth Amendments to the United States Constitution; Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134 ("Title II"); Title VI; and the Safe Streets Act.  The Defendants make no admission of any current or past pattern or practice or individual instance of unlawful conduct as alleged in the United States' complaint, but enter into this Consent Decree with the goal of addressing the policies, procedures, training, and oversight that the United States alleges contribute to a pattern or practice of constitutional violations.  The Parties additionally believe that it is in the public interest to fully and finally resolve this matter on mutually agreeable terms without resort to protracted litigation.  The Parties hereby agree and stipulate to the Court's entry of all aspects of this Consent Decree in resolution of the United States' complaint against the City.

## I.     Background

The United States Department of Justice's Civil Rights Division opened a civil pattern-or-practice investigation of BPD in May 2015.  Following the investigation, the United States issued a report detailing its investigative findings on August 10, 2016 ("Findings Report"). [1]  The United States found that it has reasonable cause to believe that BPD engages in a pattern or practice of conduct that deprives persons of rights protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution, and by federal statutory law.  Also on August 10, 2016, the United States and the City entered into an Agreement in Principle that outlined the reforms necessary to address the United States' findings.  Following the announcement of the

---

[1] A copy of the Findings Report is available at https://www.justice.gov/crt/case-document/baltimore-police-department-findings-report.

investigative findings and the Agreement in Principle, the Parties engaged in extensive negotiations to address and resolve the United States' findings.  Additionally, the Parties solicited significant input from residents, BPD employees, stakeholders, advocacy groups, and others to inform the negotiation process.  Considering this input, the negotiations have resulted in the attached Consent Decree, an agreement that mandates reforms of BPD to remedy the constitutional and federal statutory violations alleged in the Complaint.  The Parties intend through this settlement to ensure that police services are delivered to the people of Baltimore in a manner that complies with the Constitution and laws of the United States, promotes public and officer safety, and improves public confidence in law enforcement.

## II.     Discussion

Entry of the Consent Decree is appropriate because the Agreement is fundamentally fair, adequate, and reasonable, is not the product of collusion, and is in the mutual interest of the Parties and the public.  "In considering whether to enter a proposed consent decree, a district court should be guided by the general principle that settlements are encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999).  Additionally, "where a government agency charged with protecting the public interest has pulled the laboring oar in constructing the proposed settlement, a reviewing court may appropriately accord substantial weight to the agency's expertise and public interest responsibility." *American Canoe Ass'n v. United States EPA*, 54 F.Supp. 2d 621, 625 (E.D.V.A. 1999), quoting *Bragg v. Robertson*, 54 F.Supp. 2d 653 (S.D.W. Va. 1999) (internal quotation marks omitted.).  *See also Maryland v. GenOn Ash Mgmt., LLC*, 2013 U.S. Dist. LEXIS 81623 at *4 (D. Md. June 10, 2013) ("[W]hen a settlement has been negotiated by a specially equipped agency, the presumption in favor of settlement is particularly strong.").

In determining whether to accept the terms of a proposed consent decree, a court must "satisfy itself that the agreement is fair, adequate, and reasonable and is not illegal, the product of a collusion, or against the public interest." *North Carolina*, 180 F.3d at 581, quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991). The assessment does not require the court to conduct "a trial or a rehearsal of the trial," and the court need not "reach any dispositive conclusions" about "admittedly unsettled legal issues" in the case. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) (quotation marks and citations omitted). This assessment considers "the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement." *Carson v. American Brands, Inc.*, 606 F.2d 420, 430 (4th Cir. 1979) (*en banc*) (Winter, Circuit Judge, dissenting), adopted by *Carson v. American Brands, Inc.*, 654 F.2d 300, 301 (4th Cir. 1981) (*en banc*) (*per curiam*).

Consistent with these requirements, the attached Consent Decree is fair, adequate and reasonable; is not illegal; was not produced by collusion; and is in the public interest. Moreover, the Consent Decree is the product of an investigation conducted by a federal agency with responsibility to the public interest and expertise in constitutional and effective law enforcement. The Consent Decree offers the best path forward for the reform of BPD and promotion of lawful and effective policing in Baltimore.

## A.  The Consent Decree is Fair, Adequate and Reasonable

The Consent Decree is fair, adequate, and reasonable. The Special Litigation Section of the Civil Rights Division of the United States Department of Justice ("Special Litigation") is tasked with enforcement of Section 14141, forbidding law enforcement officers from engaging in a pattern or practice "that deprives persons of rights, privileges, or immunities secured or

protected by the Constitution or laws of the United States." 42 U.S.C. § 14141. In order to do so, Special Litigation, like other federal oversight agencies, "employ[s] individuals specially trained and familiar with the relevant … disciplines and governing law." *United States v. E.I. DuPont de Nemours & Co.*, 2015 U.S. Dist. LEXIS 129298 at *11 (S.D.W. Va. 2015), quoting *United States v. Patriot Coal Corp*, 2009 U.S. Dist. LEXIS 37304 at *5 (S.D.W. Va. 2009). The negotiation team for the United States included experienced Special Litigation attorneys, who collectively have decades of experience in federal oversight of law enforcement agencies. Additionally, throughout the investigation and negotiation process, the United States consulted with subject matter experts to assess the extent of concerns and ensure that each remedial measure in the Consent Decree is tailored to address these concerns and may be reasonably implemented by the Defendants. The negotiation team for Defendants also included highly experienced attorneys and experts on law enforcement in Baltimore. The extensive and detailed reforms in the Consent Decree are a product of the expertise of the Parties and their consultants.

The Consent Decree is based on findings developed by the United States during a thorough review of BPD's policies, practices, and conduct. With the full cooperation of BPD and the City, the United States conducted a comprehensive investigation into BPD's policing practices over the course of fifteen months. During the investigation, the United States reviewed an extensive set of documents, including all relevant policies and training materials used by BPD since 2010, thousands of case files of force incidents, incident reports describing stops, searches, and arrests, investigative files for sexual assaults, and analyzed data on BPD enforcement activities.. The United States also met with hundreds of officers, community members, city leaders, and other stakeholders. Following the investigation, the United States issued a 163-page report concluding that it had reasonable cause to believe that BPD and its officers engaged in a

pattern or practice of violating the Constitution and laws of the United States.  The thoroughness

of the United States' investigation ensures that the proposed settlement is well-founded.  Thus,

although this settlement comes early in the litigation process, it is the culmination of an extensive

investigatory process that created a finding supporting the fairness, reasonableness, and

adequacy of the Decree and informed its specific provisions.

The Consent Decree is also fair, reasonable, and adequate as it is the product of

significant community input.  During its investigation, the United States convened meetings at

churches and with religious leaders; meetings with advocacy and community support

organizations; attended a variety of neighborhood gatherings; canvassed neighborhoods on foot;

and met individually with persons who contacted the United States to share information.  The

United States also relied on information gained from police officers and police union

representatives. After release of the investigative findings and announcement of the Agreement

in Principle, the Parties solicited community input and convened and attended community

meetings and town halls to hear directly from members of the Baltimore community about their

ideas and expectations for the Consent Decree.  During the month-long community input period,

the Parties received dozens of written submissions from individuals and organizations, and heard

from hundreds of stakeholders and other persons with interest in the outcome of this process. The

Parties have continued to accept community submissions and attend meetings after the expiration

of the input period.  The Baltimore community's diverse views, opinions, and suggestions were

critical to the Parties' understanding of the need for reform and played a significant role in

shaping the final product.  Many of the Consent Decree's specific provisions were created,

inspired, or influenced by community submissions.

In order to ensure that the Consent Decree's fairness, adequacy, and reasonableness persist over time, it provides for independent oversight in the form of a Monitor, selected by the Parties and approved by the Court, to assess the City and BPD's efforts at implementing the Decree and provide technical assistance to the BPD to help ensure that its efforts are carried out efficiently and successfully. The Monitor will save the time and resources of both the Parties and the Court, provide the public with an objective and independent assessment of the status of the Consent Decree's implementation, and determine whether this implementation is achieving the underlying objective of constitutional policing in Baltimore.

## B.  The Consent Decree Is Not the Product of Collusion

Having received extensive community input, the Parties negotiated in good faith in order to reach agreement on numerous reforms to BPD's existing policies, practices, and procedures, as well as its training, oversight, and accountability structures, that sufficiently address the concerns of the United States set forth in its investigative findings and Complaint. The process by which the Parties reached agreement on the Consent Decree's provisions demonstrates that it is not the product of collusion.

Negotiations over the Consent Decree began shortly after the United States issued its Findings Report on August 10, 2016, and included over four months of intensive in-person meetings, telephone conferences, and e-mail exchanges. Throughout the negotiations the Parties were represented by experienced counsel and representatives who are intimately familiar with BPD's policing practices, the City's structure and resources, and the Justice Department's findings. This adversarial posture during negotiations, as well as the degree to which discussions were informed by the expertise of the Parties, their consultants, and community

members, provide further assurance that the Consent Decree meets the legal requirements of a settlement.

### C.        The Consent Decree Is in the Public Interest

The Consent Decree is consistent with the objectives of Section 14141 and federal statutory law and is in the public interest.  As stated above, Section 14141 prohibits law enforcement officers from engaging in a pattern or practice "that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 42 U.S.C. § 14141(a).  Where the United States has reasonable cause to believe that a pattern or practice of unlawful conduct is occurring, Congress has authorized the United States to initiate a civil action to obtain appropriate equitable and declaratory relief sufficient to "eliminate the pattern or practice." 42 U.S.C. § 14141(b); *see also* H.R. REP. NO. 102-242, pt. 1, at 137 (1991). Title VI, together with relevant implementing regulations, prohibits discrimination on the basis of race, color, or national origin by agencies receiving federal funds or federal financial assistance.  42 U.S.C. § 2000d.  The Safe Streets Act prohibits discrimination on the basis of race, color, religion, national origin, or sex in connection with certain federally-funded programs. 42 U.S.C. § 3789d(c)(1). The ADA prohibits discrimination on the basis of disability in all services, programs, and activities provided by State and local government entities.  Together, these constitutional and statutory rules provide a framework that protects the public from detrimental law enforcement practices.

The Consent Decree's substantive conditions are designed to address the unlawful conduct that the United States has alleged in violation of these rules, as well as its underlying causes. The proposed Consent Decree before the Court is consistent with the public interest because it requires BPD to reform its practices and deliver police services in a manner that is

fair, effective, and consistent with legal requirements.  Through the proposed Consent Decree,

Defendants commit to develop, implement and/or refine their policies, training, and practices in

response to the deficiencies identified in the United States' investigative findings.

The Consent Decree is an appropriate resolution of the issues raised by DOJ's findings,

because voluntary compliance with a negotiated agreement entered as a consent decree is more

likely to expediently accomplish agreed-upon goals than forced compliance with orders imposed

at the end of contested, protracted, and costly litigation.  Indeed, the United States' investigation

and the Defendants' initiative have already set in motion a process of reform within BPD.

Throughout the investigation and subsequent negotiations, the City and BPD leadership have

taken steps to implement reforms in anticipation of those required by this proposed Consent

Decree, and expressed a commitment to improve BPD's performance and develop community

trust in law enforcement.  The Consent Decree will assist the Defendants in achieving those

goals.

The Consent Decree is in the interest of the Parties and the public as it establishes the

basis for undertaking reform efforts within BPD for the express purpose of better promoting

effective community engagement and oversight, effective policy guidance, improved training,

closer supervision, and improved technology and resources.  The Consent Decree will promote

better support for officers, as well as accountability systems that will make investigations of

alleged misconduct and discipline more fair, constructive, and transparent.  Perhaps most

importantly, the Consent Decree seeks to substantively improve the relationships among BPD

and the diverse communities it serves. Settling this matter in this way thus allows the Parties to

work together to implement reforms within BPD without the unnecessary delay or expense of

complex litigation.  The Consent Decree serves the public interest by allowing the Parties to

expeditiously work to implement and continue reforms that will lead to a constitutional, lawful, and effective police department for the City of Baltimore.

### III.    The Parties Request that the Court Hold a Public Hearing Before Acting on the Decree

As discussed above, in drafting the proposed Consent Decree, the Parties solicited and received extensive community input.  The Parties have continued to conduct meetings with stakeholders for the purpose of obtaining their input throughout the negotiation process.  Having received submissions representing Baltimore's diverse communities and including a diverse array of viewpoints has strengthened the negotiation process and contributed to ensuring the Consent Decree is fair, reasonable, and adequate.  Nonetheless, given the important public interests involved in this matter, the Parties believe that allowing community stakeholders to provide their views regarding the finalized proposed Consent Decree will be of assistance to the Court.  Accordingly, the Parties request that the Court provide an opportunity for members of the public and stakeholders throughout Baltimore to provide written submissions to the Court and the Parties about the proposed Consent Decree, and then hold a hearing on the finalized proposed Consent Decree.  The Parties make this request recognizing that such a hearing is not required, as it would be if this were a settlement resolving a class action.  *Compare* Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fear, reasonable, and adequate."), *with Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 323 (1980) (holding Rule 23 not applicable to enforcement actions brought by the EEOC in its own name and pursuant to its authority to prevent unlawful employment practices).

Should the Court agree to written submissions and a hearing, the Parties request the opportunity to provide their views to the Court on the format of such a hearing at the Court's

earliest convenience.  The Parties will meet and confer in an effort to agree upon and jointly

submit to the Court a proposed format for such a hearing.

**IV.    Conclusion**

For the foregoing reasons, the Parties respectfully move this Court to enter the Consent

Decree in its entirety as an Order of the Court.

Respectfully Submitted,

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

_s/ Seth Wayne_
TIMOTHY D. MYGATT
Deputy Chief
MICHAEL J. SONGER
PUNEET CHEEMA
MAUREEN JOHNSTON
SETH WAYNE
Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Ave NW
Washington, DC  20530

/s/_David E. Ralph_
DAVID E. RALPH (23500)
Acting City Solicitor

SUZANNE SANGREE (26130)
Chief Solicitor
BALTIMORE CITY DEPARTMENT OF LAW
100 North Holliday Street
Baltimore, Maryland 21202
Telephone: 410-396-3659
Attorneys for Defendants Mayor and City Council of Baltimore,
and the Police Department of Baltimore City