## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA, | * | |
| **Plaintiff** | * | |
| **v.** | * | CIVIL NO.  JKB-17-99 |
| BALTIMORE POLICE DEP'T *et al.*, | * | |
| **Defendants** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM  AND  ORDER

On January 12, 2017, the United States of America filed a complaint against the Baltimore Police Department ("BPD") and the Mayor and City Council of Baltimore City ("the City"). (ECF No. 1.)  The United States alleged Defendants had engaged in a pattern or practice of conduct by law enforcement officers that deprives persons of rights, privileges, and immunities secured and protected by the Constitution and laws of the United States.  The complaint was brought pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141; Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d; the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d; and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12134.

Also on January 12, 2017, the parties jointly filed a motion seeking entry of a consent decree to resolve litigation of the instant case (ECF No. 2); attached to the motion was a 227-page proposed consent decree (ECF No. 2-2).  Movants seek the consent decree to ensure that their agreed-upon measures to reform BPD are fully and faithfully implemented.  (Mot. Supp. Mem. 1, ECF No. 2-1.)  Defendants do not admit to any wrongdoing.  (*Id.* 2.)

I.

In considering Movants' request for entry of the decree, the Court turns first to the primary statute under which the United States is proceeding, 42 U.S.C. § 14141, which makes it "unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." § 14141(a). Further, the statute authorizes the Attorney General to bring a civil action to "obtain appropriate equitable and declaratory relief to eliminate the pattern or practice." § 14141(b).

The motion now before the Court reflects Movants' shared belief that the proposed consent decree grants such "appropriate equitable and declaratory relief." They "intend through this settlement to ensure that police services are delivered to the people of Baltimore in a manner that complies with the Constitution and laws of the United States, promotes public and officer safety, and improves public confidence in law enforcement." (Mot. Supp. Mem. 3.)

In *United States v. North Carolina*, 180 F.3d 574 (4th Cir. 1999), the United States Court of Appeals for the Fourth Circuit endorsed "the general principle that settlements are encouraged." *Id.* at 581. Even so, a district court should not blindly accept a proposed settlement's terms. *Id.* "Rather, before entering a consent decree the court must satisfy itself that the agreement 'is fair, adequate, and reasonable' and 'is not illegal, a product of collusion, or against the public interest.'" *Id.* (quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991)). In deciding whether a proposed settlement is fair and adequate, a district court is required to assess the strength of the plaintiff's case. *Id.* In making this assessment, a court need not conduct "'a trial or a rehearsal of the trial,'" but it must still "take the necessary steps to

ensure that it is able to reach 'an informed, just and reasoned decision.'" *Id.* (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975)). Factors bearing upon this determination include the extent of discovery that has occurred, the stage of the proceedings, the absence of collusion in the settlement, and the experience of counsel who negotiated the settlement on behalf of the plaintiffs. *Id.*

The Court has carefully studied Movants' submissions, including the full content of the proposed decree. Additionally, the Court conducted a preliminary hearing on February 1, 2017, in which the parties responded to the undersigned's inquiries. The Court has reviewed the deeply troubling report prepared by the Department of Justice and referred to in the memorandum in support of the joint motion asking that the proposed decree be entered. (ECF No. 2-1, pp. 5-6.) Also, the Court has received public comment in both written form (ECF Nos. 19 & 21) and in oral statements made at a public fairness hearing on April 6, 2017. No evidence has been presented to the Court, and no discovery has occurred as part of the instant litigation. Nor have Defendants admitted wrongdoing or liability. However, the strength of Plaintiff's case can be inferred from Defendants' evident cooperation in Plaintiff's investigation of Baltimore police practices and their ready embrace of a negotiated resolution of this case based upon that investigation, a resolution that is highly intrusive on the day-to-day operations of the BPD and that requires Defendants' commitment to spend millions of dollars. Furthermore, Movants represent to the Court that they have been well represented by experienced and knowledgeable counsel in this case and during their negotiations leading up to the filing of the proposed decree. (Mot. Supp. Mem. 5.) The Court is familiar with many of the attorneys representing the parties and cannot disagree. The lawyers appearing for the Government have been uniformly excellent. And, that such top-flight lawyers have negotiated and willingly

endorsed this agreement on the defense side in particular is further evidence that the United States has a strong case.  Those expert attorneys on the defense side would not have agreed to the proposed terms if they were not convinced of a real and powerful probability that the Police Department and the City would be found liable.

The undersigned has no handy yardstick to measure adequacy and claims no special expertise in that regard.  And whether the proposed decree succeeds in all its goals will be known only in hindsight.  But the Court reasonably relies upon the expertise underlying the proposed decree and judges the decree adequate to accomplish the reforms sought by Movants.  It is comprehensive, detailed, and precise.  It appears to be balanced and well-calibrated to achieve the parties' shared, jointly-stated objectives.  After close review of the proposed decree, and in light of all other submissions on the docket and in open Court, the Court concludes the decree is fair, adequate, and reasonable.  Moreover, nothing before the Court remotely suggests that the settlement is illegal or the product of collusion.  Finally, taking into account the submissions of the parties but also the written and oral statements of those members of the public who chose to address the Court, and reflecting on the certainty that there must be effective and constitutional policing in order for the City of Baltimore to thrive, the Court determines the proposed decree is in the public interest.

## II.

Substantially after the agreement settling this case was negotiated and signed by the parties, and just before the long-scheduled hearing to take the views of the public, the Government advised the Court in a motion seeking continuance of that hearing (ECF No. 23) that it requested additional time to "assess whether and how the provisions of the proposed consent decree interact with [certain post-agreement] directives of the President and the Attorney

General." (ECF No. 23, p. 4.)  However, none of the statements contained in the motion, or in the documents it references, help to address the questions now before the Court, *i.e.*, whether the parties' proposed decree is fair, adequate, reasonable, legal, non-collusive, and in the public interest.  *United States v. North Carolina*, 180 F.3d at 581.  The Government's recent motion can best be interpreted as a request for an additional opportunity to consider whether it wants the Court to enter the decree at all, or at least the current version of it.  During the public hearing on April 6 the Government explicitly asked for more time to consider the proposed decree.  But this is problematic.  The parties have already agreed to the draft before the Court.  It would be extraordinary for the Court to permit one side to unilaterally amend an agreement already jointly reached and signed.  Moreover, early in the Court's review of the joint motion, but after the new administration was in office in Washington, the Government affirmed its commitment to this draft and urged the Court to sign it.  (Tr. of Hrg. 7:10-24, ECF No. 20.)  The Defendants, for their part, continue to urge entry of the proposed decree, consistent with the earlier joint submission.  (Statement of Acting City Solicitor David Ralph in open Court, Hrg. on April 6, 2017, transcript not yet available.)

As between the parties, this case is settled.  All that remains is for the Court to make its determinations under *United States v. North Carolina*, and it has done so above.[1]  The case is no longer in a phase where <u>any</u> <u>party</u> is unilaterally entitled to reconsider the terms of the settlement; the parties are bound to each other by their prior agreement.  The time for negotiating the agreement is over.  The only question now is whether <u>the</u> <u>Court</u> needs more time to consider

---

[1] To the extent they are relevant at this point, the general statements in the Government's recent motion (ECF No. 23), which include little that ties them directly to facts and circumstances in Baltimore, do not persuade the Court at all that the comprehensive plan previously submitted by the parties is inappropriate or unlikely to address the challenges previously identified by the parties.  Nonetheless, if the Government later concludes that amendments to the decree are in order, they may attempt to so persuade the Defendants and/or the Court, invoking the process described in Paragraphs 489-503 of the decree.

the proposed decree.  It does not.  Last of all, the full record in this case, and especially the

public statements made in writing and during the recent hearing make clear that time is of the

essence.  The problems that necessitate this consent decree are urgent.  The parties have agreed[2]

on a detailed and reasonable approach to solving them.  Now, it is time to enter the decree and

thereby require all involved to get to work on repairing the many fractures so poignantly

revealed by the record.

III.

While reviewing the details of the proposed decree, the Court requested Movants to

define the term "permanent rank supervisor"; they responded by proposing the following

definition to be incorporated into the decree in Section XVIII, titled "Definitions":

> "Permanent Rank Supervisor."  A law enforcement officer of the BPD occupying
> the rank of Sergeant or above.

(ECF No. 15.)  The Court approves Movants' request and hereby orders the proposed decree is

modified accordingly.

---

[2] During the hearing on April 6, 2017, Government counsel noted that

> the new Attorney General and the new Department [of Justice] leadership have some grave
> concerns about this particular decree and whether it will in fact achieve the goals of promoting
> public safety and strengthening law enforcement while at the same time protecting civil rights.
> The new leadership is particularly concerned because there's been a recent spike in crime in
> Baltimore reported through some statistics.  And they want to make sure that any remedy that's
> entered and any reform that's undertaken will help rather than hinder the public safety.

(Statement of Deputy Assistant Attorney General John Gore in open Court, Hrg. on April 6, 2017, transcript not yet
available.)  Government counsel also noted that

> reasonable minds might differ as to whether this decree is the perfect way forward in this
> particular instance.

*Id.*

Surely no one can project a perfect solution for all that ails the City of Baltimore and the fraught relationship
between its citizens and its police department.  The larger point at this juncture is that there has been an
investigation, there has been a lengthy negotiation between the parties conducted by skilled and experienced
counsel, and that negotiation has yielded a detailed and seemingly reasonable agreement that all parties have signed.
There is no suggestion that when counsel for the parties signed their agreement that they did not have the full and
complete authority to bind their clients to its terms.  The time for expressing "grave concerns" has passed and
instead the parties must now execute the agreement as they promised they would.

In addition, the Court notes the "Joint Notice of Errata" filed by Movants that requests the following amendment to the decree in Paragraph 479:

> The Monitor will not be permitted to represent or work for any individual or organization in any criminal, civil, or administrative matter adverse to the City or BPD or the United States **Department of Justice, Civil Rights Division**, including any individual or organization designated as a witness, consultant, victim, defendant, subject, target, or person of interest, for the duration of the monitorship.

(ECF No. 6.)  The Court approves this request as well and hereby orders the proposed decree is modified to add the language in bold to Paragraph 479.

According to the terms of the proposed decree, the day the decree is approved and entered as an order of the Court is deemed the Effective Date.  (Proposed Decree, Section XVIII, ¶ 511(ff).)  The timeline submitted as Appendix A to the proposed decree shall be redrawn by the parties to reflect the incorporation of the Effective Date and shall be filed with the Court within fourteen days of the Effective Date for the Court's approval.

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Government's oral request for a thirty-day delay in entry of the Consent Decree is DENIED.

2. The Joint Motion for Entry of Consent Decree (ECF No. 2) is GRANTED.

3. The Consent Decree (ECF No. 2-2), as modified herein by the Court, is APPROVED AND ENTERED as an ORDER of the Court.

4. The Court shall RETAIN jurisdiction over the case until the Consent Decree is terminated.

DATED this 7th day of April, 2017.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge