# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-17-0099 |
| **BALTIMORE POLICE DEPARTMENT, et al.,** | * | |
| | * | |
| Defendants. | *** | |

## MEMORANDUM

On April 7, 2017, the Court issued an order approving the parties' jointly filed motion seeking entry of a consent decree (the "Decree" or "Consent Decree") to resolve litigation of the instant case. (Consent Decree, ECF No. 2-2, as modified by ECF No. 39.) Pursuant to the terms of the Consent Decree, the Court retains jurisdiction of this action until such time as the Court determines that the Baltimore Police Department ("BPD") has achieved "Full and Effective Compliance" with the terms of the Decree. (*Id.* at ¶493.) Now pending before the Court is the parties' Joint Stipulation to Amend Paragraphs 14, 33, and 67 of the Consent Decree. (ECF No. 85.) The Decree provides that the parties may jointly stipulate to make amendments to their agreement; however, any such changes are "subject to Court approval." (ECF No. 2-2, at ¶ 494.) Amendments "will be encouraged when the Parties agree . . . that the Agreement provision as drafted is not furthering the purpose of the Agreement, or that there is a preferable alternative that will achieve the same purpose." (*Id.*)

The parties now propose three such amendments, each of which involves modifying specific due dates set forth in the Consent Decree. First, the parties stipulate that the Community Oversight Task Force ("COTF") should be granted an additional three months to complete its

charge under the Consent Decree. The Decree mandates that COTF provide a public report with recommendations to improve civilian and community oversight of the Baltimore Police Department ("BPD") "within 11 months of the Effective Date." (ECF No. 2-2, at ¶ 14.) The Effective Date of the Consent Decree is the day it was approved and entered as an order of the Court—i.e., April 7, 2017. Thus, COTF's report is due on March 7, 2018, under the terms of the Consent Decree.

According to the parties, however, "granting COTF additional time until June 30, 2018, will result in a more comprehensive, high-quality report and recommendations to strengthen the civilian oversight system in Baltimore." (ECF No. 85, at 3.) The Court believes that all those charged with implementing the Consent Decree—including COTF—should move with all deliberate speed. By every indication, however, COTF has done just that. According to the parties, the nine members of COTF began meeting within the first month of their appointment on June 28, 2017. (*Id.*) Moreover, the parties state that COTF has "gathered information and conducted interviews with leaders and professionals in the field of civilian oversight and police accountability throughout the country." (*Id.*) COTF has now indicated that it needs additional time to "complete its review, develop its recommendations, and produce a public report as required by the Consent Decree." (*Id.*) In light of the parties' stipulation that COTF has been working diligently since its appointment, the Court sees no reason not to grant the parties' proposed amendment to the Consent Decree and allow COTF the time it needs to create a comprehensive public report of the findings gleaned from its extensive research. Accordingly, the parties' Joint Stipulation to Amend Paragraph 14 of the Consent Decree will be GRANTED.

The parties also stipulate that the Consent Decree should be modified to extend the date by which BPD must satisfy specific training requirements for officers set forth in paragraphs 33

and 67 of the Decree. Paragraph 33 addresses training on voluntary contacts between BPD officers and the public, and provides that:

> BPD supervisors will encourage officers to regularly communicate with members of the public, and the Department will develop training as set forth in the Training Matrix (Appendix A), to teach officers the best methods for such communications. Specifically, *within one year of the Effective Date of this Agreement*, BPD will provide training to all BPD officers that explains the value of proactive, community-oriented policing. The training will also teach officers skills and techniques that can be used to effectively engage in Voluntary Contacts aimed at building rapport with Baltimore residents.

(ECF No. 2-2, at ¶ 33 (emphasis added).) Paragraph 67 of the Decree addresses training on stops, searches, and arrests, and mandates that:

> BPD will provide all officers with training on Stops, Searches, and Arrests, including the requirements of this Agreement, of no fewer than 16 hours *within one year of the Effective Date* and at least 4 hours on an annual basis thereafter. Such training will be taught by a qualified legal instructor with significant experience in Fourth Amendment issues, and will address Fourth Amendment requirements and related law; BPD policies; and this Agreement's requirements regarding Investigatory Stops and Detentions, Searches and Seizures, and Arrests, including:
>
>     a. The difference between various police contacts by the scope and level of police intrusion; between probable cause, reasonable articulable suspicion and mere speculation; and truly voluntary and consensual encounters;
>
>     b. The facts and circumstances that may be considered in initiating, conducting, terminating, and expanding an Investigatory Stop or Detention;
>
>     c. The level of permissible intrusion when conducting Searches, such as "Pat Downs" or "Frisks";
>
>     d. The nature and scope of Searches based on the level of permissible intrusion on an individual's privacy interests, including Searches conducted pursuant to probation or parole release provisions;
>
>     e. The nature and scope of Searches incident to an Arrest;

> f. Procedures for executing Searches, including handling, recording, and taking custody of seized property or evidence;
>
> g. The effect that differing approaches to Stops, Searches, and Arrests can have on community perceptions of police legitimacy and public safety.

(ECF No. 2-2, at ¶ 67 (emphasis added).) The parties stipulate that they have agreed to amend both of the above paragraphs to provide that the required training shall be completed "according to the timeline specified in the Monitoring Plan," as opposed to "within one year of the Effective Date of this Agreement." (ECF No. 85, at 3–4.) In support of the proposed amendments, the parties note that "all deadlines for training other than those found in Paragraphs 33 and 67, are established by the Monitoring Plan," rather than the Decree itself. (*Id.* at 5.) They further stipulate that allowing the deadlines in Paragraphs 33 and 67 "also to be set by the Monitoring Plan will permit the Parties and the Monitor to ensure that training requirements are coordinated with other requirements of the Consent Decree, such as policy development and community policing." (*Id.*)

The Consent Decree is an order of the Court, and the Court is hesitant to extend any deadlines set by that order to the extent it can be avoided. That said, the Monitoring Plan—like the Consent Decree—will be a court order once approved, and therefore deadlines therein may be enforced by the Court to the same extent as if they were in the Decree itself. Moreover, the specific provisions at issue are anomalous, and the inclusion of these particular deadlines in the Decree as opposed to simply placing them in the Monitoring Plan seems inconsistent with the structure of the Consent Decree. As a general matter, the Consent Decree provides that the Monitoring Plan (both in the first and subsequent years) will set relevant deadlines for BPD to achieve compliance with the various reforms mandated by the Decree. This is true not only with respect to officer training reforms, but also with respect to the vast majority of other actions

required under the Decree. In this respect, the two paragraphs at issue are quite atypical: They set a hard deadline in the Decree itself for BPD to complete specific training requirements. Indeed, the parties contend that they always intended for the Monitoring Plan—not the Consent Decree—to establish a comprehensive schedule for all training requirements. And, as the parties note, setting deadlines in the Monitoring Plan will allow the parties to coordinate implementation of the training requirements at issue with related policy and training revisions. Perhaps most importantly, the deadlines at issue are impractical and ill-conceived, particularly in light of the significant amount of time and effort needed to develop, implement, and achieve full and effective compliance with the specific training reforms at issue.

For the foregoing reasons, the parties' Joint Stipulation to Amend Paragraphs 33 and 67 of the Consent Decree will be GRANTED AS MODIFIED herein by the Court.

The proposed First Year Monitoring Plan recently submitted to the Court for review provides a schedule for implementing training reforms on stops, searches, and arrests pursuant to Paragraph 67 of the Decree. (ECF No. 86, Ex. 1, at 10–11.) According to the submitted plan, a revised training program on stops, searches, and arrests will be developed over the latter half of 2018 and implemented beginning in January 2019. The Court finds that the timeline in the proposed First Year Monitoring Plan is reasonable and will achieve the purpose of Paragraph 67 of the Consent Decree. Accordingly, Paragraph 67 of the Consent Decree will be modified as requested in the parties' stipulation.

The proposed First Year Monitoring Plan, however, does not provide the same level of detail with regard to the training required by Paragraph 33 of the Consent Decree. Indeed, the proposed First Year Monitoring Plan does not appear to account for *any* specific training for BPD officers on voluntary contacts with civilians. The parties want to replace the deadlines in

the Consent Decree with those in the First Year Monitoring Plan, but the proposed Plan does not provide any schedule or deadlines for training on voluntary contacts. In other words, the parties seek to replace an explicit deadline with a non-existent one. Accordingly, Paragraph 33 of the Consent Decree will be modified as follows:

> BPD supervisors will encourage officers to regularly communicate with members of the public, and the Department will develop training as set forth in the Training Matrix (Appendix A), to teach officers the best methods for such communications. Specifically, **~~within one year of the Effective Date of this Agreement~~ on or before December 31, 2019**, BPD will provide training to all BPD officers that explains the value of proactive, community-oriented policing. The training will also teach officers skills and techniques that can be used to effectively engage in Voluntary Contacts aimed at building rapport with Baltimore residents.

(ECF No. 39, ¶ 33 (emphasis added).) This modification extends the deadline to the end of monitoring year two, which will allow the parties and the Monitor the opportunity to develop a comprehensive schedule for implementing officer training on voluntary contacts with civilians as part of the second-year, detailed monitoring plan. This timeline is also consistent with the proposed First Year Monitoring Plan, which provides a schedule for BPD to develop a Community Policing Plan, culminating with the Monitor's submission of the Community Policing Plan to the Court for approval on March 1, 2019. This new deadline allows BPD sufficient time to develop and conduct training on community-oriented policing and voluntary contacts with civilians in a manner that is consistent with and informed by the intimately related Community Policing Plan.

DATED this 13th day of February, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge