IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,       *

    Plaintiff,       *

    v.       *       CIVIL NO. JKB-17-0099

BALTIMORE POLICE       *
DEPARTMENT, et al.,
      *
    Defendants.
      ***

## MEMORANDUM AND ORDER

Now pending before the Court is the Monitoring Team's Request for Approval of Certain Updates to the First-Year Monitoring Plan in the Area of Misconduct Investigations and Discipline. (ECF No. 120.) The Request seeks to modify some of the deadlines set in the First Year Monitoring Plan (ECF No. 91-1) in order "'[t]o promote flexibility in the implementation of the Agreement' and to ensure the integrity of the reform process." (ECF No. 120 (quoting Consent Decree, ECF No. 2-2, as modified by ECF No. 39).)

In considering prior similar requests, the Court has wrestled with the inherent tension between the need to move forward with all deliberate haste and the importance of insuring that BPD's reform measures are sufficiently thorough and comprehensive to withstand the test of time. Quality should not be sacrificed for speed. On the other hand, progress should not be sacrificed for perfection. The Parties, the Monitoring Team, and the Court all face a difficult challenge in attempting to appropriately balance the need for both short- and long-term reform.

This request, however, presents a different and more troubling issue than the previous extensions sought by the Parties and Monitoring Team. Indeed, it validates a serious and growing concern that the Court harbors. It has become increasingly clear to the Court in recent

months that BPD has serious capacity issues. The problem in Baltimore, unlike in so many other cities subject to federal consent decrees, is much less about the willingness of the defendants to comply, and much more about their actual capacity to do so. BPD and the City have repeatedly conveyed their commitment to reform and their willingness to work with DOJ and the Monitoring Team to undergo the comprehensive changes necessary to achieve full and effective compliance with the terms of the Consent Decree. The Court does not doubt BPD's good faith, but it has growing concerns about BPD's *ability to deliver* on its promises, i.e., *its capacity to achieve compliance with the Consent Decree.*

The Monitoring Team's current Request brings these concerns into sharp focus. The Request paints a troubling picture of the Department's Office of Professional Responsibility ("OPR"), the entity primarily responsible for misconduct investigations and discipline. The problems are manifold:

- "OPR has operated with a dizzying assortment of units and sub-units, which has created significant operational inefficiencies that introduce the risk that investigations are not as timely, well-supervised, or effectively managed as they must be." (ECF No. 120, at 3.)

- "OPR also does not necessarily include under its jurisdiction all of the units and functions that address officer misconduct within BPD . . . ." (*Id.*)

- "[T]he same OPR investigators deal with the same officers and supervisors repeatedly . . . ." (*Id.*)

- Though OPR and CRB [the Civilian Review Board] must interact and coordinate to fulfil their respective statutory roles, the actual process for guiding such interactions has been ill-defined; no protocol for communication or coordination between the entities has ever existed." (*Id.* at 4.)

- "[T]here must be far greater clarity within BPD itself for determining how supervisors are involved in addressing problematic performance when it arises." (*Id.*)

- The process that OPR uses to classify complaints . . . . is simultaneously complicated and ill-defined, leading to a potential lack of uniformity and consistency." (*Id.*)

Ultimately, and most troubling, the Monitoring Team concludes that the First Year Monitoring Plan's schedule for the revision of policies and manuals concerning Misconduct Investigations and Discipline is not feasible because "the precise responsibilities of OPR remain unsettled." (*Id.* at 3.) This is an inexcusable state of affairs well over a year after the Consent Decree was approved by the Court. Indeed, this discord is largely, if not entirely, of the Department and City's own making. According to the Monitoring Team, OPR is in a state of flux due to the numerous changes in Department organization and leadership (at the highest levels) over the first half of this year. A lack of consistent, strong leadership can have cascading ill effects throughout an agency; this is but one example of that. The Department's good faith becomes almost irrelevant if they otherwise lack the leadership, resources, and capacity to follow through and achieve compliance.

Misconduct Investigations and Discipline is a critical element of the Consent Decree and of any well-functioning, professional police department—it ensures accountability within the Department and to the community the Department serves. The Monitoring Team's Request reveals an accountability system that is completely dysfunctional and that requires "bedrock structural reform." (*Id.* at 5.) The critical importance of this issue mandates that BPD's misconduct and discipline system be rebuilt from the foundation up to ensure it functions as a fair, transparent, and robust arbiter of integrity. Given the magnitude of the problem unearthed, the Court is compelled to grant the requested modifications to the First Year Monitoring Plan.

Accordingly, the First Year Monitoring Plan IS HEREBY AMENDED and the following policies and procedures SHALL BE reviewed, revised, and submitted for approval pursuant to the following timeline:

| | |
|---|---|
| Oct. 5, 2018 | BPD submits a final draft policy on complaint intake, classification, and communication with complainants consistent with Paragraphs 329, 333–42, 392, 394, 398, and 400 of the Consent Decree, starting a period of public comment. |
| Oct. 5, 2018 | BPD submits final draft protocols delineating the responsibilities of OPR and CRB for (i) complaint intake and classification (ii) the exchange of information between CRB and OPR at the beginning of an investigation consistent with Paragraph 339 of the Consent Decree, starting a period of public comment. |
| Oct. 5, 2018 | BPD submits a final draft protocol for the classification of complaints pursuant to Paragraph 338(a) of the Consent Decree, starting a period of public comment. |
| Nov. 2, 2018 | The public comment period on the final draft policy on complaint intake, classification, and communication with complainants, the final draft protocols on OPR's relationship to CRB, and the final draft protocol for complaint classification concludes. |
| Nov. 16, 2018 | BPD determines whether any additional collaboration is needed following the public comment period. |
| Nov. 30, 2018 | The parties review (i) the final draft policy on complaint intake, classification, and communication with complainants, (ii) the final draft protocols on OPR's relationship to CRB, and (iii) the final draft protocol for complaint classification. DOJ indicates its formal approval or disapproval, in writing, to the Monitoring Team. |
| Dec. 10, 2018 | The Monitoring Team approves or disapproves (i) the final draft policy on complaint intake, |

| | |
|---|---|
| | classification, and communication with complainants, (ii) the final draft protocols on OPR's relationship to CRB, and (iii) the final draft protocol for complaint classification. |
| Feb. 1, 2019 | BPD submits final draft manual provisions on complaint intake, classification, and communication with complainants consistent with Paragraphs 329, 333–42, 392, 394, 398, and 400 of the Consent Decree and the previously-developed policy, starting a period of public comment. |
| March 1, 2019[1] | The public comment period on the final draft manual provisions on complaint intake, classification, and communication with complainants concludes. |
| March 15, 2019 | BPD determines whether any additional collaboration is needed following the public comment period. |
| April 5, 2019 | The Monitoring Team approves or disapproves the final draft manual provisions on complaint intake, classification, and communication with complainants. |
| May 3, 2019 | BPD submits a final draft policy and manual provisions addressing the investigation of complaints by OPR and consistent with Paragraphs 334, 339, 342- 343–44, 347–52, and 354–71 of the Consent Decree, starting a period of public comment. |
| June 7, 2019 | The public comment period on the final proposed policy and manual provisions addressing the investigation of complaints by OPR concludes. |
| June/July 2019 | The exact date for BPD's submission of the final policy and manual provisions, as well as the exact date for the Monitoring Team's approval or disapproval of the final policy and manual provisions, relating to OPR investigations will be included in the Second-Year Monitoring Plan, along |

---

[1] This deadline, and any other deadlines after February 16, 2019, will be included in the Second Year Monitoring Plan, as the first year of Monitoring concludes on February 15, 2019.

with many additional deadlines in other areas of the Consent Decree.

Even under this amended schedule, BPD's task will not get any easier going forward. The fundamental structural issues present in OPR may be mirrored in other parts of the Department as well. BPD and the City must right the ship. The City must identify a strong, capable leader for the Department and give him or her the tools and support necessary to achieve the requirements set out in the Decree.

DATED this 13 day of July, 2018.

BY THE COURT:

*James K. Bredar*
James K. Bredar
Chief Judge