# Exhibit A

Michael R. Bromwich
202 429 8167
mbromwich@steptoe.com

**Steptoe**

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

OCTOBER 22, 2019

BY ELECTRONIC MAIL AND FEDERAL EXPRESS

Andre M. Davis
City Solicitor
Baltimore City Department of Law
100 N. Holliday Street, Suite 101
Baltimore, Maryland 21202

Re: **Steptoe Engagement for Independent Investigation of Gun Trace Task Force**

Dear Mr. Davis:

This letter and the attached General Terms and Conditions of Engagement and the Counsel Guidelines set forth the basis for the engagement of Steptoe & Johnson LLP ("Steptoe") by the Police Department of Baltimore City ("BPD") (hereinafter, "you" or "Client") to conduct an independent investigation of the origins, causes, and evolution of the Gun Trace Task Force of the BPD, and of the criminal conduct in which its members engaged. This engagement will include the submission of a comprehensive final report (" Final Report") to the United States District Court for the District of Maryland in the case of *United States of America v. Police Department of Baltimore City, et. al.*, Case No. 1:17-cv-00099-JKB. The Report will include findings, conclusions, and, if appropriate, recommendations for changes and reform ("Matter").

Within the broad scope described above, it is explicitly agreed that the investigation will be wholly independent and not subject to any restrictions, limitations, or prohibitions imposed by your Office or BPD. All aspects of the investigation will be determined solely by our investigative team, and will be limited only by the scope described above and by any limitations imposed by applicable law. BPD has pledged its full cooperation with this investigation. To ensure factual accuracy, a draft of the Final Report will be provided to you (as counsel to BPD), the Department of Justice, and

the Independent Monitor for the sole purpose of identifying any factual errors or inaccuracies in the draft Report. The parties will have one week to identity any such factual inaccuracies or errors. Full editorial control of the Final Report will be retained by us, without limitation.

You have informed Steptoe that the City Solicitor (the "Solicitor") is the head of the Baltimore City Department of Law and the statutory legal advisor to BPD and the Mayor and City Council of Baltimore, a Maryland municipal corporation (the "City"). Solicitor Davis, Daniel Beck, Chief of Police Legal Affairs and Lisa Walden, Chief Solicitor will serve as Steptoe's contacts for purposes of receiving Steptoe's updates for and communications with Client and are authorized to direct Steptoe on behalf of Client. Michael R. Bromwich will be the lead Steptoe lawyer on this engagement together with Jason M. Weinstein. We look forward to working with you on this representation.

The terms and conditions that govern this engagement and the services we will provide are described in detail in the attachment to this letter. I want to draw your attention in particular to several important provisions for our engagement below; a number of the points below are explained at greater length in the attachment, which is an integral part of this letter. You should review these materials and let me know immediately if you have any questions. After reviewing them, please countersign this letter and return a fully-executed copy to me by email. However, if you ask us to perform work on your behalf prior to returning the countersigned letter and we commence such work at your request, that will constitute acceptance of these terms and conditions of engagement.

First, this engagement establishes an attorney-client relationship solely with Client and not with any other affiliated or associated entity or individual. We will apply ethics rules relating to conflicts of interest only with respect to Client and also with respect to the Mayor and City Council of Baltimore, a Maryland municipal corporation (the "City") but not with any other affiliated or associated entity or individual.

Second, the scope of our engagement is limited to the specific Matter; while we would be pleased to discuss potential engagements on other matters, any new or extended engagement will require our mutual agreement in writing.

Third, we charge hourly rates for services rendered and require reimbursement for costs. My typical hourly rate is ███ and the typical hourly rates of other individuals whom I anticipate will be substantially involved in this matter range from ███ to over ███. However, we will charge a uniform rate of ███ for all attorneys assigned to this matter. We ask that you pay our bills within 60 days of receipt, or



advise us promptly of any questions. Steptoe reserves the right to terminate the attorney-client relationship for failure to timely pay our bills.

Fourth, the attorney-client relationship created by this engagement is terminated when our services are completed, or when termination is triggered under the terms and conditions set out in the attachment, and in any event when we send you our final statement for services rendered in this Matter.

Fifth, as detailed in the *Conflicts and Waiver* paragraph of the attachment, we require a forward-looking waiver permitting Steptoe to represent current or future clients in matters adverse to Clients or related entities on matters that are not substantially related to our representation of you in this Matter. A review of our conflict database indicates that we are representing clients who are or may become adverse to Client in one or more matters that are not substantially related to this Matter representation. Specifically,

- We represent defendant financial institutions in a multi-district litigation in which it is alleged that the defendants wrongfully manipulated the LIBOR rate. The City of Baltimore is a named plaintiff. The subject matter is completely unrelated to the subject matter of this engagement.
- We represent an insurance company in a series of cases involving the scope of insurance coverage for asbestos-related property damage. The City of Baltimore is a named plaintiff in those cases. The subject matter is completely unrelated to the subject matter of this engagement.

By your signature below, you are confirming that Client and the City waive any conflict of interest arising from the representation(s) described above and will not seek to disqualify Steptoe from any of them by reason of our representation of Client in this Matter.

Sixth, we process personal data in accordance with applicable privacy and data protection legislation, including under EU law. Details of the individuals with whom we are in contact in this matter will be processed primarily to provide you with legal services, and for case management and billing in accordance with this letter and the attachment. Except as specified in this letter (including the attached Terms and Conditions), we will not share your data with third parties without your consent.

We may also use the data you provide to inform you about general legal developments, to invite you to legal seminars we hold, and for similar purposes not related to this matter. Please let us know if you do not wish us to contact you for such purposes.

**Steptoe**

By counter-signing this letter you acknowledge that we process personal data relating to your members of management, employees or agents, advisers or consultants and other individuals involved in the Matter. You acknowledge that we may disclose personal data to third parties engaged to perform services on your behalf and to third parties who perform administrative and other functions on our behalf. Please refer to Paragraph 21 for full details of our data privacy/data protection rights and obligations.

Finally, this letter and the attachment set forth the agreed specific terms of our engagement, which supersede and survive any inconsistent items in any "outside counsel guidelines" or any provisions required to use an electronic billing system. These agreed terms can be modified only by written agreement between the individual signatories below expressly stating that this specific engagement letter is being changed.

Please sign and return a copy of this letter to me to confirm your agreement to our representation in this Matter and your authority to agree to these terms on behalf of Client.

We very much look forward to working with you and your colleagues.

Very truly yours,

Michael R. Bromwich

Accepted and Agreed:

Police Department of Baltimore City

By: _____
Andre M. Davis, City Solicitor

Date: 10/23/19

4

**Steptoe**

### STEPTOE & JOHNSON LLP
### GENERAL TERMS AND CONDITIONS OF ENGAGEMENT
#### As of July 10, 2019

1.     *Client*: The client in this representation—and the only party with which Steptoe & Johnson LLP ("Steptoe") is establishing an attorney-client relationship—is the specific entity identified in the first paragraph of the engagement letter to which this is attached (the "Client"). Steptoe has not been asked, and is not agreeing, to represent or establish an attorney-client relationship with any other entity, such as a parent, subsidiary, affiliate, member, owner or other affiliate or associate of the Client. Steptoe is applying ethics rules relating to conflicts of interest only with respect to the Client and also with the Mayor and City Council of Baltimore, a Maryland municipal corporation (the "City").

2.     *Scope of Representation*: The subject matter and scope of this representation is limited to the specific Matter described in the first paragraph of the engagement letter to which this is attached. Any further work will require our mutual agreement reflected in writing.

3.     *Client Communication*: The Client's continued attention to this Matter is critical. The Client agrees to respond to communications from Steptoe in a timely manner. Please inform Steptoe in writing of any changes in the name, address, telephone number or e-mail address of the Client entity or the appropriate Client contact, or other relevant changes.

4.     *Term of Engagement*: The attorney-client relationship created by this letter terminates when the services sought by the Client have been completed, and in any event terminate upon Steptoe sending the Client its final statement for services rendered in the matter, which date shall not be extended because of subsequent statements sent with respect to unpaid balances or activities associated with their collection. Client agrees that the representation can be presumed to have been completed if there is no billable work for a period of six months and there are no ongoing appeals proceedings or intellectual property maintenance obligations. In accordance with the Rules of Professional Conduct, Steptoe will continue to protect the confidentiality of Client's information after the engagement has ended.

The Client may terminate this this engagement only for cause which shall include, but is not limited to (a) the failure of Steptoe to fulfill in a timely and proper manner its obligations under this Agreement, or if Steptoe violates any of the representations, warranties, covenants, terms or stipulations of this Agreement; (b) willful neglect of duties imposed in this Agreement; (c) incompetence; (d) misconduct or malfeasance; (f) criminal conduct; or (g) long-term physical or mental condition which renders Mr. Bromwich unable to perform the duties essential the purpose of the engagement.

Steptoe may terminate this engagement at any time for any reason, subject on Steptoe's part only to applicable rules of professional conduct and, where required, subject

5

# Steptoe

to leave of court or other relevant tribunal. Steptoe's reasons for terminating this engagement may include, but are not limited to, the Client failing to pay a statement within 60 days after it was rendered; the Client's failure to direct, cooperate with, or respond to Steptoe in a timely manner; or Steptoe's judgment that continuing the representation of the Client could result in a violation of the applicable rules of professional conduct. In the event of any termination or withdrawal initiated by the Client, Steptoe will be entitled to receive any unpaid fees and expenses through the date of withdrawal on the basis set forth above. In the event of a termination or withdrawal initiated by Steptoe, Steptoe will provide at its cost reasonable services to transition the engagement to subsequent counsel engaged by the Client.

5. *Postengagement Developments*: After completion of Steptoe's representation in the Matter, changes may occur in the applicable facts, laws, or regulations that could have an impact upon Client's rights and liabilities. Unless the Client specifically engages us to provide additional legal advice on issues arising after completion of the matter, Steptoe has no continuing obligation to advise the Client with respect to future developments.

6. *Hourly Fees*: Steptoe agrees to a fixed hourly rate for the term of this engagement.

7. *Expenses*: Steptoe will charge the Client for various services and expenses, such as duplication, travel and the like. Expenses for services that are furnished using Steptoe resources (or for contractors that use Steptoe office space, equipment, services or facilities) are billed at a rate that covers direct costs plus an allocation of indirect costs that we believe to be fairly related to the service involved. For legal or factual research using third-party computer databases, most vendors (including LexisNexis and Westlaw) provide us with rate schedules listing suggested per-search and other charges. Steptoe will charge the Client for use of those databases at the vendor's scheduled rates because allocations of total costs for these databases cannot be made consistently on a month-by-month basis due to variable usage; however, Steptoe will not pass on any vendor charges for printing from these databases. Where services are provided entirely by an outside vendor for a specified amount (*e.g.*, consultants' fees, graphics, court reporters, filing fees) and do not involve the use of firm facilities or other resources, Steptoe charges clients only the amount charged by the outside vendor, without any markup. Steptoe agrees that if it believes that others vendors are required to supply services in connection with this representation (such as experts, investigators, consultants and court reporters), Steptoe will request the Client's approval before it engages these vendors. Subject to Client's prior written approval, these vendor services will be billed to the Client for payment directly to the billing entity, and Steptoe will have no responsibility for paying those fees or expenses.

8. *Estimate*: Mr. Bromwich and Mr. Weinstein will ensure that this engagement is staffed in a manner to minimize the costs and expenses to the Client and the City while achieving the goals of the engagement. If, at the Client's request, Steptoe provides a proposed budget or other estimate of fees and costs that may be incurred in connection with its representation, the Client agrees that *no* such estimate or budget constitutes a

promise or guarantee by Steptoe that the fees and costs due and payable by the Client in connection with this representation will be at or below those estimated or budgeted amounts.

9.    *Taxes*: Some jurisdictions impose charges denominated as sales, use, excise, business, value added or other taxes, tariffs or duties on amounts billed to clients. The amount of any such charges (excluding taxes based on Steptoe's net income or on the wages, salaries or benefits paid to its personnel) will be included in Steptoe's statements and will be the Client's responsibility. Steptoe's fees are net of any withholding or similar tax imposed by any jurisdiction in which the Client resides or does business. If any amount is withheld for such taxes in such jurisdiction, the Client must gross up the amount to be paid to Steptoe so that the net amount paid to Steptoe is the amount due on Steptoe's statement.

10.    *Billing*: Steptoe expects to send statements to the Client on a monthly basis covering fees and expenses for the prior month. Steptoe also expects the Client to pay our statements promptly and in any event within 60 days after they are received.

11.    *Retainer*: With regard to any retainer, applicable bar rules provide that fees and expenses paid in advance of the performance of legal services are to be treated as the property of the client and must be deposited into a client trust account unless the attorney and client agree otherwise. By signing this engagement letter, the Client acknowledges the receipt of the foregoing information and agrees that any advance payment of legal fees and expenses related to this representation shall be treated as the property of Steptoe upon receipt. The Client also agrees that any such advance payment of legal fees or expenses shall be deposited in Steptoe's general operating account to be drawn upon as legal services are performed and expenses incurred. Steptoe will refund any portion of the advance payment that exceeds the total of Steptoe's legal fees and expenses incurred in the representation upon the termination of the representation.

12.    *Conflicts and Waiver*: Steptoe represents companies and individuals throughout the United States and internationally, who may have matters in conflict with the Client, the City or one or more of their affiliates. Steptoe is undertaking to represent the Client in this Matter on the basis of the Client's and the City's agreement that during this representation or any future representations that are initiated without a new or amended engagement letter, Steptoe will not be precluded from representing other clients, including, but not limited to, any current or future Steptoe clients who are adverse to the Client, the City  or any related entities, in matters not substantially related to this representation, including representations in negotiations, regulatory matters, litigation, the providing of advice or opinions, ADR proceedings of various kinds or other matters. By retaining Steptoe for this representation, the Client agrees that it waives any such conflict and will not seek to have Steptoe disqualified as counsel to another client in the event of such adverse matters.

7

13.     *Confidentiality*: Our ethical obligations as lawyers impose stringent rules about protecting the confidentiality of client information, including not only privileged material but other material we obtain during our representation of the Client that is of a confidential nature or that the Client would not want to see disclosed other than with its approval. The conflicts waiver discussed above does not change our obligation to protect such information. In addition, Steptoe is aware of statutory confidentiality obligations imposed on the Client and the City with respect to criminal justice information, personnel records and certain other personally identified information, including but not limited to the Law Enforcement Officer's Bill of Rights, Maryland Public Information Act and federal and Maryland state law related to the Criminal Justice Information System[1]. Steptoe will adhere to these statutory restrictions in connection with this Matter.

14.     *Our Own Use of Counsel*: The Client agrees that Steptoe may seek legal advice from internal or external counsel concerning this representation, waives any claim of conflict based on those consultations or related communications, even if adverse to the Client's interests, and acknowledges that such communications are protected by Steptoe's own attorney-client privilege from disclosure to the Client.

15.     *Retention of Records*: Certain of our records are viewed as client records ("Client File") and the Client may ask at any time to receive copies of the Client File, which will be made at the Client's expense. Upon completion of a specific representation, the original Client File shall be available to be taken by the Client. Steptoe will be entitled to make copies if it chooses to do so. If the Client does not take possession of the Client File, Steptoe will store the Client File and any additional records relating to its work it deems essential for ten (10) years after it concludes the representation, with the exception of certain kinds of legal instruments that Steptoe is required to retain for longer periods of time. Where the same file, paper or electronic, consists in multiple copies, Steptoe will designate the electronic copy as the official Client File. If the Client has not taken possession of the Client File at the end of the ten-year period, Steptoe may dispose of it without further notice. If the Client indicates its wishes to have the Client File retained for a longer time, Steptoe can make arrangements to store it for limited periods at the Client's expense and will be glad to furnish information on the cost of doing so. If there are large volumes of such materials, Steptoe may contract to have the copies made by a contractor retained by Steptoe under contract conditions that impose obligations on the contractor personnel to recognize and honor the confidential nature of the materials. In referring to records in this paragraph, Steptoe means electronic and "hard copy" records.

16.     *Electronic Communications*: It is likely that during the course of this engagement both the Client and Steptoe will use electronic devices and Internet services (which may include unencrypted email, mobile phones, voice over Internet, electronic

---

[1] See Md. PUBLIC SAFETY Code Ann. § 3-101; Crime Control Act of 1973, and its implementing regulations including 28 C.F.R. § 20.1, et seq.; the Maryland Public Information Act, MD. CODE ANN., GEN. PROV. § 4-101 et seq.; MD. CODE ANN., CTS. & JUD. PROC. § 3–8A–27(b)(1); and MD. CODE ANN., CRIM. PROC. § 10-219

**Steptoe**

data/document websites, and other technology) to communicate and to transmit documents. Although the use of this technology involves some degree of risk that third parties may "hack into" or otherwise access confidential communications, Steptoe believes and, by signing this letter Client agrees, that the benefits of using this technology outweigh the risk of disclosure.

17.     *File Sharing:* Steptoe provides for multiple ways to easily and securely exchange files with clients. In all instances, Steptoe strongly prefers that the Client and Steptoe use one of Steptoe's contracted and secure platforms. Steptoe does not investigate and cannot validate the security of other commercial file share software or Client's in-house file share software.

18.     *Definitive Agreement:* These Terms and Conditions, together with the engagement letter to which they are attached, set forth the agreed specific terms of Steptoe's engagement. Those agreed specific terms supersede and survive any inconsistent items that may be contained in "outside counsel guidelines" sent to us by the Client or generic provisions that Steptoe is required to "accept" in order to use any electronic billing system for the Client. These terms can be modified only by a written agreement between the individual signatories to the attached engagement letter expressly stating that terms of this specific engagement letter are being changed.

19.     *Counterparts:* The engagement letter to which these Terms and Conditions are attached may be executed in two or more counterparts or by facsimile/PDF signature (or both), each of which will be deemed to be an original, but all of which will constitute one and the same agreement.

20.     *Choice of Law/Jurisdiction:* These Terms and Conditions, and with the engagement letter to which they are attached shall be governed by, construed in accordance with, and enforced pursuant to the laws of the State of Maryland without regard to principles of conflict of laws. The Client hereby consents to the jurisdiction of the state and federal courts sitting in the City of Baltimore, in connection with any suit, action, or other legal proceeding arising out of this Agreement.

21.     *Compliance with EU Data Protection Requirements:* Steptoe processes personal data in accordance with the EU's General Data Protection Regulation ((EU) 2016/679) and any applicable national implementing laws and regulations, as amended or updated from time to time ("Data Protection Legislation"). In accordance with Data Protection Legislation, Steptoe is the data controller for the individuals and purposes referred to herein.

Personal data comprises information relating to members of management, employees or agents of the Client, its advisers or consultants and other individuals involved in the Matter. It will typically be limited to the name, title, gender, date of birth, marital status, bank details, addresses, telephone numbers and email addresses, but may include other information depending on the nature of the Matter. If individuals involved in

9

**Steptoe**

the Matter fail to provide certain information when requested, Steptoe may not be able to perform the contract it has entered into with the Client (such as providing legal services), or it may be prevented from complying with its legal obligations.

Steptoe processes such data for the purposes of: (i) client due diligence, provision of advice and representation in accordance with its contractual obligations towards the Client, management of the Client's matters and billing; (ii) ensuring that the Client can be contacted and made known to attorneys and other persons with whom Steptoe has relations; (iii) Steptoe's (or a third party's) legitimate interests (to the extent that the interests and fundamental rights of the individuals involved in the matter do not override those interests), for example informing the Client about legal developments and to conduct other marketing activities; and (iv) management of Steptoe's Bar and other legal and regulatory requirements, including its professional liability policy.

Steptoe only collects personal data that is adequate, relevant and not excessive for the stated purpose, and that is also accurate and, where necessary, kept up to date. It stores the personal data for the duration of this Agreement. If provided by law or ethical obligations, and subject to the provisions of the this letter relating to retention of records, Steptoe may keep certain records for as long as necessary to fulfil the purposes Steptoe collected it for (or which may arise at a future date), including for the purposes of satisfying legal, accounting, insurance or reporting requirements. It may retain personal data for longer periods for archival purposes and may access those archives if it has a legal obligation, right, or consent to do so.

Steptoe has taken appropriate technical and organizational measures to protect personal data, considering the state of the art and the risks of a data breach. Data may be kept, maintained and processed in computer and/or manual formats. Some data may be stored in a single or multiple private clouds located in the United States, the European Economic Area ("EEA") or in other jurisdictions and managed by a third party service provider.

It may be necessary, in the course of Steptoe's activities, to disclose such data to third parties, including: (i) other persons associated with Steptoe, its attorneys and employees; (ii) Steptoe's professional advisers; (iii) unrelated third parties, such as Steptoe's professional liability insurers and parties engaged to perform services on the Client's behalf (for example, other lawyers including foreign lawyers, accountants and trade mark agents); and (iv) third parties who perform administrative and other functions on Steptoe's behalf (for example, IT and cyber security services, and audit or quality checks on Steptoe's practice). If Steptoe engages third parties to process data on the Client's behalf, including outside the United States and the EEA, it will do so in conformity with Data Protection Legislation. In particular, Steptoe does not allow its third-party service providers to use the personal data for their own purposes. They may only process the personal data for purposes specified by and in accordance with Steptoe's instructions. Steptoe may also need to share the personal data of the individuals involved in the matter with a regulator or otherwise to comply with the law. Steptoe requires third parties to respect the security of

10

the personal data and to process it in accordance with Data Protection Legislation. Certain categories of personal data may be transferred between Steptoe's offices in the EU and its offices in the United States and China in conformity with Data Protection Legislation, including, where applicable, any "adequacy decision" adopted by the European Commission, or other appropriate or suitable safeguards. Details may be obtained from Steptoe's contact person identified below.

The terms of this clause do not affect the rights of individuals ("data subjects"), or Steptoe's obligations and responsibilities, under Data Protection Legislation.

The rights of data subject rights include the rights to: (i) request a copy of the personal data Steptoe holds relating to them; (ii) request correction of inaccurate data; (iii) request erasure of their personal data ("right to be forgotten"), subject to Steptoe's right to retain it for legal purposes; (iv) to object to Steptoe's use of the personal data for a defined purpose (e.g. marketing); and (v) subject to conditions, transfer of personal data to another person ("portability"). In the limited circumstances where individuals involved in the matter may have provided their consent to the collection, processing and transfer of their personal information for a specific purpose, they have the right to withdraw their consent for that specific processing at any time. If the data subject wishes to exercise these rights, please contact us.

Steptoe does not envisage that any decisions will be taken using automated means. It will notify the Client in writing if this position changes.

Data subjects have the right to lodge a complaint with a supervisory authority, in particular in the EU member state of their habitual residence, place of work or place of an alleged infringement of Data Protection Legislation.