**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| **v.** | | **CIVIL NO. JKB-17-0099** |
| | * | |
| **BALTIMORE POLICE DEPARTMENT, et al.,** | * | |
| | | |
| **Defendants.** | * | |

**ORDER**

The Consent Decree in this matter requires the Court's Monitoring Team to conduct "reliable, comprehensive, representative community survey(s) of the Baltimore community's experience with and perception of BPD [the Baltimore Police Department] and public safety." ECF No. 2-2, ¶ 23; *see also id.*, ¶ 459.a. The Consent Decree further requires the Monitoring Team to "retain an individual or entity, to be approved by the City and DOJ" to conduct these surveys using certain, specified criteria. *Id.*, ¶ 23.

As with all assessments performed under the Consent Decree, the community surveys must "be conducted in a reliable, cost-effective manner based on accepted and trustworthy means and methods. Any statistical analysis used . . . must conform to statistical techniques that are accepted in the relevant field." *Id.*, ¶ 456. Among its many responsibilities for enforcement of the Consent Decree, the Court must ensure compliance with this requirement.

Under the Updated Fifth-Year Monitoring Plan, the Monitoring Team's second community survey is now underway. ECF No. 524-1, Row 10 (ordered in ECF No. 526). It is being conducted

by the Monitoring Team's approved partner at the Institute for Urban Research at Morgan State University ("IUR"),

Consistent with the practice of collaboration in which the Parties and the Monitoring Team engage to reach agreement on the methodologies used for all Monitoring Team assessments under the Consent Decree, prior orders of this Court have required the Parties, the Monitoring Team and the Monitoring Team's partner at IUR to collaborate and reach agreement on the methodology for the community survey currently underway. ECF No. 429-1, Row. 20 (ordered in ECF No. 432); ECF No. 391-1, Row 20 (ordered in ECF No. 392); *see also* ECF No. 2-2, ¶ 456 ("The Monitor shall provide the City, BPD, and DOJ with the underlying analysis, data, methods, and source of the information relied upon in the Assessments."). Further, as with all other Monitoring Team reports under the Consent Decree, the Parties (i.e., the City, the BPD, and the DOJ) must have an opportunity to review and comment on a draft of the report on the survey's findings prior to the Monitoring Team's publication of a final report. ECF No. 524-1, Row 10 (ordered in ECF No. 526). The Monitoring Team and its partner at IUR are not obligated to incorporate any of the Parties' comments, but they are obligated to receive and consider them before publication.

Approximately twelve months ago, the Court was made aware of certain disagreements between IUR and the Monitoring Team, on one hand, and the Parties, on the other, regarding the participant recruitment methodology for the current community survey. Upon certain suggestions made by the Court, IUR/the Monitoring Team and the Parties were ultimately able to agree on a reliable methodology that would satisfy the interests of both the Monitoring Team/IUR and the Parties.

The Monitoring Team has informed the Court that, earlier this year, one part of the agreed methodology—the part upon which *the Parties* had insisted—was not generating sufficient

2

participants to produce an adequate sample size for the pertinent portion of the survey. The Parties and the Monitoring Team/IUR thus conferred regarding modifications to this methodology and ultimately reached agreement. Over the last few months, for this portion of the survey, IUR has proceeded to recruit participants using the revised methodology.

This week, the Monitoring Team reported to the Court that another dispute has emerged. According to the Monitoring Team, this dispute concerns two issues: (1) the minimum number of survey participants that need to be recruited to ensure the validity of the portion of the survey that uses the revised methodology; and (2) the process for providing the Parties an opportunity to review and comment on a draft of the report of the survey's findings prior to final publication, as required under this Court's order approving the Updated Fifth-Year Monitoring Plan. ECF No. 526 (approving ECF No. 524-1, Row 10). The Monitoring Team has indicated that, despite its best efforts, these disagreements cannot be resolved without the Court's intervention.

The Court is concerned by the Monitoring Team's report. As explained above, under the Consent Decree the objectivity and reliability of the results of the community surveys must be assured, and the Court must be so satisfied. Accordingly, the Court must ensure there is resolution of any disagreement(s) over methodology, as any unresolved disagreement(s) might spawn questions about the validity of these important barometers of BPD's progress toward reform. Considering that IUR and the Monitoring Team are working under the auspices of the Court, any unresolved disagreements also might spawn questions about the Court's superintendence of the Consent Decree process.

Similarly, the Court must ensure that, consistent with its prior order, the Parties (i.e., the City, the BPD, and the DOJ) have a fair opportunity to review and comment on a draft of the survey report before a final report is published or the results of the survey are otherwise publicly

3

announced. The Court must do so not merely to secure compliance with its own order—although that is vital to the rule of law—but also to ensure that the report and the survey's findings are comprehensible and credible. The Parties, of course, may not attempt to alter the survey *results* presented in the report. That is not the objective of the required review-and-comment period. But the Parties may have useful suggestions for, among other things, shoring up the factual support for the findings with collected data or for improving the presentation of the findings. Further, the Parties have an interest in verifying—prior to publication—that the survey methodology they agreed to was, in fact, followed. In the Court's experience over the past five years, the review-and-comment opportunities given to the Parties prior to publication of Monitoring Team reports, as well as similar opportunities given to the Monitoring Team and DOJ prior to publication of BPD reports, have proven invaluable to generating high-quality analyses of the extent of BPD's compliance and non-compliance with Consent Decree requirements. Accordingly, the forthcoming community survey report and its processes are appropriately subject to the same pre-publication reviews.

Upon the foregoing, it is **ORDERED** that at least one representative of each of the following entities shall appear before the Court at **9:30 a.m.** on **September 20, 2022** in Courtroom 3C for a conference to resolve the aforementioned disputed issues:

- The City of Baltimore

- Baltimore Police Department

- The Department of Justice

- The Monitoring Team

- The Institute for Urban Research at Morgan State University

4

This will be an informal conference in pursuit of a settlement of outstanding disagreements. Should the conference be unsuccessful in achieving an agreement, then the Court will conduct further proceedings on the record at a later date during which it will resolve all pending issues.

In reference to the issues now in dispute, and consistent with the Court's prior order approving the Updated Fifth-Year Monitoring Plan, none of the above entities shall issue reports, make public announcements or presentations, or take final, dispositive, or irrevocable actions in reference to the survey or the anticipated findings of the survey until the referenced disagreements have been resolved, either in discussion among the above entities or by Court Order, **and the Court vacates this Order.**

SO ORDERED this  2  day of September, 2022.

JAMES K. BREDAR
Chief Judge