# **EXHIBIT 1**



# QUARTER 1 2022 REPORT ON MISCONDUCT INVESTIGATIONS

# TABLE OF CONTENTS

**Q1 2022 Report on Misconduct Investigations** ........................................................ **2**

I. Introduction ....................................................................................................................2

II. Complaint Intake Data ..................................................................................................2

III. Investigative Findings .................................................................................................9

IV. Investigative Efficiency .............................................................................................12

V. Conclusion ..................................................................................................................13

**Appendices** .............................................................................................................. **15**

Appendix A: Stages of a Misconduct Investigation ........................................................16

Appendix B: Complaint Intake Data ...............................................................................17

Appendix C: Processing Time Data ................................................................................21

Appendix D: Outcomes of Investigations - Investigative Findings Data .........................23

Appendix E: Outcome of Investigations - Charge Dispositions ......................................29

Appendix F: Outcome of Investigations - Sustained Number of Charges .......................31

Appendix G: Disciplinary Actions ..................................................................................32

Appendix H: Respondent Officers with Numerous Complaints/Allegations ...................35

Appendix I: Misconduct (ERMM) – Qualifying Minor Policy Violations ...........................37

# Q1 2022 REPORT ON MISCONDUCT INVESTIGATIONS

## I. Introduction

A robust and well-functioning accountability system in which officers and all BPD members are held to the highest standards of integrity is critical to BPD's relationship with the Baltimore community, and a priority of the Department. The Public Integrity Bureau (PIB), BPD's internal affairs entity, receives and investigates all allegations of misconduct brought against members of the Department.

In August 2022, BPD produced the Second 2021 Bi-Annual Report on Misconduct Investigations which compiled the last two quarters of 2021 data into one report. The Q1 2022 Report on Misconduct Investigations will share key trends identified in Q1 2022 and will include relevant comparisons to data from previous quarters/years. Additional details and data regarding misconduct complaints, investigative findings, and discipline rendered can be found in the appendices of this document. Reports for 2022 data will be produced quarterly with the Q2 2022 Report on Misconduct Investigations scheduled to be published in Q4 2022.

## II. Complaint Intake Data

| QUARTER | DATE RANGE |
|---------|------------|
| Q1 2022 | 01/01/2022 – 03/31/2022 |

### Complaints Received[1]

*Total Complaints Received*

In total, BPD received 361 complaints in Q1 2022 with an average of 4 complaints made every day. Comparatively, Q1 2022's total marks a 7% increase from the quarterly average in 2021 (338 complaints per quarter on average). BPD tracks complaints as either an internal complaint, meaning that the complaint originated from a BPD employee, or an external complaint, meaning that the source of the complaint came from outside the Department. *Figure 1* shows the total amount of internal and external complaints received in Q1 2022 compared to the quarterly average in 2021. The split between external and internal complaints in Q1 2022 was roughly 50/50, mirroring the yearly average split in 2021.



*Figure 1 – Complaints Received*

Audits and inspections have been increasingly performed by BPD's Performance Standards Section (PSS) within the Compliance Bureau. Internal audits and inspections help the Department assess whether policies and protocols are being followed as envisioned. If an audit discovers potential misconduct, the matter is referred to PIB for a complete

---

[1] Complaints fall into a Quarter based on when the Public Integrity Bureau (PIB) received the complaint. For example, a complaint received by PIB in January 2020 about an incident that occurred in December 2019 would be counted as Q1 2020 complaint in this analysis.

administrative investigation. As the Department continues to conduct self-assessments, it may discover more potential misconduct ultimately referred to PIB for internal affairs investigations.

### Complaints Received by Classification

The PIB Classification Protocol separates misconduct cases between "Serious Misconduct" and "Other Misconduct."[2] The distinction between Serious Misconduct and Other Misconduct is based on the severity of the discipline or corrective action *if* the case is ultimately found to be Sustained by PIB. Generally, misconduct cases classified as "Serious Misconduct" cover allegations that include police-civilian interaction, for example, discriminatory policing, or integrity-related allegations such as an officer making a false statement. On the other hand, cases classified as "Other Misconduct" generally involve less egregious discourtesy complaints or more protocol-related violations such as failure to appear for court.

As noted in Figure 2, BPD received more cases classified as "Other Misconduct" in Q1 2022. Roughly 65% of all complaints received were classified as "Other Misconduct." However, the proportion of cases classified as Serious or Other Misconduct varies based on whether the complaint was received internally or externally. Since "Serious Misconduct" cases are more likely to involve allegations that stem from police-civilian interaction, external complaints are more likely to be classified as serious misconduct. Generally, internal complaints tend to address performance deficiencies, making those complaints more likely to be classified as "Other Misconduct." Roughly half of external complaints were classified as "Serious Misconduct," whereas about a quarter of internal complaints received the same classification.

## Demographics of Complaints Received

### Respondents

475 BPD members were respondents to misconduct complaints in Q1 2022.[3] On average, there were 1.3 respondents per misconduct complaint received by BPD. To clarify, 475 respondents does not equal 475 unique BPD individuals were respondents because some employees may have been a respondent in more than one



*Figure 2 – Complaints Received by Classification*

> **Key Definitions:**
>
> ## Classifications
>
> **Serious Misconduct** – if sustained, may result in discipline of suspension without pay, demotion, or termination, including but not limited to the following allegations: discriminatory policing, false statement, failure to supervise, retaliation, excessive force, sexual misconduct, domestic violence, violations of criminal law, and more.
>
> **Other Misconduct** – if sustained, may result in discipline and/or corrective action less severe than a suspension without pay, including, but not limited to, the following allegations: discourtesy, neglect of duty, failure to appear for court, conduct unbecoming of police officer/employee, and more.

---

[2] Previous BPD Reports on Misconduct Investigations broke down classification data at the allegation level; however, since a classification is attached to an entire case in IAPro, tracking the case level classification is a better representation of the data available. For example, a case could include two allegations, with one of them being serious (for example, excessive force) and the other being less serious (for example, a minor reporting violation). In the previous example, the entire case would be labeled as "Serious Misconduct" since if sustained, the case may result in discipline of suspension without pay, demotion, or termination due to the excessive force allegation alone.

[3] Respondent – the officer or employee who is accused of committing the alleged misconduct in the complaint.

misconduct complaint. Furthermore, complaints can include more than one officer/employee as a respondent, and respondents are not limited to those identified in the original complaint. For example, a member of the public submits a single misconduct complaint alleging that two police officers violated their First Amendment rights, and that one of the officers also used discourteous language during the interaction. If the investigation into the example above uncovered a third BPD member committing a potential policy violation, then that third member would be added to the misconduct case as a respondent, regardless of whether the third member was identified in the original complaint or not.

Whenever possible, PIB includes the respondents' job title/rank, race, sex, age, and other personal demographic information[4] in the IAPro[5] case file. It is important to note that some of this information is incomplete due to the nature of the investigative process. If the BPD member is unable to be identified based of the content of the complaint, then the PIB detective cannot confirm the demographic information for the respondent member. Once the member is identified, then the demographic information in the IAPro case file is updated based on information taken from BPD Human Resources (HR) databases.

In terms of racial demographics, roughly 33% of respondents did not have their racial/ethnic demographic listed in the IAPro case file.[6] It is possible that a portion of the missing demographic information is attributed to the complaint being lodged against an unknown police officer (for example, a member of the public witnessed a BPD vehicle driving dangerously without their emergency lights on, but the complainant could not provide enough information to identify the officer). Moreover, the City of Baltimore recently switched over to a new HR Database software which has impacted whether the demographic information is linked to the IAPro case file, especially for newer BPD officers. Taking into account the number of respondents with their demographic data available, roughly 48% of respondents were Black, 38% white, 10% Hispanic, 3% Asian, and 1% Other (see *Figure 3*).

IAPro also includes the rank of the respondent officer/employee. The vast majority of respondents were listed as Police Officers (79%) with Police Sergeants coming in a distant second (9%).[7] *Figure 4* provides a cross-section between racial demographics and rank, specifically Police Officer and Police Sergeant, among respondents who had their racial demographics included in the IAPro case file. Black BPD Officers made up roughly the same percentage of Police Officer respondents compared to the percentage for all respondents



*Figure 3 - Racial Demographics of Respondents*



*Figure 4 - Racial Demographics of Respondents by Rank (Officer and Sergeant Only)*

---

[4] Job titles and other demographic information (race, sex, and age) are pulled from BPD Human Resource databases, so it is possible that some of the job titles and other demographic information were not updated at the time the data was pulled for this report or has since been updated.
[5] PIB's case management system used to track, document, and store case information for misconduct investigations
[6] N = 158
[7] Percentages for Police Officer and Police Sergeant only include respondents with a job title listed (n = 414). 61 respondents did not have a job title listed.

(49% for Police Officers and 48% for all respondents). Comparatively, white BPD members made up a larger portion of Police Sergeant respondents compared to their proportion for all respondents (54% for Police Sergeants and 38% for all respondents).

*External (or civilian) Complainants*

*Figure 5 - Age of External Complainants*



PIB intake personnel and detectives also track the demographic information of external (or public) complainants. However, this data is less consistent due to several factors, including, but not limited to, the complaint being submitted anonymously or without demographic information.[8] Submitting personal demographic information is not required to submit a police misconduct complaint at BPD; nevertheless, BPD is working towards ensuring that demographic information is tracked more consistently through the roll-out of a Unified Complaint Form which includes several entirely optional demographic questions about the complainant.

Only considering demographic information available in IAPro, 52% of external complainants were female and 48% were male.[9] In terms of racial demographics, 74% of complainants were listed as Black or African American and 22% of complainants were listed as white.[10] The gender and racial demographic data in Q1 2022 follows similar trends identified in previous Reports on Misconduct Investigations

*Figure 5* shows the age range of individuals who filed an external complaint with BPD. The age of the individual is based on how old the individual was the day that the complaint was received by PIB, not the age at the time of the alleged misconduct or when the data was pulled for this report. 38% of external complainants were between 30 and 39 years old at the time that the complaint was received.[11] As noted above, the complainant information that is recorded in IAPro is the information about the person who presented the complaint, not necessarily information about the person who was the victim of or impacted by the potential police misconduct.

## Allegations Received

A misconduct case investigated by PIB may include one or more allegations. The total number of allegations investigated by PIB detectives depends on the complainant's statement when submitting the complaint and any additional allegations discovered over the course of the PIB investigation. For example, a complainant may allege that a BPD member used abusive or discriminatory language during a traffic stop. PIB will investigate the initial allegation and may uncover that the member also violated the Department's body-worn camera (BWC) policy. In this example, a BWC-related allegation would be added to the misconduct case even though it was not part of the original complaint.

A full list of allegations that PIB detectives investigate is located in the PIB Operations and Training Manual (Section 1.B PIB Classification Protocol).[12]

---

[8] PIB estimates that roughly 4% of complainants filed complaints completely anonymously.

[9] About 85% of total external complainants had their sex/gender demographics listed in the IAPro case file (n = 168)

[10] About 59% of total external complainants had their racial/ethnic demographics listed in the IAPro case file (n = 117)

[11] About 57% of total external complainants had their date of birth listed in the IAPro case file (n = 113)

[12] Members of the public can view the PIB Operations and Training Manual at this link.

*All Allegations*

In Q1 2022, there were 574 allegations linked to misconduct complaints received by PIB (304 allegations for external complaints and 270 allegations for internal complaints). On average, each complaint received in Q1 2022 (n = 361) had 1.6 allegations being investigated by PIB. For a historical comparison, the quarterly average from 2021 was 514 allegations received per quarter; however, the increase in allegations received mirrors the total complaints received data discussed earlier in this Report. The table below lists the top 5 non-criminal and non-CRB-eligible allegations received by PIB during the quarter. Criminal and CRB-eligible allegations will be covered in a subsequent section.

| Top 5 Non-Criminal and Non-CRB Allegations | % of Internal Allegations | % of External Allegations | % of All Allegations |
|---|---|---|---|
| Neglect of Duty | 27% | 28% | 27% |
| Conduct Unbecoming a Police Officer/ Employee | 16% | 4% | 11% |
| Neglect of Duty - Loss or Damage of Equipment (Not to Include Firearms) | 0% | 9% | 4% |
| Failure to Operate Bwc as Required | 3% | 3% | 3% |
| False Statement/Untruthfulness | 3% | 3% | 3% |

In total, the top five non-criminal and non-CRB-eligible allegations made up roughly 48% of all allegations received in Q1 2022. For context, there were 41 unique allegations linked to misconduct complaints received in Q1 2022. The table above also includes two separate neglect of duty allegations, the general "Neglect of Duty" allegation and a more specific "Neglect of Duty – Loss or Damage of Equipment (Not to include Firearms)". Other neglect of duties allegations received include "Neglect of Duty – Failure to Render Medical Aid," "Neglect of Duty – Improper Uniform or Appearance," and "Neglect of Duty – Improper Inspection of Service Vehicle." Overall, neglect of duty allegations represent 28% of external allegations received, 51% of internal allegations received, and 39% of all allegations received.

*ERMM-Eligible Allegations*

*Figure 6 - ERMM Allegations Received*



In 2019, BPD began piloting a new program to expedite minor misconduct. Since the pilot's launch, Expedited Resolution of Minor Misconduct (ERMM) reduced the number of days that minor misconduct internal complaints are processed and resolved.[13] Per policy, ERMM-eligible allegations cannot be subject to an external complaint or otherwise involve a member of the public. ERMM allows for more efficient case resolution and consistency in the application of discipline for minor misconduct. If a member does not accept the discipline, the case is referred to PIB for a full administrative

---

[13] Appendix I provides full list of eligible violations.

investigation. *Figure 6* above provides a breakdown of ERMM allegations received in Q1 2022 with Neglect of Duty – Loss or Damage of Equipment (Not to Include Firearms) being the most common. Of the 42 cases identified as ERMM-eligible, only 7 members did not accept the ERMM process, instead referring the case to PIB for a full administrative investigation.

*CRB -Eligible Allegations*

The Civilian Review Board (CRB) of Baltimore City is an independent agency through which members of the public can issue a complaint against officers and other employees of various law enforcement units. PIB collaborates with the CRB in investigating allegations that fall within the CRB's statutory purview: complaints lodged by members of the public regarding BPD employees' (1) abusive or discriminatory language, (2) false arrest, (3) false imprisonment, (4) harassment, (5) or excessive force. Of all allegations received by BPD in Q1 2022, 10% were classified as Civilian Review Board (CRB) eligible (58 allegations total), roughly in line with data from previous quarters. *Figure 7* illustrates that False Imprisonment, Excessive Force, and Harassment are the most common CRB-eligible allegations received.

*Figure 7 - CRB Allegations Received*



*Criminal Misconduct Allegations*

*Figure 8* breaks down the total number and type of criminal misconduct allegations received in Q1 2022. The most common criminal misconduct allegations investigated by PIB are theft related allegations, which include felony theft allegations and serious secondary employment violations (for example, working as plainclothes security at a local store

*Figure 8 – Criminal Misconduct Allegations Received*



while on medical leave from BPD). Since the standard of proof for administrative charges is lower than the criminal standard (preponderance of evidence for administrative charges versus beyond a reasonable doubt), an acquittal or dismissal of one or more charges in a felony or misdemeanor criminal case would not preclude a sustained finding from PIB.

*Officers with Multiple Complaints/Allegations*

| Quarter | Rolling Year Period |
|---------|---------------------|
| Q1 2022 | **04/01/2021 – 03/31/2022** |
| Q1 2021 | **04/01/2020 – 03/31/2021** |

Consent Decree sub-paragraphs 402(g) and 402(h) require BPD to track the number of BPD members who have persistent or serious misconduct problems, allowing the Department to provide corrective training to those individuals or to determine that they may not meet BPD department values and expectations. In order to identify persistent misconduct, the Consent Decree states that the Quarterly Reports will track this data over the 'previous 12 months.' This Report will use the term 'rolling year' to define the previous 12 months (see date ranges in the table to above), and in order to highlight changes over time, this report will compare the defined rolling year periods to the previous year's rolling year period (i.e. Q1 2022's rolling year compared to Q1 2021's rolling year). Additional data for officers with multiple complaint cases/allegations can be found in Appendix H of this report.

| Category | Q1 2021 Rolling Year | Q1 2022 Rolling Year |
|----------|:--------------------:|:--------------------:|
| BPD members with 3 or more received Excessive Force and/or SSA Allegations | 17 | 4 |
| BPD members with 3 or more received Criminal Misconduct allegations | 1 | 6 |
| BPD members with 3 or more completed non-criminal serious misconduct cases | 13 | 15 |
| BPD members with 2 or more completed sustained non-criminal serious misconduct allegations | 4 | 12 |

# III. Investigative Findings

## Investigative Process Overview

At the end of a PIB administrative investigation, a misconduct case receives one of four possible outcomes, Sustained, Not Sustained, Unfounded, or Exonerated. The investigation is completed when the investigator has collected enough evidence to determine a finding for each allegation in the case. The case file then goes up the PIB chain of command for review. If PIB Command does not sustain any allegations in the case, then they issue a disposition for the case of Not Sustained, Unfounded, or Exonerated, and the case is closed. If PIB Command sustains any allegations in the case, then a charging document is drafted by Legal Affairs and the case and charges are presented to the Disciplinary Review Committee (DRC).

Similar to the Complaints Received and Allegations Received sections earlier in this report, PIB tracks the investigative findings of a misconduct investigation at both the case and allegation level. The definitions below differentiate the two for the purposes of the data in this section.

**Case Findings**
The investigative finding given to the entire misconduct case. **(Each Case can only have one case finding)**

**Allegation Finding**
The investigative finding given to a specific allegation in the misconduct case. **(Each case can have as many allegation findings as allegations)**

The four possible case findings and allegation findings are the following:



**Sustained**
• Investigation determines, by a Preponderance of the Evidence, that the alleged misconduct did occur.

**Not Sustained**
• Investigation is unable to determine, by a Preponderance of the Evidence, whether the alleged misconduct occurred.

**Unfounded**
• Investigation determines, by Clear and Convincing Evidence, that the alleged misconduct did not occur or did not involve the employee under investigation.

**Exonerated**
• Investigation determines, by a Preponderance of the Evidence, that the alleged conduct did occur, but did not violate BPD policies, procedures, or training.

## Case Findings – Q1 2022

On average, there were 314 cases findings per quarter in 2021. In comparison, there were 428 investigative case findings in Q1 2022, a 36% increase compared to the previous years' quarterly average.[14] The next section of this Report will cover how quickly PIB is completing cases; nevertheless, the sheer volume of cases completed in Q1 2022 indicates that BPD's priority to increase staffing at PIB is resulting in improved capacity.

*Figure 9 – Percentage of Case Findings by Finding Type*



As noted in *Figure 9*, the most common case finding in Q1 2022 was Sustained (n = 155), continuing a trend from CY 2021. Q1 2022 also saw a higher portion of misconduct investigations resulting in 'Not Sustained' case findings compared to CY 2021. Lastly, the percentage of case findings with a Unfounded finding continues to decline.

*Figure 10 - Percentage of Case Findings by Finding Type and Classification*



As covered in the Section II: Complaints Received, a PIB misconduct case is either classified as 'Serious Misconduct' or 'Other Misconduct' based on the severity of the allegations made during the complaint or otherwise discovered over the course of the PIB investigation. Of the 428 case findings in Q1 2022, roughly 33% and 67% were for cases classified as 'Serious Misconduct' and 'Other Misconduct,' respectively. *Figure 10* provides the percentage of case findings separated by whether they are classified as 'Serious Misconduct' or 'Other Misconduct.' The clear plurality of cases classified as 'Other Misconduct,' the more common classification of the two, were Sustained by PIB (43% Sustained). On the other hand, roughly a quarter of cases classified as 'Serious Misconduct' were Sustained after PIB's investigation.

---

[14] Total comes from the number of cases where PIB attached a finding. If a case was given a finding in Q4 2021, but the case was received by PIB in Q1 2021, then the finding data would be tallied in Q4 2021 for the purposes of this analysis.

## Allegation Findings – Q1 2022

In total, there were 702 allegations with findings in Q1 2022. The proportion of findings closely resemble the case finding results in *Figure 9*. The table below includes the data for the five most common allegations, their total findings, and the percentage of the finding for all allegations. Neglect of Duty was the most common allegation with a finding during Q1 2022, and as noted in the table below, Sustained Neglect of Duty allegations represented 16% of all Sustained findings for Q1 2022. In fact, the five most common allegations represented roughly 50% of all allegation findings. For context, there were 58 unique allegations with an allegation finding.

Similar to the data in Section II: Complaints Received, Neglect of Duty and the other more specific Neglect of Duty allegations, for example, Neglect of Duty – Improper Inspection of a Departmental Vehicle, constituted a significant portion of allegation findings. In total, Neglect of Duty-related allegations comprised of 40% of all Sustained allegations and 33% of all allegation findings. 13% of all allegation findings were for CRB-eligible cases with the most common CRB-eligible allegation finding being Excessive Force.

| Top 5 Most Common Allegations with Findings | Sustained # [%] | Not Sustained # [%] | Unfounded # [%] | Exonerated # [%] | Total # [%] |
|---|---|---|---|---|---|
| Neglect of Duty | 39 (16%) | 27 (17%) | 36 (17%) | 27 (31%) | 129 (18%) |
| Conduct Unbecoming a Police Officer/Employee | 29 (12%) | 34 (21%) | 29 (14%) | 2 (2%) | 94 (13%) |
| Securing/Treatment of People Being Detained or Transported | 17 (7%) | 7 (4%) | 3 (1%) | 9 (10%) | 36 (5%) |
| Excessive Force | 2 (1%) | 2 (1%) | 27 (13%) | 2 (2%) | 33 (5%) |
| Failure to Operate Bwc as Required | 24 (10%) | 3 (2%) | 1 (0%) | 4 (5%) | 32 (5%) |
| Neglect of Duty - Loss or Damage of Equipment (Not to Include Firearms) | 15 (6%) | 2 (1%) | 3 (1%) | 5 (6%) | 25 (4%) |
| **Total** | **126 (53%)** | **75 (47%)** | **99 (46%)** | **49 (56%)** | **349 (50%)** |

# IV. Investigative Efficiency[15]

## Investigative Efficiency - Average Number of Days from Complaint Notification to Investigation Completed[16]

*Figure 11 – Average Number of Days to Complete Investigations*



BPD continues to see a gradual drop in the average number of days that it takes to complete administrative misconduct investigations. *Figure 11* shows misconduct investigations completed in Q1 2022 are, on average, completed more efficiently than the Calendar Year (CY) averages for 2020 and 2021. Both external and internal complaints completed in Q1 2022 saw a similar decrease in the average number of days it took to complete the investigation.

Notably, the data presented in this section only provides the average number of days that a case takes from complaint received to case finding. As mentioned in Section III: Investigative Findings, PIB completed significantly more cases in Q1 2022 (428) compared to the 2021 quarterly average (314). Therefore, PIB is completing more cases per quarter while making consistent and gradual improvements to the number of days that it takes to complete investigations.

## Investigative Efficiency – Meeting the 90 Day Requirement

BPD is working towards coming into compliance with Consent Decree ¶ 344(i), which requires that administrative misconduct investigations must be completed within 90 days, unless an extension is approved by the Deputy Commissioner of PIB. As noted in *Figure 12*, roughly a quarter of investigations were completed in 90 days in Q1 2022, which represents a slight decrease from the CY 2021 average. Nevertheless, cases are being completed substantially faster than the CY 2020 average (24% in Q1 2022 compared to 7% in CY 2020).

Looking solely at internal complaint investigations completed within 90 days, an average of 33% of cases completed in Q1 and Q2 2021 were completed within 90 days as compared to an average of 34% in in CY 2021. In comparison, 15% of

---

[15] Historical data in this section may deviate from previous reports due to changes in how investigative efficiency is calculated. Previous reports included PIB cases that remain open due to SAO considering criminal charges. PIB will continue those investigations when PIB receives a declination letter from the SAO. While there are relatively few cases that fall into this category, their inclusion would skew the data by about 5-10 days due to how long those cases take to complete due to factors outside of PIB's control. Thus, the data in this section does not include cases pending with the SAO in order to portray a more accurate representation of PIB investigative efficiency.

[16] The data presented below is based on cases that were completed within each Quarter. For example, if a case took 200 days to be completed and was ultimately completed in Feb 2020, then that 200 days would be counted in the Q1 2020 data set.

external complaints were completed within 90 days. External complaints generally take longer to complete due to the complaint involving parties outside of BPD which can make it take longer to fully investigate the facts of the case for various reasons. Moreover, internal investigations are quicker to complete for several reasons, including members being easier to contact, allegations involving more minor operational and technical deficiencies, and some internal complaints qualifying for ERMM, which drastically reduces the number of days it takes for these investigations to be completed. In Q1 2022, 32 completed investigations were ERMM-eligible with the average investigation only taking 24 days to complete. BPD expanded the ERMM pilot program in early 2022 to include all 12 ERMM-eligible allegations (see Appendix I), therefore the portion of internal complaints completed within 90 days is likely to increase over the course of 2022 if the Department sees a growth in ERMM cases completed and processed by PIB.

*Figure 12 – Percentage of Cases Completed Within 90 Days*



# V. Conclusion

The Q1 2022 Report on Misconduct Investigations continues trends identified in previous Reports on Misconduct Investigations, specifically that PIB is receiving and investigating allegations of member misconduct more efficiently. Data points for investigative efficiency are either maintaining the course set in 2021 or are making gradual improvements. While PIB made modest improvements in completing cases more efficiently, PIB substantially increased the total number of cases completed in Q1 2022 by completing 36% more cases in Q1 2022 compared to 2021's quarterly average.

Moreover, in terms of investigative thoroughness, the Consent Decree Independent Monitoring Team recently published their Interim Review of Public Integrity Bureau Misconduct Investigations which shows improvement in investigative quality. Overall, the Monitoring Team reviewers indicated that "PIB investigations have improved measurably" compared to a baseline review of 2018 misconduct investigations. The Monitoring Team's review methodology scores the quality of a misconduct investigation on a 1-5 scale with 1 being poor and 5 being excellent. For this year's Interim Review, the 2021 case sample had an average case score of 4.2 compared to the 2018 sample's 2.7. A score of 4.2 indicates that the average investigation "complied with most Consent Decree requirements and BPD protocols and investigators made reasonable attempts to follow all leads and answer all material questions."

However, the Department recognizes that there are several areas where even though PIB is improving, work still needs to be done, including conducting a larger portion of administrative investigations within 90 days, capturing demographic data for complainants, and ensuring that internal affairs systems consistently connect with HR databases. Moreover, the

Monitoring Team's Interim Review of Public Integrity Bureau Misconduct Investigations also highlighted some areas where further improvement is needed, such as communication with employees, complainants, witnesses, and consistent documentation of all investigative work.

Moving forward, reports will be published for each individual quarter, pursuant to CD 402. Moreover, reports covering Q3 2022 data and beyond might include different new data based on new processes mandated by the Maryland Police Accountability Act of 2021. BPD will work with Baltimore City's future Police Accountability Board (PAB) and Administrative Charging Committee (ACC), the two civilian oversight entities mandated by the new legislation, to ensure that all parties have consistent data standards. Lastly, BPD will continually review its data and reporting practices to ensure that these misconduct investigations reports are accurate, consistent, and presentable.

# APPENDICES

**A. Stages of a Misconduct Investigation**

**B. Complaint Intake Data**

**C. Possessing Time Data**

**D. Outcomes of Investigations – Investigative Findings Data**

**E. Outcomes of Investigations – Charge Disposition Data**

**F. Outcomes of Investigations – Sustained Number of Charges Data**

**G. Disciplinary Actions Data**

**H. Respondent Officers with Numerous Complaints/Allegations Data**

**I. Expedited Resolution of Minor Misconduct (ERMM) – Qualifying Minor Policy Violations**

**DISCLAIMER REGARDING DATA USED IN THIS REPORT AND APPENDICES:**

*The data in this report's appendices show a snapshot of BPD complaint intake and misconduct investigation related data at the time that it was pulled from IAPro, BPD's misconduct case management system. Cases are continuously updated with additional details such as updated demographics, new allegations, and additional respondents, witnesses, or complainants. The data in this report was pulled in Q3 2022. Moreover, the data is manually pulled from IAPro, tabulated, and then organized into tables for public and internal use. Due to the human-involved process, it is possible that some tables may include minor clerical errors that result in incorrect data or typos. Nevertheless, the Department is confident that the table below show an overall picture of the misconduct investigation process, from complaint intake to discipline rendered. Moving forward, BPD is exploring methods to improve data collection through the development of a Public Integrity Bureau (PIB) Dashboard that reduces the amount of possible human error, provides instant analysis, trends, and reports for BPD misconduct investigations, and updates data automatically through a connection with existing BPD information management platforms.*

# Appendix A: Stages of a Misconduct Investigation

**Every misconduct complaint received by the Public Integrity Bureau (PIB) will pass through the following stages:**


**INTAKE**

1. PIB receives a complaint accusing a BPD member (the respondent) of misconduct.

2. This complaint forms the basis of a case, which is assigned a case number.

3. PIB Intake creates a digital casebook in IAPro.


**CLASSIFICATION**

1. PIB Intake examines the complaint to determine which allegations are contained within it.

2. PIB Intake classifies the allegations of the case based solely on the narrative of the complainant.

3. If, during the course of the investigation, a PIB detective uncovers additional possible misconduct, then the PIB detective adds these allegations to the case.


**ASSIGNMENT**

1. PIB assigns the case to an investigator, who affirms they do not have any conflicts of interest.

2. If conflicts of interest emerge during the investigation, then a PIB supervisor reassigns the case to a different investigator.


**INVESTIGATION**

1. The investigation is completed when the investigator has collected enough evidence to determine a finding for each allegation in the case.

2. There are four possible findings for any allegation:

**Sustained:** The conduct did occur and was a violation of BPD policy.

**Not Sustained:** BPD cannot determine whether misconduct occurred.

**Unfounded:** The conduct did not occur or was not the act of the respondent.

**Exonerated:** The conduct occurred, but it was not a violation of BPD policy.

3. A finding of "sustained" or "exonerated" require a "preponderance of the evidence" standard of proof, meaning the finding is more likely true than not true. A finding of "unfounded" requires a "clear and convincing" standard of proof, meaning the evidence is "certain, plain to the understanding, and unambiguous," and convincing.


**REVIEW**

1. The PIB supervisor reviews the case for thoroughness, completeness, timeliness and that the required standard of proof is met to justify each finding.

2. The PIB supervisor passes the case up the PIB chain of command, with each level of command reviewing the findings for each allegation.

3. If no allegations are sustained, the case will be given a finding of not sustained, unfounded or exonerated, and the case is closed.

4. If any allegation is sustained, a charging document is drafted by Legal Affairs and the case and charges are presented to the Disciplinary Review Committee (DRC).


**DISCIPLINE**

1. The DRC reviews the findings for each case that includes a sustained allegation.

2. The DRC issues a disciplinary recommendation based on the Disciplinary Matrix, the circumstances of the case, and the respondent's history.

3. Discipline is imposed when:
- Respondent accepts the recommended discipline, or
- Respondent, through counsel, negotiates agreed discipline with the Department that is less severe than the recommended discipline, or
- Respondent elects a hearing on the allegations, and the hearing board concludes that the respondent committed the alleged misconduct. The Police Commissioner reviews the decision and may increase or approve the final discipline recommended by the hearing board.

# Appendix B: Complaint Intake Data

*Data for Complaint Intake is based off of the date that the complaint was received by PIB. For example, if the incident spawning the complaint occurred in December 2021 (Q4), but the complaint was received in March 2022 (Q1), then the data connected to that incident/complaint would be counted as Quarter 1 in the tables below.*

## Source of Complaint

| Quarter 1 2022 | | |
|---|---|---|
| External | Internal | Total |
| 174 | 187 | 361 |

### Total by Classification

| Classification | External | Internal | Total |
|---|---|---|---|
| Serious Misconduct[17] | 85 | 45 | 130 |
| Other Misconduct[18] | 89 | 142 | 231 |
| Total | 174 | 187 | 361 |

## Respondents by District/Command

| District or Command[19] | External | Internal | Total |
|---|---|---|---|
| Central District | 18 | 26 | 44 |
| Eastern District | 14 | 26 | 40 |
| Northeastern District | 26 | 12 | 38 |
| Northern District | 23 | 26 | 49 |
| Northwestern District | 23 | 26 | 49 |
| Southeastern District | 7 | 14 | 21 |
| Southern District | 23 | 21 | 44 |
| Southwestern District | 15 | 16 | 31 |
| Western District | 24 | 14 | 38 |
| Specialized Units | 37 | 42 | 79 |
| Unknown | 32 | 10 | 42 |
| Total | 242 | 233 | 475 |

## Specialized Units by Bureau

| Bureau | External | Internal | Total |
|---|---|---|---|
| Administrative | 0 | 4 | 4 |
| Compliance | 4 | 10 | 14 |
| Operations | 32 | 23 | 55 |
| Public Integrity | 1 | 5 | 6 |
| Total | 37 | 42 | 79 |

## Rank of Respondent

| Rank[20][21] | External | Internal | Total |
|---|---|---|---|
| Civilian | 1 | 7 | 8 |
| Police Officer Trainee | 7 | 8 | 15 |

---

[17] Serious Misconduct is the appropriate Classification when the Misconduct, if sustained, may result in discipline of suspension without pay, demotion, or termination, in accordance with Policy 302, Rules and Regulations, and Policy 310, Disciplinary/Failure to Appear and Traffic Matrix, including, but not limited to, Discriminatory policing, false arrest, planting evidence, false statement, retaliation, sexual misconduct, domestic violence, failure to supervise, and any CRB-eligible allegation.

[18] Other Misconduct is the appropriate Classification when the Misconduct, if sustained, may result in discipline and/or corrective action less severe than a suspension without pay, in accordance with Policy 302, Rules and Regulations, and Policy 310, Disciplinary/Failure to Appear and Traffic Matrix, including, but not limited to,

[19] Unknown indicates that a respondent's district/command was either listed as 'unknown' or blank in the IAPro case file.

[20] Some rank information is not available in the HR system or the complaint did not indicate the respondent's rank, and therefore BPD cannot automatically pull the rank of every respondent.

[21] Note 2: "Civilian" encompasses non-sworn BPD employees who are the respondents to a misconduct complaint

| Rank[2021] | External | Internal | Total |
|---|---|---|---|
| Police Officer | 166 | 160 | 326 |
| Police Sergeant | 12 | 27 | 39 |
| Police Lieutenant | 3 | 13 | 16 |
| Police Captain | 0 | 2 | 2 |
| Police Major | 2 | 4 | 6 |
| Police Lieutenant Colonel | 1 | 0 | 1 |
| Police Colonel | 1 | 0 | 1 |
| Unknown | 49 | 12 | 61 |
| **Total** | 242 | 233 | 475 |

## Nature of Contact

| Nature of Contact[22] | External | Internal | Total |
|---|---|---|---|
| Call for Service | 1 | 0 | 1 |
| Off Duty | 0 | 1 | 1 |
| On View | 1 | 0 | 1 |
| Other | 4 | 0 | 4 |
| Warrant Service | 2 | 0 | 2 |
| **Total** | 8 | 1 | 9 |

## Source of Complaint

| Source of Complaint | External | Internal | Total |
|---|---|---|---|
| 311 Call Center | 1 | 0 | 1 |
| Agency Member | 11 | 182 | 193 |
| Anonymous | 1 | 0 | 1 |
| Civilian Review Board | 2 | 0 | 2 |
| Email Via Bpd Website | 34 | 1 | 35 |
| Ethics | 1 | 0 | 1 |
| Internet/Social Medial | 1 | 0 | 1 |
| Kga | 39 | 1 | 40 |
| Lawsuits | 1 | 0 | 1 |

---

[22] Note: All other complaints have no nature of contact listed.

| | External | Internal | Total |
|---|---|---|---|
| Other Agency | 12 | 0 | 12 |
| Phone Call | 60 | 1 | 61 |
| States Attorney's Office | 0 | 2 | 2 |
| U.S Postal Mail | 3 | 0 | 3 |
| Walk-in Bpd District | 7 | 0 | 7 |
| Walk-in Kirk Ave | 1 | 0 | 1 |
| **Total** | 174 | 187 | 361 |

## Allegations Received:

*The tables in this section show the data for total allegations per Quarter. It is important to note that complaints can have multiple allegations and more than one respondent officer. Also, allegations are not limited to the initial complaint, for example, additional allegations can be added to the case over the course of PIB's investigation.*

*Total Allegations*

| Quarter 1 2022 | | |
|---|---|---|
| External | Internal | Total |
| 304 | 270 | 574 |

*CRB-Eligible Allegations*

| Allegation | External | Internal | Total |
|---|---|---|---|
| Abusive or Discriminatory Language | 8 | 0 | 8 |
| Excessive Force | 12 | 4 | 16 |
| False Arrest/Imprisonment | 2 | 0 | 2 |
| False Imprisonment | 18 | 0 | 18 |
| Harassment | 14 | 0 | 14 |
| **Total** | 54 | 4 | 58 |

*Criminal Misconduct Allegations*

| Allegation | External | Internal | Total |
|---|---|---|---|
| Domestic Violence | 4 | 2 | 6 |
| Driving Under the Influence (Dui) | 0 | 1 | 1 |
| Other Felony | 2 | 0 | 2 |
| Other Misdemeanor | 6 | 13 | 19 |
| Sexual Misconduct | 7 | 1 | 8 |
| Theft Related | 24 | 4 | 28 |
| **Total** | 43 | 21 | 64 |

*Non-CRB-Eligible and Non-Criminal Misconduct Allegations*

| Allegations | External | Internal | Total |
|---|---|---|---|
| Neglect of Duty | 81 | 76 | 157 |
| Conduct Unbecoming a Police Officer/Employee | 50 | 12 | 62 |
| Neglect of Duty - Loss or Damage of Equipment (Not to Include Firearms) | 0 | 25 | 25 |
| Failure to Operate Bwc as Required | 8 | 9 | 17 |
| False Statement/Untruthfulness | 10 | 7 | 17 |
| Neglect of Duty - Failure to Render Medical Aid | 3 | 12 | 15 |
| Securing/Treatment of People Being Detained or Transported | 2 | 13 | 15 |
| Insubordination | 1 | 12 | 13 |
| Improper Search | 8 | 4 | 12 |
| Inappropriate Workplace Conduct | 2 | 8 | 10 |
| Neglect of Duty - Failure to Attend Psi Medical Appointment | 0 | 9 | 9 |
| Discourtesy | 9 | 0 | 9 |

| Allegations | External | Internal | Total |
|---|---|---|---|
| Neglect of Duty - Improper Inspection of Service Vehicle | 0 | 6 | 6 |
| Fail to Attend and Complete Required Training | 0 | 6 | 6 |
| Neglect of Duty - Overtime Related | 0 | 6 | 6 |
| Absent Without Leave (Awol) | 0 | 6 | 6 |
| Failure to Appear in Court (Fta) | 0 | 6 | 6 |
| Failure to Intervene | 4 | 1 | 5 |
| Neglect/Bwc | 3 | 2 | 5 |
| Failure to Write Report | 4 | 0 | 4 |
| Failure to Report Use of Force | 0 | 4 | 4 |
| Respondent in Civil Protective Order | 1 | 3 | 4 |
| Computer/Email/Internet Misuse | 3 | 1 | 4 |
| Discriminatory Policing | 2 | 2 | 4 |
| Inappropriate Comments and/or Gesture(S) | 1 | 3 | 4 |
| Retaliation | 0 | 3 | 3 |
| Domestic Incident | 2 | 1 | 3 |
| Race-Based Profiling | 2 | 0 | 2 |
| Neglect/Failure to Write Report | 2 | 0 | 2 |
| Failure to report misconduct | 2 | 0 | 2 |
| Inappropriate Association | 1 | 1 | 2 |
| Abuse of Discretion/Authority | 2 | 0 | 2 |
| Vehicle Pursuit Violation | 1 | 1 | 2 |
| Neglect of Duty - Sleeping on Duty | 1 | 1 | 2 |
| Failure to Supervise | 0 | 1 | 1 |
| Negligent Use/Handling/Storage of Firearms | 1 | 0 | 1 |
| Neglect of Duty - Medical Leave Violation | 0 | 1 | 1 |
| Neglect of Duty - Improper Uniform or Appearance | 0 | 1 | 1 |
| Unsafe Operation of Departmental Vehicle | 0 | 1 | 1 |

| Allegations | External | Internal | Total |
|---|---|---|---|
| Improper Seizure of Personal Property | 1 | 0 | 1 |
| False Statement/Report | 0 | 1 | 1 |
| **Total** | 207 | 245 | 452 |

## Demographics of Respondents[23]

| Age[24] | Internal | Total | External |
|---|---|---|---|
| 20-29 | 65 | 51 | 116 |
| 30-39 | 66 | 83 | 149 |
| 40-49 | 45 | 52 | 97 |
| 50-59 | 21 | 35 | 56 |
| 60+ | 3 | 3 | 6 |
| Unknown | 42 | 9 | 51 |
| **Total** | 242 | 233 | 475 |
| Gender | External | Internal | Total |
| Female | 21 | 50 | 71 |
| Male | 177 | 174 | 351 |
| Unknown | 44 | 9 | 53 |
| **Total** | 242 | 233 | 475 |
| Race | External | Internal | Total |
| Asian | 7 | 3 | 10 |
| Black | 61 | 91 | 152 |
| Hispanic | 17 | 16 | 33 |
| Other | 2 | 0 | 2 |
| White | 60 | 60 | 120 |
| Unknown | 95 | 63 | 158 |
| **Total** | 242 | 233 | 475 |

## Demographics of Complainants[25]

| Age[26] | External | Internal | Total |
|---|---|---|---|
| Under 20 | 2 | 0 | 2 |
| 20-29 | 23 | 11 | 34 |
| 30-39 | 43 | 41 | 84 |
| 40-49 | 21 | 54 | 75 |
| 50-59 | 15 | 38 | 53 |
| 60+ | 9 | 9 | 18 |
| Unknown | 85 | 4 | 89 |
| **Total** | 198 | 157 | 355 |
| Gender | External | Internal | Total |
| Female | 88 | 35 | 123 |
| Male | 80 | 119 | 199 |
| Unknown or N/A | 30 | 3 | 33 |
| **Total** | 198 | 157 | 355 |
| Race | External | Internal | Total |
| Asian | 0 | 3 | 3 |
| Black | 87 | 65 | 152 |
| Hispanic | 1 | 11 | 12 |
| Other | 3 | 0 | 3 |
| White | 26 | 63 | 89 |
| Unknown | 81 | 15 | 96 |
| **Total** | 198 | 157 | 355 |

---

[23] Unknown did not have date of birth, sex, or race listed in IAPro.
[24] Age is based on date of birth to the day the complaint was received.
[25] Unknown did not have date of birth, sex, or race listed in IAPro.
[26] Age is based on date of birth to the day the complaint was received.

# Appendix C: Processing Time Data

| Days from Notification of the Department to Investigation Completed | |
|---|---|
| Average Days | 201 |
| Median Days | 211 |
| **Days from Notification of Department to Charges Imposed** | |
| Average Days | 233 |
| Median Days | 248 |
| **Days from Investigation Completed to Charges Imposed** | |
| Average Days | 10 |
| Median Days | 1 |
| **Days from Notification of Department to Charge Disposition** | |
| Average Days | 326 |

| | |
|---|---|
| **Median Days** | **262** |
| **Days from Investigation Completed to Charge Disposition** | |
| **Average Days** | **116** |
| **Median Days** | **14** |
| **Days from Charges Imposed to Charge Disposition** | |
| **Average Days** | **106** |
| **Median Days** | **0** |

# Appendix D: Outcomes of Investigations – Investigative Findings Data

This section provides data on investigative findings of allegations, charge dispositions (from Trial Boards, joint negotiated settlements, and respondents accepting the DRC's disciplinary recommendations), sustained number of charges, and disciplinary actions during Q1 2022.

It is important to note the difference between allegations and charges, both of which play a part in the outcome of investigations. An allegation is the complainant's view of conduct committed by a BPD member that is sent to PIB for investigation. The PIB investigator makes an investigative determination based on the complainant's allegation and the facts uncovered during their investigation. On the other hand, charges come from the legal language which outlines the policy violation of which the BPD employee has found to have violated.

The investigative findings tables are the results of the misconduct investigation conducted by PIB investigators/detectives. When the investigator collects enough evidence to determine a finding for each allegation in the case, they assign an investigative finding to each allegation. The investigative finding can be only one of the four findings described below.

| **Sustained** <br> The alleged conduct did occur and was a violation of BPD policy. | **Not Sustained** <br> BPD cannot determine whether misconduct occurred. |
|---|---|
| **Unfounded** <br> The alleged conduct did not occur or was not the act of the respondent. | **Exonerated** <br> The alleged conduct occurred, but it was not a violation of BPD policy. |

## Findings by Case

*Note regarding Total Findings table below: The data below shows the case findings in Q1 2022. In situations where cases have more than one allegation with different findings, the overall case is still given one finding. For example, if a case has two allegations, one Sustained and one Unfounded, the overall case will be listed as Sustained. Subsequent tables in this appendix will provide the findings by allegation.*

| Finding by Case[27] | Total |
|---|---|
| Sustained | 155 |
| Not Sustained | 96 |
| Unfounded | 117 |
| Exonerated | 60 |
| Total | 428 |

*Total by Classification*

| Findings by Case Classification | Serious Misconduct | Other Misconduct |
|---|---|---|
| Sustained | 32 | 123 |
| Not Sustained | 37 | 59 |
| Unfounded | 61 | 56 |
| Exonerated | 10 | 50 |
| Total | 140 | 288 |

The PIB Classification Protocol separates misconduct cases between "Serious Misconduct" and "Other Misconduct."[28] The distinction between Serious Misconduct and Other Misconduct is based on the severity of the discipline or corrective action *if* the case is ultimately found to be Sustained by PIB. Generally, misconduct cases classified as "Serious Misconduct" cover allegations that include police-civilian interaction, for example, discriminatory policing, or integrity-related allegations such as an officer making a false statement. On the other hand, cases classified as "Other Misconduct" generally involve less egregious discourtesy complaints or more protocol-related violations such as failure to appear for court.

*Total by Incident Type*

| Findings by Incident Type | External Complaint | Internal Complaint | Ethics |
|---|---|---|---|
| Sustained | 35 | 114 | 6 |
| Not Sustained | 46 | 41 | 9 |
| Unfounded | 95 | 18 | 4 |
| Exonerated | 19 | 40 | 1 |
| Total | 195 | 213 | 20 |

Misconduct complaints investigated by PIB fall into three incident types, External Complaints, Internal Complaints, or Ethics. External Complaints generally originate from channels outside the Department (Example: a member of the public making a police misconduct complaint by email.). An Internal Complaint originates from inside the Department (Example: a supervisor referring a subordinate for an internal affairs investigation after

---

27 Finding Date (the date that PIB signs-off on a case) in Quarter

28 Previous BPD Reports on Misconduct Investigations broke down classification data at the allegation level; however, since a classification is attached to an entire case in IAPro, tracking the case level classification is a better representation of the data available. For example, a case could include two allegations, with one of them being serious (for example, excessive force) and the other being less serious (for example, a minor reporting violation). In the previous example, the entire case would be labeled as "Serious Misconduct" since if sustained, the case may result in discipline of suspension without pay, demotion, or termination due to the excessive force allegation alone.

reviewing a use of force.). On the other hand, Ethics incident types can originate from both inside and outside the Department. Ethics cases are defined by the seriousness of the complaint allegations. Generally, the Ethics Unit focuses on investigating the most serious cases and allegations, namely corruption and criminal allegations against BPD members.

## Findings by Nature of Allegation

*Note regarding Findings by Nature of Allegation table in this section: A finding is attached to a specific allegation at the end of an investigation, and a single case can contain multiple allegations, each with their own finding. If a case has two allegations, both of the findings will be listed in the tables below even if they are the same finding.*

### CRB-Eligible Allegations

| Nature of Allegation | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Abusive or Discriminatory Language | 1 | 4 | 12 | 2 | 19 |
| Excessive Force | 2 | 2 | 27 | 2 | 33 |
| False Arrest/Imprisonment | 1 | 9 | 9 | 3 | 22 |
| Harassment | 0 | 3 | 8 | 4 | 15 |
| **Total** | 4 | 18 | 56 | 11 | 89 |

### Criminal Misconduct Allegations

| Nature of Allegation | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Domestic Violence | 1 | 0 | 0 | 0 | 1 |
| Driving Under the Influence (DUI) | 1 | 0 | 0 | 0 | 1 |
| Felony | 0 | 2 | 3 | 0 | 5 |
| Misdemeanor | 2 | 4 | 4 | 0 | 10 |
| Overtime Related | 0 | 2 | 1 | 0 | 3 |
| Sexual Misconduct | 0 | 0 | 2 | 0 | 2 |
| Theft Related | 1 | 10 | 11 | 0 | 22 |
| **Total** | 5 | 18 | 21 | 0 | 44 |

### Non-CRB and Non-Criminal Allegations

| Nature of Allegation | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Neglect of Duty | 39 | 27 | 36 | 27 | 129 |
| Conduct Unbecoming a Police Officer/Employee | 29 | 34 | 29 | 2 | 94 |
| Securing/Treatment of People Being Detained or Transported | 17 | 7 | 3 | 9 | 36 |
| Failure to Operate Bwc as Required | 24 | 3 | 1 | 4 | 32 |
| Neglect of Duty - Loss or Damage of Equipment (Not to Include Firearms) | 15 | 2 | 3 | 5 | 25 |

| Nature of Allegation | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Neglect of Duty - Failure to Render Medical Aid | 9 | 0 | 6 | 4 | 19 |
| Neglect of Duty - Failure to Attend Psi Medical Appointment | 10 | 1 | 0 | 6 | 17 |
| Neglect of Duty - Overtime Related | 11 | 2 | 0 | 3 | 16 |
| Discourtesy | 1 | 2 | 12 | 1 | 16 |
| Inappropriate Comments and/or Gesture(S) | 5 | 3 | 5 | 3 | 16 |
| Neglect of Duty - Improper Inspection of Service Vehicle | 3 | 5 | 2 | 3 | 13 |
| False Statement/Untruthfulness | 2 | 4 | 6 | 0 | 12 |
| Absent Without Leave (Awol) | 8 | 1 | 1 | 2 | 12 |
| Improper Search | 6 | 0 | 3 | 2 | 11 |
| Unsafe Operation of Departmental Vehicle | 2 | 7 | 2 | 0 | 11 |
| Neglect/Failure to Write Report | 4 | 0 | 4 | 2 | 10 |
| Domestic Incident | 1 | 4 | 3 | 0 | 8 |
| Neglect of Duty - Medical Leave Violation | 5 | 1 | 1 | 0 | 7 |
| Fail to Attend and Complete Required Training | 4 | 0 | 0 | 2 | 6 |
| Failure to Write Report | 6 | 0 | 0 | 0 | 6 |
| Inappropriate Workplace Conduct | 2 | 4 | 0 | 0 | 6 |
| Insubordination | 2 | 3 | 1 | 0 | 6 |
| Retaliation | 0 | 3 | 2 | 0 | 5 |
| Neglect/Bwc | 5 | 0 | 0 | 0 | 5 |
| Failure to Supervise | 3 | 1 | 0 | 0 | 4 |
| Neglect of Duty - Off Post or Leaving Assignment Without Permission | 3 | 0 | 0 | 1 | 4 |

| Nature of Allegation | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Computer/Email/Internet Misuse | 1 | 0 | 3 | 0 | 4 |
| Discriminatory Policing | 0 | 0 | 4 | 0 | 4 |
| Inappropriate Association | 2 | 1 | 0 | 0 | 3 |
| Improper Stop | 0 | 1 | 2 | 0 | 3 |
| Neglect of Duty - Sleeping on Duty | 2 | 1 | 0 | 0 | 3 |
| Improper Seizure of Personal Property | 0 | 0 | 3 | 0 | 3 |
| Failure to report misconduct | 0 | 3 | 0 | 0 | 3 |
| Failure to Report Use of Force | 0 | 2 | 0 | 0 | 2 |
| Failure to Appear in Court (Fta) | 2 | 0 | 0 | 0 | 2 |
| Negligent Use/Handling/Storage of Firearms | 2 | 0 | 0 | 0 | 2 |
| Secondary Employment Violation | 2 | 0 | 0 | 0 | 2 |
| Abuse of Discretion/Authority | 0 | 0 | 2 | 0 | 2 |
| False Statement/Report | 1 | 1 | 0 | 0 | 2 |
| Vehicle Pursuit Violation | 1 | 0 | 0 | 0 | 1 |
| Failure to Intervene | 0 | 0 | 1 | 0 | 1 |
| Improper Stop/Search/Seizure | 1 | 0 | 0 | 0 | 1 |
| Neglect of Duty - Improper Maintenance of Firearms | 0 | 1 | 0 | 0 | 1 |
| Failure to Properly Guard a Person in Custody | 1 | 0 | 0 | 0 | 1 |
| Respondent in Civil Protective Order | 0 | 1 | 0 | 0 | 1 |
| Neglect/Firearms Related | 0 | 0 | 0 | 1 | 1 |
| Interference with Civilians' Protected Free Expression/Speech | 0 | 0 | 1 | 0 | 1 |
| **Total** | 231 | 125 | 136 | 77 | 569 |

## Demographics of Complainants (Investigative Findings)[29]

*Data Explanation – The demographic tables in this section calculate the total number of Findings separated by gender and race. A finding is attached to a specific allegation at the end of an investigation, and a single case can contain multiple allegations. For example, John Smith files a complaint against an Officer that has two allegations ("Allegation A" and "Allegation B"). During the course of the investigation, "Allegation A" is determined to be "Sustained" and "Allegation B" is determined to be "Not Sustained." The table below would count both of those allegation findings separately, one for "Sustained/Male" and one for "Not Sustained/Male." In a case where both of John Smith's allegations were determined to be sustained by the investigator, it would be tabulated twice under "Male/Sustained."*

| Gender of Complainants (Civilians/External Complaints) | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Female | 36 | 43 | 80 | 21 | 180 |
| Male | 33 | 33 | 97 | 22 | 185 |
| Unknown | 3 | 20 | 22 | 4 | 49 |
| Total | 72 | 96 | 199 | 47 | 414 |

| Gender of Complainants (Sworn Officers/Internal Complainants) | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Female | 20 | 3 | 7 | 2 | 32 |
| Male | 121 | 56 | 17 | 34 | 228 |
| Total | 141 | 59 | 24 | 36 | 260 |

| Race or Ethnicity of Complainants (Civilians/External Complainants) | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Asian | 3 | 0 | 0 | 0 | 3 |
| Black | 17 | 41 | 95 | 23 | 176 |
| Hispanic | 2 | 2 | 2 | 0 | 6 |
| White | 18 | 8 | 25 | 7 | 58 |
| Unknown/Blank | 32 | 45 | 77 | 17 | 171 |
| Total | 72 | 96 | 199 | 47 | 414 |

| Race or Ethnicity of Complainants (Internal Complainant /Sworn Officers) | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Asian | 7 | 3 | 2 | 1 | 13 |

---

[29] Unknown results in this section did not have gender or race listed in IAPro.

| | | | | | |
|---|---|---|---|---|---|
| Black | 60 | 17 | 10 | 21 | 108 |
| Hispanic | 13 | 2 | 5 | 2 | 22 |
| White | 54 | 35 | 6 | 12 | 107 |
| Unknown/Blank | 7 | 2 | 1 | 0 | 10 |
| Total | 141 | 59 | 24 | 36 | 260 |

| | | | | | |
|---|---|---|---|---|---|
| Unknown/Blank | 47 | 42 | 50 | 19 | 158 |
| Total | 240 | 161 | 213 | 88 | 702 |

*Note: Unknown did not have date of birth, sex, or race listed in IAPro.*

## Demographics of Respondents (Investigative Findings)

| Gender of Respondents | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Female | 39 | 27 | 22 | 11 | 99 |
| Male | 198 | 116 | 170 | 74 | 558 |
| Unknown/Blank | 3 | 18 | 21 | 3 | 45 |
| Total | 240 | 161 | 213 | 88 | 702 |

| Race of Respondents | Sustained | Not Sustained | Unfounded | Exonerated | Total |
|---|---|---|---|---|---|
| Amer-Indian | 0 | 0 | 1 | 1 | 2 |
| Asian | 0 | 1 | 2 | 2 | 5 |
| Black | 89 | 53 | 61 | 33 | 236 |
| Hispanic | 16 | 8 | 29 | 15 | 68 |
| Other | 3 | 0 | 1 | 0 | 4 |
| White | 85 | 57 | 69 | 18 | 229 |

# Appendix E: Outcome of Investigations - Charge Dispositions

The Charge Disposition tables below provide the data on charge disposition outcomes. Charge dispositions are a result of Trial Boards, joint negotiated settlements between parties, and respondents accepting the DRC's disciplinary recommendations. For the date of final disposition for a case, the date used is either the date that the respondent accepted the DRC's recommendation, the date that the Trial Board reached its determination regarding the respondent's case, or the date that a joint legal settlement occurred between the respondent and the Department.

The Charge Disposition Field in IAPro contains the following results for this quarter in the graphic below. For the purposes of the Misconduct Investigation Reports, the "Dismissed by Legal," "Not Guilty," and "Case Expired" will be added to the total for "Not Sustained" and "Accused Resigned/Retired/Terminated" and "Guilty" will be added to the total for "Sustained."

| Charge Disposition | Explanation |
|---|---|
| Sustained | Guilty |
| Not Sustained | Not Guilty |
| Dismissed by Legal | Nol Pros (a prosecutor's formal entry on the record indicating that he or she will no longer prosecute a pending charge against the respondent). |
| Case Expired | Case Expired |

| Charge Disposition | Explanation |
|---|---|
| Accused Resigned / Retired / Terminated | No Trial Board held due to Officer or Employee's employment status. |
| Exonerated | Found to not have violated policy |

## Charge Disposition - Charge Date in Q1 2022

| Days from Notification of the Department to Investigation Completed | Total |
|---|---|
| Sustained | 201 |
| Not Sustained | 5 |
| Total | 206 |

## Charge Disposition: Demographics of Respondents[30]

| Gender of Respondent | Sustained | Not Sustained | Total |
|---|---|---|---|
| Female | 30 | 3 | 33 |
| Male | 169 | 2 | 171 |
| Unknown/Blank | 2 | 0 | 2 |
| Total | 201 | 5 | 206 |

---

[30] Unknown did not have gender or race listed in IAPro.

| Race of Respondent | Sustained | Not Sustained | Total |
|---|---|---|---|
| Black | 78 | 4 | 82 |
| Hispanic | 10 | 0 | 10 |
| Other | 2 | 0 | 2 |
| White | 67 | 1 | 68 |
| Unknown | 44 | 0 | 44 |
| Total | 201 | 5 | 206 |

## Charge Disposition: Demographics of Civilian Complainants[31]

| Gender of Civilian Complainants | Sustained | Not Sustained | Total |
|---|---|---|---|
| Female | 35 | 0 | 35 |
| Male | 29 | 3 | 32 |
| Unknown/Blank | 8 | 2 | 10 |
| Total | 72 | 5 | 77 |

| Race of Civilian Complainants | Sustained | Not Sustained | Total |
|---|---|---|---|
| African American or Black | 39 | 1 | 40 |
| White | 11 | 2 | 13 |
| Unknown or Blank | 22 | 2 | 24 |
| Total | 72 | 5 | 77 |

---

[31] Unknown did not have gender or race listed in IAPro.

# Appendix F: Outcome of Investigations - Sustained Number of Charges

This section provides a breakdown of Sustained Charges from Trial Boards, joint negotiated settlements, and respondents accepting the DRC's disciplinary recommendations. It is important to note that charges follow specific policy violations, whereas Appendix C, Outcome of Investigations: Investigative Findings provides the data for complainant allegations. Since the basis of an allegation is the complainant's account of BPD employee misconduct, there is not always a specific associated policy violation.

This section provides a breakdown of Sustained Charges from Trial Boards, expedited resolutions, joint negotiated settlements, and respondents accepting the DRC's disciplinary recommendations. It is important to note that charges follow specific policy violations, whereas Appendix C, Outcome of Investigations: Investigative Findings provides the data for complainant allegations. Since the basis of an allegation is the complainant's account of BPD employee misconduct, there is not always a specific associated policy violation.

## Total Sustained Charges by Policy[32]

| Sustained Charges by Policy | Total |
|---|---|
| Policy 302, Rules & Regulations | 90 |
| Policy 1114, Persons in Police Custody | 21 |
| Policy 824, Body-Worn Camera | 17 |
| Policy 1504, Departmental Uniforms and Equipment | 12 |
| Violation of Police Commissioner Memorandum | 11 |
| Policy 1115, Use of Force | 9 |

| Sustained Charges by Policy | Total |
|---|---|
| Policy 1112, Field Interviews, Investigative Stops, Weapons Pat Downs & Searches | 8 |
| Policy 104, Incident Reporting | 8 |
| Policy 801, Overdose Response and Investigation Protocol | 6 |
| Policy 1713, Medical Policy | 6 |
| Policy 1008, Investigative Operations | 2 |
| Policy 1013, Strip Searches and Body Cavity Searches | 2 |
| Policy 905, Traffic Crash Investigation and Reporting | 2 |
| Policy 212, Field Training Evaluation Program | 1 |
| Policy 1401, Control of Property and Evidence | 1 |
| Policy 902, Towing Procedures | 1 |
| Police 1110, Protective and Peace Orders | 1 |
| Policy 604, Social media | 1 |
| Policy 1702, Secondary Employment | 1 |
| Policy 701, Departmental Radio Communications | 1 |
| Total | 201 |

[32] Note: these were the names of the policies in question at the time in which this Report's data was pulled. It is possible that an older version of the policy with a slightly different name was the policy used during charging.

# Appendix G: Disciplinary Actions

Action taken date in Quarter 1 2022

Note: Disciplinary Actions ending with an asterisk (*) are tracked manually separate from IAPro. Therefore, subsequent tables providing demographic data pulled from IAPro will not include any of the Disciplinary Actions noted below with an asterisk.

| Total Disciplinary Actions | Total |
|---|---|
| Loss of Leave | 36 |
| Simple Letter of Reprimand | 32 |
| Written Counseling | 30 |
| Middle Letter of Reprimand | 13 |
| Non-Punitive Counseling | 13 |
| Retired | 11 |
| Suspension* | 10 |
| Training at E&T | 8 |
| Resigned | 8 |
| Restitution | 6 |
| Resigned in Lieu of Termination | 3 |
| Severe Letter of Reprimand | 3 |
| Dismissed By Legal | 2 |
| Termination* | 2 |
| Retired in Lieu of Termination | 1 |
| Acquitted By Trial Board | 1 |
| Total | 179 |

## Respondent Demographics of Disciplinary Actions

| Gender of Disciplinary Action (Respondents) | Female | Male | Total |
|---|---|---|---|
| Acquitted By Trial Board | 1 | 0 | 1 |
| Dismissed By Legal | 0 | 2 | 2 |
| Loss of Leave | 3 | 33 | 36 |
| Middle Letter of Reprimand | 2 | 11 | 13 |
| Non-Punitive Counseling | 3 | 10 | 13 |
| Resigned | 4 | 4 | 8 |
| Resigned in Lieu of Termination | 1 | 2 | 3 |
| Restitution | 3 | 3 | 6 |
| Retired | 0 | 11 | 11 |
| Retired in Lieu of Termination | 0 | 1 | 1 |
| Severe Letter of Reprimand | 0 | 3 | 3 |
| Simple Letter of Reprimand | 2 | 30 | 32 |
| Suspension* | 2 | 8 | 10 |
| Termination* | 0 | 2 | 2 |
| Training at E&T | 1 | 7 | 8 |
| Written Counseling | 3 | 27 | 30 |
| Total | 25 | 154 | 179 |

| Race of Disciplinary Action (Respondents) | Asian | Black | Hispanic | Other | White | Unknown | Total |
|---|---|---|---|---|---|---|---|
| Acquitted By Trial Board | 0 | 1 | 0 | 0 | 0 | 0 | 1 |

| Race of Disciplinary Action (Respondents) | Asian | Black | Hispanic | Other | White | Unknown | Total |
|---|---|---|---|---|---|---|---|
| Dismissed By Legal | 0 | 0 | 0 | 0 | 2 | 0 | 2 |
| Loss of Leave | 0 | 20 | 2 | 1 | 9 | 4 | 36 |
| Middle Letter of Reprimand | 0 | 9 | 0 | 0 | 2 | 2 | 13 |
| Non-Punitive Counseling | 0 | 4 | 3 | 0 | 3 | 3 | 13 |
| Resigned | 0 | 3 | 0 | 0 | 2 | 3 | 8 |
| Resigned in Lieu of Termination | 0 | 0 | 0 | 0 | 1 | 2 | 3 |
| Restitution | 0 | 3 | 0 | 0 | 0 | 3 | 6 |
| Retired | 0 | 7 | 0 | 0 | 4 | 0 | 11 |
| Retired in Lieu of Termination | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Severe Letter of Reprimand | 0 | 2 | 0 | 0 | 1 | 0 | 3 |
| Simple Letter of Reprimand | 0 | 11 | 1 | 0 | 16 | 4 | 32 |
| Suspension* | 0 | 6 | 1 | 0 | 3 | 0 | 10 |
| Termination* | 1 | 1 | 0 | 0 | 0 | 0 | 2 |
| Training at E&T | 0 | 0 | 1 | 0 | 6 | 1 | 8 |
| Written Counseling | 0 | 9 | 4 | 0 | 6 | 11 | 30 |
| **Total** | 1 | 76 | 12 | 1 | 56 | 33 | 179 |

*Note: Unknown did not have race listed in IAPro.*

# Civilian Complainant Demographics of Disciplinary Actions

| Gender of Disciplinary Action (Complainants) | Female | Male | Unknown or Blank | Total |
|---|---|---|---|---|
| Expedited Resolution | 0 | 0 | 1 | 1 |
| Loss of Leave | 9 | 9 | 1 | 19 |
| Middle Letter of Reprimand | 2 | 1 | 0 | 3 |
| Non-Punitive Counseling | 5 | 0 | 1 | 6 |
| Resigned | 0 | 3 | 0 | 3 |
| Resigned in Lieu of Termination | 1 | 0 | 0 | 1 |
| Retired | 4 | 2 | 1 | 7 |
| Retired in Lieu of Termination | 1 | 0 | 0 | 1 |
| Severe Letter of Reprimand | 0 | 2 | 0 | 2 |
| Simple Letter of Reprimand | 4 | 6 | 3 | 13 |
| Suspension | 1 | 5 | 0 | 6 |
| Termination | 0 | 0 | 1 | 1 |
| Training at E&T | 0 | 2 | 2 | 4 |
| Written Counseling | 0 | 0 | 1 | 1 |
| **Total** | 27 | 30 | 11 | 68 |

*Note: Unknown did not have gender listed in IAPro.*

| Race of Disciplinary Action (Complainants) | Black | Other | White | Unknown or Blank | Total |
|---|---|---|---|---|---|
| Expedited Resolution | 0 | 0 | 0 | 1 | 1 |
| Loss of Leave | 9 | 0 | 4 | 6 | 19 |
| Middle Letter of Reprimand | 3 | 0 | 0 | 0 | 3 |
| Non-Punitive Counseling | 0 | 0 | 0 | 6 | 6 |
| Resigned | 0 | 2 | 0 | 1 | 3 |
| Resigned in Lieu of Termination | 0 | 0 | 0 | 1 | 1 |
| Retired | 2 | 0 | 3 | 2 | 7 |
| Retired in Lieu of Termination | 0 | 0 | 1 | 0 | 1 |
| Severe Letter of Reprimand | 1 | 0 | 1 | 0 | 2 |
| Simple Letter of Reprimand | 7 | 0 | 1 | 5 | 13 |
| Suspension | 4 | 0 | 1 | 1 | 6 |
| Termination | 0 | 0 | 0 | 1 | 1 |
| Training at E&T | 2 | 0 | 0 | 2 | 4 |
| Written Counseling | 0 | 0 | 0 | 1 | 1 |
| **Total** | 28 | 2 | 11 | 27 | 68 |

*Note: Unknown did not have race listed in IAPro.*

# Appendix H: Respondent Officers with Numerous Complaints/Allegations

Tracking individual officers who are subject or respondent to numerous complaints and allegations allows the Baltimore Police Department to be proactive in providing corrective action, administering appropriate discipline, and identifying areas for growth. This section provides aggregate data on the number of officers who receive numerous complaints and allegations in the following areas: serious misconduct, biased policing, excessive force and unlawful stops, searches and arrests, infringing on constitutional rights, and criminal misconduct. The data for this section is taken from the Quarter's rolling year in the table below.

| Quarter | Rolling Year Period |
|---|---|
| Q1 2022 | 4/1/2021 – 3/31/2022 |

### *Serious Misconduct Cases and Allegations*
**Rolling Year – Finding Date**

| Criminal Misconduct | Total |
|---|---|
| Total with three or more completed cases | 3 |
| Total with two or more sustained allegations | 4 |
| **Non-Criminal Serious Misconduct** | |
| Total with three or more completed cases | 15 |
| Total with two or more sustained allegations | 12 |

### *Biased Policing Allegations*
**Rolling Year – Received Date**

| Received Allegations | Total |
|---|---|
| Total with three or more received allegations | 0 |

### *Excessive Force Allegations*
**Rolling Year – Received Date**

| Received Allegations | Total |
|---|---|
| Total with three or more received allegations | 0 |

### *Unlawful Stops, Searches, and Arrests Allegations*
**Rolling Year – Received Date**

| Received Allegations | Total |
|---|---|
| Total with three or more received allegations | 3 |

### *Interference with Constitutionally Protected Expression Allegations*
**Rolling Year – Received Date**

| Received Allegations | Total |
|---|---|
| Total with three or more received allegations | 0 |

*Criminal Misconduct Allegations*

**Rolling Year – Received Date**

| Received Allegations | Total |
|---|---|
| Total with three or more received allegations | 6 |

| Received Allegations | Total |
|---|---|
| Domestic Violence | 17 |
| Driving Under the Influence (DUI) | 4 |
| Other Felony | 11 |
| Other Misdemeanor | 56 |
| Overtime Related | 2 |
| Planting Evidence | 1 |
| Sexual Misconduct | 21 |
| Theft Related | 75 |
| **Total** | **187** |

# Appendix I: Expedited Resolution of Minor Misconduct (ERMM) – Qualifying Minor Policy Violations

**List of Eligible Minor Policy Violations for Expedited Resolution Process**

Any of the following violations are Minor Policy Violations eligible for the ER process, provided that the level of discipline is within Category A through D of the Disciplinary Matrix and the complaint was not made by, nor does it involve, a member of the public:

1.    Neglect of Duty - Loss or damage of equipment.  (Not to include firearms.)

2.    Neglect of Duty - Improper uniform or appearance.

3.    Neglect of Duty - Allowing unauthorized persons to use departmental equipment.  (Not to include firearms.)

4.    Neglect of Duty - Improper maintenance of firearms.

5.    Neglect of Duty - Improper inspection of service vehicle.

6.    Neglect of Duty - Off post or leaving assignment without permission.

7.    Neglect of Duty - Lateness for duty or assignment.

8.    Neglect of Duty - Failure to Appear in Court (FTA)

9.    Neglect of Duty - Failure to Attend and Complete Required Training

10.    Neglect of Duty - Failure to Attend PSI Medical Appointment

11.    Absence without Leave (AWOL).

12.    Discourtesy (Not to include any allegation involving any member of the public).

**If any supervisor is determined to have minimized the facts in a BlueTeam entry that qualifies an allegation for ER that would otherwise not qualify, that supervisor may be subject to discipline.**