# EXHIBIT 1



# 2022 BALTIMORE POLICE DEPARTMENT SEXUAL ASSAULT DATA REPORT

February 29, 2024

# Table of Contents

Executive Summary ................................................................................................................ 3

Consent Decree ...................................................................................................................... 5

A. Paragraph 264(a) ............................................................................................................... 6

   Cases Received by BPD's Sex Offense Unit (SOU) ............................................................... 6

   Cases Received by BPD's Child Abuse Unit (CAU) ............................................................... 7

   Cases Received by BPD's Patrol Division (4th Degree Sex Offenses Only) ......................... 9

B. Paragraph 264(b) ............................................................................................................. 10

   Offender Numbers for 2022 Cases .................................................................................... 10

   Demographic Breakdown of All Offenders ....................................................................... 11

   Relationship of Offender to Victim for 2022 Cases .......................................................... 13

C. Paragraph 264(c) ............................................................................................................. 17

   Number of Victims ............................................................................................................ 17

   Demographic Breakdown of Sex Offense Victims ............................................................ 17

D. Paragraph 264(d) ............................................................................................................ 20

   Unfounded Cases for 2022 SOU and CAU ......................................................................... 20

E. Paragraph 264(e) ............................................................................................................. 22

   Case Statuses for 2022 Cases ........................................................................................... 22

   Case Outcomes for 2022 4th Degree Sex Offenses Handled by Patrol ............................ 24

F. Paragraph 264(f) .............................................................................................................. 25

   SAFE (Sexual Assault Forensic Exam) Kits ........................................................................ 26

Victim Survey ....................................................................................................................... 28

Conclusion ............................................................................................................................ 28

Appendix A: Keywords and Abbreviations ........................................................................... 31

Appendix B: Methodology .................................................................................................... 33

# Executive Summary

This report summarizes the results of the Baltimore Police Department's (BPD) analysis of sexual assault investigations data for 2022. The report is intended to:

> 1) Provide a broad overview of the investigations that BPD conducted and a description of notable trends and outcomes; and

> 2) Provide an update on BPD's efforts to enhance oversight of its sexual assault investigations by expanding data collection and analysis.

A review of all of the 2022 data[1], explained in detail throughout the report, shows some key findings, including:

- The Sex Offense Unit (SOU) received 265 total cases in 2022 and the Child Abuse Unit (CAU) received 211 total sex offense cases in 2022[2]. In comparison, in 2021, the SOU received 327 total cases and CAU had received 331 total sex offense cases. Both SOU and CAU saw a decline in case numbers between 2021 and 2022. SOU's cases declined by 19% and CAU's cases declined by 36% from 2021 to 2022.

- BPD's Patrol Division handled a total of 126 cases of 4th degree sex offense, which are the only type of sex offense cases that Patrol officers may handle.[3]

- Cases of rape constituted 70% of SOU's cases and 32% of CAU's sex offense cases in 2022.

- The majority of the cases handled by SOU (90%) and the Child Abuse Unit (95%) are cases where the victim and offender knew each other.[4] For Patrol's cases, 88% of victims and offenders knew each other for the cases handled in 2022.

- By the end of 2022, SOU had sent 91 of its 2022 cases (34%) to the Baltimore City State's Attorney's Office (BCSAO) for review. CAU had sent 63 of its 2022 cases to BCSAO by the

---

[1] A disclaimer about the data contained in this report: While more data was extractable from Axon Records for 2022 cases as compared to past years, this report continues to contain some data that was pulled manually and/or tabulated from various BPD data systems, and then organized into tables and figures for public and internal use. Due to this human-involved process, it is possible that some of the data points may include minor clerical errors resulting in incorrect numbers or typos. Moving forward, particularly with the upgrades to BPD's Case Management System which occurred midway through 2023, BPD expects that data pulling and analysis will become even more automated, and thus, less susceptible to human error in the future.

[2] BPD's Child Abuse Unit (CAU) handles investigations of crimes involving physical _and_ sexual crimes against children. For the purposes of this report, all numbers associated with CAU _only_ include those cases that involve sex crimes, to include rape, attempted rape, sexual child abuse, possible sex offense, possible sexual child abuse, sex offense, and rape sodomy. All CAU investigations of physical child abuse were excluded from this case population and analysis.

[3] There are some instances where SOU or CAU will take over a 4th degree case, depending on the circumstances.

[4] In this report, for consistency and ease of reference, BPD will refer to all persons who perpetrated the crime as 'offenders' – whether that person is known, not known, or there is an offender who has not yet been convicted.

end of 2022. Most of the 2022 cases that were not yet sent to BCSAO for review were still under active investigation, and thus may have been sent to BCSAO since the end of 2022, or may still be sent to BCSAO in the future.

- By the end of 2022, zero SOU cases were closed by exception as compared to 2 in 2021, zero in 2020, 34 in 2019 and 44 in 2018. In 2022, 3 CAU cases were closed by exception, as compared to 4 in 2021, 1 in 2020, and 10 in 2019. This continues a trend that appears to have been established in 2020 whereby cases that are cleared by exception remain few, due to the Department modifying its closed by exception practices in 2020 to align with national best practices.

- SOU's closed by arrest rate, calculated based on the total number of cases closed in calendar year 2022 divided by the total number of cases received in 2022, was approximately 15%. A rate of 15% in 2022 is slightly higher than the rates in 2020 and 2021, which were estimated at approximately 13.5%. CAU's closed by arrest rate in 2022 was 11%, which was lower as compared to prior years, when it was 27.8% in 2021 and 24.7% in 2020.

- Median processing time for SOU's 2022 case SAFE kits was 203 days; approximately one week shorter than that observed in 2021 (211 days).

It is important to note that for all of the information detailed below, analyses include data from January 1, 2022 through December 31, 2022. Therefore, the data do *not* reflect changes or updates that occurred *after* December 31, 2022 unless otherwise specified.

Throughout 2022, BPD continued its many efforts to improve training, procedures, and documentation related to sexual assault investigations. Those efforts all attribute to the work that is detailed below, describing the case work achieved by BPD on sex offense cases throughout 2022.

This report continues to address the great majority of the requirements set forth in Paragraph 264 of the Consent Decree. As compared to last year's report, this year's report contains much more data that was pulled from BPD's upgraded Records Management System (RMS), called Axon Records, which was in use by BPD the entire calendar year of 2022. As noted in **Appendix B**, Methodology, the data for this report regarding number of cases investigated, victim/offender demographic information, among other information was sourced from Axon Records.  While BPD continues to make strides in its data collection capabilities, this report still contains data that was pulled, reviewed, and aggregated through a manual process. **Appendix B** specifies which information was pulled from which database. With the implementation of Axon Case Management in June 2023, BPD aims to automate more of this data collection and consolidation more fully in the future. Until such time as the case management system is updated, it will continue to be necessary for BPD to conduct manual work in order to compile this report. More complete future reporting should allow for greater transparency and increased agency legitimacy, better case outcomes, and the continual improvement of victim-centered practices.

Key definitions for terminology and the abbreviations used throughout this report are listed in
**Appendix A**. The detailed methodology used to conduct the review completed for this report is
provided in **Appendix B**.

# Consent Decree

Per Section XI, Paragraph 264, of the Consent Decree, Handling of Reports of Sexual Assault,
BPD will "continue to enhance its data collection, analysis, and reporting. The data to be
collected and analyzed should include the following:

    a.  The numbers of sex offenses, broken down by crime category, that are reported to BPD,
        identifying, where applicable, incidents involving co-occurring crimes (i.e. sexual assaults
        involving domestic violence or stalking);

    b.  The number of offenders, both the totals and broken down by gender (i.e., male,
        female, transgender, queer or non-binary) and the relationship of the offender to the
        victim (i.e., stranger or non-stranger);

    c.  The number of victims/complainants, both the totals and broken down by gender, race,
        and age (i.e., under 18 and 18 and older);

    d.  The total number of sex offense reports categorized as founded and unfounded, broken
        down by the BPD unit categorizing the report[5];

    e.  The total numbers of sex offense reports, broken down by the BPD unit handling the
        report, that (1) were cleared by arrest, (2) were cleared by exceptional clearance,
        including by clearance category, (3) remain open and inactive, and (4) were referred to
        the Baltimore City State's Attorney's Office for filing of charges; and

    f.  Data about the processing of forensic medical exams (often referred to as "rape kits"),
        including: (1) date of reported incident; (2) date of SAFE exam; (3) date detectives
        request lab analysis of SAFE exam; (4) date detectives receive lab analysis results."

## Relevant Policies

    →  Policy 107, Offense Clearance Procedure
    →  Policy 708, Rape and Sexual Assault
    →  Policy 711, Domestic Violence
    →  Policy 720, Interactions with LGBTQ+ Individuals

---

[5] Paragraph 264(d) of the Consent Decree requires reporting on founded and unfounded sex offense reports.
However, BPD does not generally describe cases as "founded." For the sake of reporting all data required by the
Consent Decree, BPD asserts that those it would consider "founded" would be the total number of cases that were
not unfounded in a given year. Thus, references to "founded" cases below are those cases that were not deemed
unfounded by BPD.

→ Policy 1201, Child Abuse Investigations

# A. Paragraph 264(a)

**Under Paragraph 264(a), BPD must track "[t]he numbers of sex offenses, broken down by crime category, that are reported to BPD, identifying, where applicable, incidents involving co-occurring crimes (i.e., sexual assaults involving domestic violence or stalking)."**

### Cases Received by BPD's Sex Offense Unit (SOU)

From January to December 2022, SOU received **265** sex offense cases. Figure 1, below, shows SOU's case numbers over the past 5 years, for comparison. Consistent with previous reports, cases are counted for a given year based on when the case was *received* by SOU. Therefore, an incident that occurred on December 30, 2021 but was reported to BPD on January 2, 2022 would count towards 2022's case numbers.

Compared to 2021, the number of cases handled by SOU <u>declined by 19%</u> in 2022.

**FIGURE 1: SOU CASE TOTALS, 2018-2022**



Figure 2, below, represents the breakdown of offense categories for SOU cases received in 2022. Rape was the predominant offense type for SOU's 2022 cases, comprising 70% of cases.

While BPD's Child Abuse Unit handles most sex offenses involving victims age 15 and under, as seen in Figure 2, the SOU handled 4 Sexual Child Abuse and 3 Possible Sexual Child Abuse cases in 2022. As stated in previous years' reports, these child cases handled by SOU were cases where the child sexual abuse occurred in years past, when the victim was a minor, but the incident was not reported until 2022, once the victim was an adult.

The preface "possible", for offense types in Figure 2, refers to a case where investigators have not yet determined whether an offense occurred. That is, no definitive crime was initially articulated by the victim. However, SOU continues the investigation to determine whether an offense or abuse did occur.

**FIGURE 2: TYPES OF OFFENSES RECEIVED BY SOU, 2022**



*Figure Note: Offense categories add up to more than 265 because some cases involve more than one victim and/or more than one offense type.*

## Cases Received by BPD's Child Abuse Unit (CAU)

From January to December 2022, CAU received **211** sex offense cases. An important piece of information to note is that BPD's Child Abuse Unit handles cases of physical abuse against children as well as cases of sex offenses against children. CAU's data on physical abuse is omitted from this report for clarity. As such, throughout this report, when CAU's case data is discussed, the report is specifically referring to CAU's population of cases involving sexual offenses, not their total case population.

Compared to 2021, the number of cases received by CAU <u>declined by approximately 36%</u> in 2022. Figure 3, below, illustrates CAU's sex offense case numbers for the past four years, for comparison.[6]

---

[6] As stated in past reports, CAU's 2018 data has not been included in these reports because in 2018, BPD was not able to separate out physical and sexual abuse data from Child Abuse's caseload.

**FIGURE 3: CAU CASE TOTALS, 2019-2022**



Figure 4, below, represents the breakdown of offense categories for CAU cases received in 2022. Rape (67) and Child Sexual Abuse (66) were the most common offense types for CAU cases in 2022, comprising approximately 32% of CAU's caseload, each.

**FIGURE 4: TYPES OF OFFENSES RECEIVED BY CAU, 2022**



*Figure Note: Offense categories add up to more than 211 because some cases involve more than one victim and/or more than one offense type.*

8

## Cases Received by BPD's Patrol Division (4th Degree Sex Offenses Only)

As explained in previous years' reports, BPD's policy requires that all types of sexual offense cases – with the exception of 4th degree sex offense cases – are investigated either by SOU and CAU. On the other hand, 4th degree sexual offenses are usually investigated by Patrol, but may be transferred to SOU or CAU in certain instances. Policy 708, *Rape and Sexual Assault* requires Patrol to contact either SOU or CAU for every sex offense call received – no matter the type of crime. After consultation by SOU or CAU, the SOU or CAU detective will instruct the Patrol officer as to whether the case should be forwarded to the appropriate Special Investigations Section Unit (either SOU or CAU) for investigation, or if Patrol will continue to investigate the case. Therefore, the total number of sex offense cases Patrol handles represents the more minor sex offenses that BPD handles, and Patrol must consult with SOU or CAU on each of these cases prior to proceeding with the investigation.

From January to December 2022, Patrol handled **126** 4th degree sex offenses. Compared to 2021, the number of 4th degree sex offense cases handled by Patrol increased by 21%. Figure 5, below, showcases Patrol cases over the last three years, for comparison.[7]

**FIGURE 5: PATROL'S 4TH DEGREE SEX OFFENSE CASE TOTALS, 2020-2022**



---

[7] As stated in past reports, data for 4th degree sex offense cases are not included for 2018 and 2019 due to challenges with identifying this case population in our former records management system.

# B. Paragraph 264(b)

**Under Paragraph 264(a), BPD must track "[t]he number of offenders, both the totals and broken down by gender (i.e., male, female, transgender, queer or non-binary) and the relationship of the offender to the victim (i.e., stranger or non-stranger)."**

The following section provides information about offenders and their demographics. While it may seem straightforward to count offenders and report their demographics (e.g., race/ethnicity, age, sex/gender), there are many factors that contribute to the information reported about each offender, including the victim's knowledge of the offender's actual age or race/ethnicity. Therefore, the data reported in this section is based on the information which was reported (by victims, witnesses, etc.) for each case. The reader is cautioned that each case may contain a different degree of known or perceived information about an offender, based on the specific circumstances of the case.

## Offender Numbers for 2022 Cases[8]

### SOU Cases

As reported above, SOU handled 265 cases in calendar year 2022. Of these, 63% of SOU cases involved a single offender.

- 5 cases involved 2 offenders
- 2 cases involved 3 offenders
- 2 offenders were involved in 2 cases each
- 91 cases did not have a specific person(s) identified as the offender(s)
- Accounting for the above, there were **178** unique offenders associated with SOU cases in 2022

### CAU Cases

As reported above, CAU handled 211 cases in calendar year 2022. Of these, 93% of CAU's cases involved a single offender.

- 5 cases involved more than 1 (i.e., multiple) offender
- 3 offenders were involved in 2 separate cases each
- 9 cases have unknown offenders (i.e., no name was reported for associated offenders)
- Accounting for the above, there were **198** offenders associated with CAU cases in 2022

---

[8] This section provides offender numbers broken down by unit, but does not provide a grand total number to ensure that the report does not inadvertently double-count offenders that might possibly be in data sets for multiple units. For example, the same offender may have committed an offense handled by SOU *and* another, separate, case handled by Patrol within the current reporting period.

*Patrol Cases*

As reported above, Patrol handled 126 cases in calendar year 2022. Of these, 98% of Patrol's cases involved a single offender.

- 1 case had three offenders (all unknown)
- 2 cases had two offenders each (all unknown)
- Records show 93 known offenders (i.e., names provided) and 38 unknown offenders (i.e., names not provided) involved in 4th degree sex assault cases handled by Patrol
- Taken together, there were **131** offenders associated with 4th degree sex assault cases handled by Patrol[9]

## Demographic Breakdown of All Offenders

Figures 6-8, below provide known/reported demographic information for all offenders in 2022 sex offense cases, broken down by unit (SOU, CAU, and Patrol). These figures display race/ethnicity (Figure 6), sex/gender (Figure 7), and age (Figure 8) breakdowns for offenders involved in 2022 sex offense cases.[10]

As shown in Figure 6, the majority of offenders for all three units (SOU, CAU, Patrol) were Black. Black offenders made up 72% of SOU offenders, 70% of CAU offenders, and 67% of Patrol offenders. For SOU and Patrol, White offenders made up the next largest racial-ethnic category at 15% and 14%, respectively. For CAU, Hispanic offenders comprised the second-largest racial-ethnic category at 20%.

---

[9] There were 131 offenders *if* none of the "unknown" offenders committed multiple offenses. If an unknown offender did commit more than one offense, then the true number of unique offenders would be smaller than 131.
[10] In 2022, officers could only select one racial-ethnic category to describe an individual involved in a case. Therefore, if an offender/victim is both Black *and* Hispanic, that person would be categorized as whichever race/ethnicity the responding officer entered at the time of their report.

**FIGURE 6: OFFENDER'S RACE/ETHNICITY BY UNIT, 2022**



As shown in Figure 7, males make up the majority of offenders for SOU (98%), CAU (96%), and Patrol (91%) cases.[11]

**FIGURE 7: OFFENDER'S SEX/GENDER BY UNIT, 2022**



---

[11] The Consent Decree recognizes gender identity and includes sex. *See* Para. 264(b).

Finally, Figure 8 shows the offenders' age, broken down per unit. The median age of offenders in SOU cases is 36, in CAU cases is 30, and in Patrol cases is 38.

**FIGURE 8: OFFENDER'S AGE BY UNIT, 2022**



## Relationship of Offender to Victim for 2022 Cases

Figures 9-11 illustrate the nature of the relationship between victims and offenders in sexual assault cases handled by SOU, CAU, and Patrol. While the nature of the relationship is reported by the victim during the investigation, when entering case data, investigators are limited to the predetermined codes in Lotus Notes and/or Axon Records. The category of "Unknown" represents cases in which the relationship was not revealed during a case's investigation. The category of "Stranger" represents cases in which the victim and offender did not know each other.

As seen in Figure 9, the most common relationship between offenders and victims in SOU cases is acquaintance (27%), followed by Ex-Spouse/Ex-Boyfriend/Ex-Girlfriend (14%), and Stranger (13%). The relationship between victim and offender was unknown/ not determined in 7% of SOU cases.

13



**FIGURE 9: RELATIONSHIP OF OFFENDER TO VICTIM IN SOU CASES, 2022[12]**



As seen in Figure 10, the most common relationship between offenders and victims in CAU cases is "Other" (28%), followed by Other Family Member (19%), and Parent or Step-Parent (13%). The relationship between victim and offender was unknown/not determined in less than 3% of CAU cases.

---

[12] The relationship type, "Other", refers to any relationship that does not fit within the pre-determined (in Axon/ Lotus Notes) relationship categories, as deemed by the reporting officer.

## FIGURE 10: RELATIONSHIP OF OFFENDER TO VICTIM IN CAU CASES, 2022



As seen in Figure 11, the most common relationship between offenders and victims in Patrol cases is Otherwise Known and Stranger (both 8%), and Other Family Member (7%).[13] The relationship between victim and offender was unknown/ not determined in 55% of Patrol cases.

---

[13] Examples of relationships that might be included in the "Otherwise Known" category include, classmate, parent or friend of classmate, service provider, etc. Relationships categorized as "Other Family Member" include anyone other than parent/step-parent or sibling, for example, uncle, cousin, etc.

**FIGURE 11: RELATIONSHIP OF OFFENDER TO VICTIM IN PATROL CASES, 2022**



# C. Paragraph 264(c)

**Under Paragraph 264(c), BPD must track "[t]he number of victims/complainants, both the totals and broken down by gender, race, and age (i.e., under 18 and 18 and older)."**

## Number of Victims

From January to December 2022, SOU's cases involved a total of **264** victims. There were four victims associated with more than one case (i.e., four victims who experienced repeat victimization during 2022).

During the same period, CAU's cases involved a total of **211** victims. There were five victims associated with more than one case (i.e., five victims who experienced repeat victimization during 2022).

Finally, Patrol cases involved a total of **127** victims. There was one victim associated with more than one case (i.e., one victim who experienced repeat victimization during 2022). There was one victim that was unknown in one case.

## Demographic Breakdown of Sex Offense Victims

Figures 12-15, below, provide demographic information for all victims in 2022 sex offense cases, broken down by unit (SOU, CAU, and Patrol). These figures display race/ethnicity (Figure 12), gender (Figure 13), and age (Figures 14 & 15) of victims involved in 2022 cases.

As shown in Figure 12, the majority of victims for all three units (SOU, CAU, Patrol) were Black. Black victims made up 60% of SOU victims, 67% of CAU victims, and 58% of Patrol victims. For SOU and Patrol, White victims made up the next largest racial-ethnic category at 30% and 26%, respectively. For CAU, Hispanic victims comprised the next largest racial-ethnic category at 20%.

**FIGURE 12: RACE/ETHNICITY OF SEX OFFENSE VICTIMS, 2022**



As shown in Figure 13, females make up the majority of victims for all units - SOU (94%), CAU (85%), and Patrol (91%) cases. Consistent with prior years' trends, CAU had the highest proportion of male victims at 14%. Among male victims, SOU and CAU each had one case in which the victim identified as a transgender male.

**FIGURE 13: SEX/GENDER OF VICTIMS IN SEX OFFENSE CASES, 2022**



Figure 14 shows the age distribution for victims in each unit. The median age of victims in SOU cases is 29, in CAU cases is 13, and in Patrol cases is 26.

**FIGURE 14: AGE OF SEX OFFENSE VICTIMS BY UNIT, 2022**



Figure 15 shows the age distribution for victims in all units combined. Taking all cases together, victims of sexual offenses were most commonly between the ages of 26 to 35 (21%), followed by 10 to 14 (20%), and 18 to 25 (17%). Notably, in 2022, nearly half (44%) of all victims of sex offenses were under the age of 18 years old.

**FIGURE 15: AGE OF SEX OFFENSE VICTIMS ALL UNITS, 2022**



# D. Paragraph 264(d)

**Under Paragraph 264(d), BPD must report on "[t]he total number of sex offense reports categorized as founded and unfounded, broken down by the BPD unit categorizing the report."**

## Unfounded Cases for 2022 SOU and CAU

To address 264(d), BPD uses the following criteria, as defined by BPD Policy 708, *Rape and Sexual Assault*, to determine which cases are unfounded.

*Unfounded may refer to a case that is either:*

→ **Baseless** – *A call that was improperly coded or a call that does not meet the elements of a crime*
→ **False** – *The investigation shows that an offense was not committed or attempted*

While BPD generally makes these initial unfounded determinations when a case fits one of the above criteria, BPD is not the only determiner of whether a case is ultimately "unfounded". The Baltimore City Sex Assault Response Team (SART) reviews all unfounded cases to confirm they are unfounded. The SART is composed of representatives from the Baltimore City State's Attorney's Office (BCSAO), the Baltimore Child Abuse Center (BCAC), forensic nurses, and multiple advocacy organizations that primarily provide services to victims of sexual assault.

Table 1, below, details the number of unfounded cases for SOU and CAU as of year-end 2022, compared to year-end 2021, 2020, and 2019.

### TABLE 1: UNFOUNDED CASES FOR SOU & CAU, 2019-2022

| Year | Unfounded SOU Cases | | | | Unfounded CAU Cases | | | |
|---|---|---|---|---|---|---|---|---|
| | 2019 | 2020 | 2021 | 2022 | 2019 | 2020 | 2021 | 2022 |
| Number of Unfounded Cases | 8 | 5 | 5 | 1 | 41 | 18 | 20 | 9 |
| Total Number of Cases | 285 | 274 | 327 | 265 | 290 | 251 | 331 | 211 |
| Percent Unfounded | 2.8% | 1.8% | 1.5% | 0.4% | 14.1% | 7.2% | 6.0% | 4.3% |

While paragraph 264(d) indicates a need to report on case numbers of founded and unfounded, BPD does not generally describe cases as "founded." For the sake of reporting all data required by the Consent Decree, BPD can state that those it would consider "founded" would be the

total number of 2022 cases that were not unfounded in 2022. Therefore, in 2022, SOU reported 264 "founded" cases (265-1=264) and CAU reported 202 "founded" cases (211-9=202).

# E. Paragraph 264(e)

**Under Paragraph 264(e), BPD must report on "[t]he total numbers of sex offense reports, broken down by the BPD unit handling the report, that (1) were cleared by arrest, (2) were cleared by exceptional clearance, including by clearance category, (3) remain open and inactive, and (4) were referred to the Baltimore City State's Attorney's Office for the filing of charges.[14]**

## Case Statuses for 2022 Cases

Beyond the number of unfounded cases, a further breakdown of case statuses referred to as "founded" provides additional information about the progress of case investigations by SOU and CAU on 2022 cases. Table 2, below, displays the categories of "founded" cases each year 2019-2022 at year-end.

## TABLE 2: SOU & CAU CASE STATUSES AT YEAR-END, 2019-2022

| Category | SOU Cases | | | | CAU Cases | | | |
|---|---|---|---|---|---|---|---|---|
| | 2019 | 2020 | 2021 | 2022 | 2019 | 2020 | 2021 | 2022 |
| **Forwarded to BCSAO** | **157** | **95** | **134** | **91** | **164** | **105** | **154** | **133** |
| Closed/Arrest | 59 | 26 | 40 | 40 | 59 | 43 | 77 | 62 |
| Closed/Exception | 41 | 0 | 2 | 0 | 41 | 1 | 4 | 3 |
| Open/Under SAO Review | 55 | 66 | 86 | 44 | 56 | 53 | 62 | 43 |
| Open/Warrant | 2 | 3 | 6 | 5 | 8 | 8 | 11 | 7 |
| Forwarded/Declined | - | - | - | 2 | - | - | - | 13 |
| Closed/Criminal Summons | - | - | - | 0 | - | - | - | 1 |
| Closed/Non-Criminal | - | - | - | 0 | - | - | - | 4 |
| **Not Forwarded to BCSAO** | **128** | **163** | **194** | **174** | **126** | **129** | **146** | **78** |
| Open/Active | 103 | 147 | 181 | 165 | 75 | 103 | 106 | 51 |
| Open/Inactive | 15 | 11 | 7 | 4 | 3 | 3 | 14 | 11 |
| Unfounded | 8 | 5 | 5 | 1 | 41 | 18 | 20 | 9 |
| Re-Classified | 1 | 0 | 1 | 1 | 6 | 5 | 1 | 3 |
| Out of Jurisdiction | 1 | 0 | 0 | 3 | 1 | 0 | 5 | 4 |
| **GRAND TOTAL** | **285** | **258** | **328** | **265** | **290** | **234** | **300** | **211** |

[14] Due to differences in case processing, BPD is unable to provide data regarding the number of cases sent to BCSAO for review (Paragraph 264(e)(4)). In Baltimore, 4th degree cases handled by Patrol are generally charged (or not charged) by police at the time of reporting, as opposed to being sent to the BCSAO for review. It appears that this data point requirement in the Consent Decree was written with SOU and CAU cases in mind, where those cases are regularly forwarded to the BCSAO for review.

To provide further explanation of the categories presented in Table 2, it is important to note that even though BPD has the independent authority to charge and arrest offenders based on probable cause, BPD and the BCSAO collaborate regularly about a case prior to arresting and charging an offender. Nevertheless, the BCSAO makes the ultimate decision on whether or not to proceed with a prosecution. The disposition of a case listed in Lotus Notes describes the status of each present and past investigation. BPD sends cases to the BCSAO for review in the following circumstances:

> 1) Cases that are closed by arrest, and

> 2) Open cases where the investigation is complete and the offender has been identified but not yet charged with a crime.

In 2022, as seen in Table 2 above, 91 of the 265 SOU cases were forwarded to the BCSAO (34%), and 133 of the 211 CAU cases were forwarded (63%). If a case was not forwarded, it may remain under active investigation and may still be forwarded to the BCSAO in a future year. Additionally, if a case was opened in 2021 or earlier and was forwarded to the BCSAO in 2022, it is not included in this summary. The table shows only the number of cases forwarded to BCSAO for review out of those that were opened in the calendar year 2022.  Of the 174 cases not forwarded to BCSAO from SOU, 165 were Open/Active, 4 were Open but Inactive, 1 was Unfounded (reported above), 1 was Re-Classified, and 3 were deemed Out of Jurisdiction. Of the 78 cases not forwarded to the BCSAO from CAU, 51 were Open/Active, 11 were Open but Inactive, 9 were Unfounded (reported above), 3 were Re-classified, and 4 were deemed Out of Jurisdiction.

As shown above, by the end of 2022, SOU had 40 cases closed by arrest, while CAU had 62 cases closed by arrest (if a case is closed by arrest, it means that at least one person has been arrested, charged with the commission of the offense, and turned over for prosecution). Thus, by the end of 2022, 15% of SOU's 2022 cases had been closed by arrest and 29% of CAU's 2022 cases had been closed by arrest. Also, at the end of 2022, CAU had an additional 7 cases with the status "open/warrant" and SOU had 5 cases in "open/warrant" status, meaning they had an open warrant issued for an offender who had not yet been placed under arrest.

Other closed cases are cases that are closed by exception. The threshold for closure by exception is met if the agency has satisfied all of the following conditions:

- Identified the offender;
- Gathered enough evidence to support an arrest, make a charge, and turn over the offender to the court for prosecution;
- Identified the offender's exact location so that the offender could be taken into custody immediately; and
- Encountered a circumstance outside the control of law enforcement that prohibits the agency from arresting, charging, and prosecuting the offender.

At the end of 2022, there were 3 CAU cases closed by exception.

Among the other cases that were forwarded to the BCSAO include some instances where the case was ultimately declined for prosecution.  At the end of 2022, BCSAO declined 2 of the cases SOU had forwarded and 13 cases from CAU. For some cases that BCSAO declines, there is often an allegation that a crime was committed with no corroborating evidence, which may lead to BCSAO determining not to proceed with charging the case.  Cases can be declined for prosecution for several reasons which could range from the victim requesting that the State not proceed with the case, a lack of victim participation, or because the BCSAO determines there is a high likelihood that there would not be a favorable outcome if they proceed to trial with the case.

Prior to submitting their cases to the BCSAO, BPD policy requires detectives to attempt to exhaust every investigative avenue.  If a case ultimately is declined, however, BPD will still make every effort to evaluate any additional evidence that may come to light or take into account renewed victim participation to determine whether charges should be considered.  BPD's Special Investigation Section has a strong working relationship with the BCSAO and both entities work together to deliver the best possible outcome for victims.

At the end of 2022, there were 165 SOU cases and 51 CAU cases that were open and under investigation, with 87 cases still under review at the BCSAO at the end of 2022 (44 SOU cases; 43 CAU cases). The remaining open cases may have since been forwarded to the BCSAO or resolved, are still being actively investigated, or the detective has exhausted investigative avenues at this time.

Another status category is "Open/Inactive," which is a case designation that supervisors apply. At the end of 2022, SOU had 4 of its 2022 cases listed as Open/Inactive and CAU had 11 Open/Inactive 2022 cases. An open case is labeled as "Open/Inactive" after a supervisor has reviewed the case and determined that all available investigative steps have been exhausted and there are no additional steps that can be taken to solve the case at that time. This allows the unit to focus on other cases that may need further investigation and/or more immediate attention, ensuring unit efficiency in the face of limited resources. Open/Inactive cases remain in an open status, so if any new evidence comes to light, investigative efforts will continue.

Lastly, at the end of 2022, 1 of SOU's 2022 cases had been unfounded while CAU had 9 unfounded 2022 cases. Furthermore, SOU had 1 reclassified case and CAU had 3 reclassified cases in 2022.

## Case Outcomes for 2022 4th Degree Sex Offenses Handled by Patrol

Table 3 shows the case outcomes for 4th degree sex offenses received by BPD's Patrol units in 2022. Case outcomes were determined by a manual review of each incident report. Because the manual review was conducted during the drafting of this report, the case statuses reported are accurate as of December 2023 (*not* December 2022).

**TABLE 3 – Case Outcomes: 4th Degree Sex Offenses Handled by Patrol as of December 2023**

| Case Status | Count | % |
|---|---|---|
| Cleared with Summons, Warrant, or Arrest | 44 | 33.85% |
| Unknown or Partial IDs/ No Additional Leads | 26 | 20.00% |
| Case past statute date | 17 | 13.08% |
| Victim Pursued Charges/ Advised to Pursue Charges | 16 | 12.31% |
| Unfounded | 9 | 6.92% |
| Victim Refused to Pursue Charges | 6 | 4.62% |
| Charges Refused by ASA/Court | 5 | 3.85% |
| Out of Jurisdiction | 1 | 0.77% |
| Case Status Unknown/ Missing | 6 | 4.62% |
| **TOTAL** | **130** | **100%** |

*Table Note: The total count of case outcomes is greater than the number of cases because case outcomes are offender-driven. For example, if a given case has two offenders, one may be arrested and one may be unknown, therefore representing two different case outcomes, both reflected here.*

As documented in Table 3, approximately one-third of Patrol's case outcomes consisted of cases cleared with summons, warrants, or arrests. Another 20% of case statuses represent cases for which there are unknown or partial identification of offenders and/or no actionable leads (at the time of this writing). Thirteen percent (13%) of Patrol case statuses reflected instances where the given case was past the statute date, approximately 7% of cases were unfounded, and less than 1% were out of jurisdiction. Victims pursued charges or were advised to pursue charges in 12% of cases and refused to pursue charges in approximately 5% of cases.

In addition to the case outcomes represented in Table 3, an additional 47 cases were transferred from Patrol to SOU or CAU during this reporting period. Although these cases originated at the Patrol level, because they were officially investigated by SOU/CAU, the statuses of those cases are reflected in the totals for SOU/CAU (Table 2).

# F. Paragraph 264(f)

**Under Paragraph 254(f), BPD must track "[d]ata about the processing of forensic medical exams (often referred to as "rape kits"), including: (1) date of reported incident; (2) date of SAFE exam; (3) date detectives request lab analysis of SAFE exam; (4) date detectives receive lab analysis results."**

## SAFE (Sexual Assault Forensic Exam) Kits

An important part of investigating sexual assault cases is utilizing SAFE (Sexual Assault Forensic Exam) kits[15] in order to collect evidence, document a victim's injuries, if any, and obtain a narrative of the incident. Commonly known as "rape kits", SAFE kits are containers that include checklists, materials, and instructions, along with envelopes and containers to package any specimens collected by specially-trained medical professionals during the exam (see RAINN, rainn.org/articles/rape-kit for further information).

### SOU Cases

In 2019, SOU began tracking additional information about SAFE kit testing in its case management software, thus this year's report contains the third full year of SOU SAFE kit data. SOU records the following dates for each case: the date the SAFE was administered, the date investigators requested lab analysis of the kit (which occurs after the completed kit has been moved from the hospital to BPD's Evidence Control Unit), and the date the lab results were received by the investigator. In instances where a SAFE was not conducted, and in instances where a SAFE was conducted but not requested for processing, SOU detectives are required to provide additional documentation as to the reasoning. These SAFE details are exported using a report in Lotus Notes for SOU cases.

From January 1, 2022 to December 31, 2022, **151** SAFE kits were conducted out of a total 265 SOU Cases.  There were 114 SOU cases that did not have SAFE kits completed. The most common rationales for those 114 SOU cases not having a SAFE it can be that the victim declined the exam (44) or that too much time had passed since the incident (49), such that it was unlikely the kit would provide viable evidence. SAFEs are generally not performed if more than 14 days have passed since the incident, as DNA evidence may have deteriorated to the point that testing would be inconclusive.

After a SAFE is conducted, it must first be processed by the hospital and then transported to BPD's Evidence Control Unit, where it can then be submitted to BPD's lab for analysis. A median of 4 days elapsed between the exam date and request for analysis date for the kits submitted to the lab.

Of the 151 completed SAFEs in 2022, SOU submitted 150 to BPD's Crime Lab for analysis prior to year-end 2022 and submitted the remaining case for lab analysis in March 2023.

Table 4 summarizes the number of 2022 SOU cases with completed SAFE kits, and the timeline of the various steps in the processing of a SAFE kit as of November 2023. For the 151 cases in

---

[15] Note that throughout this report we use the term "SAFE kit" to refer to a forensic exam conducted for sexual assault cases, but we acknowledge that this exam may be called a different name depending on the medical provider and/or the common name used by other professionals.

which a SAFE was conducted, a median of 0 days passed between the case being opened and the SAFE being conducted. Note, the median days passed reflects the difference between the date when a case was *reported* and the date a SAFE kit was conducted, *not* the difference between when the crime occurred and a SAFE kit conducted.

## TABLE 4: TIMELINE OF SAFE KIT PROCESSING - SOU, 2019-2022

| Category | 2019 | | 2020 | | 2021 | | 2022 | |
|---|---|---|---|---|---|---|---|---|
| | Total Cases | Median Days | Total Cases | Median Days | Total Cases | Median Days | Total Cases | Median Days |
| Crime Reported | 285 | - | 274 | - | 327 | - | 272 | - |
| SAFE Conducted | 163 | 0 | 140 | 0 | 154 | 0 | 151 | 0 |
| SAFE Lab Analysis Requested | 160 | 2 | 134 | 2 | 146 | 3 | 150 | 4 |
| Lab Results Received | 112 | 112 | 119 | 211 | 115 | 211 | 64 | 203 |

As of November 2023, the SOU had received lab results in 64 of the cases from 2022 that were submitted to the BPD Crime Lab. The median length of time that elapsed between the lab request and receipt of lab results was 203 days, meaning that the median time it took for the lab to analyze a SAFE kit after the case was opened (for SOU's 2022 cases) was 203 days. SAFE Kit results were returned in a broad time range, with a minimum of 63 days and a maximum of 401 days.

*CAU Cases*

While Table 4, above, details SOU's 2022 cases with SAFE kits, CAU's case management program does not offer the same fields for data tracking. Notably, SAFEs are conducted in far fewer of CAU's cases than SOU's cases.[16] Therefore, for this year's report, CAU performed a manual review of its 2022 cases to provide the SAFE information available. The total number of 2022 CAU cases where SAFEs were conducted is 34. The milestones listed above for SOU's SAFE kit tracking are not tracked similarly for CAU's cases in the old case management system. Therefore, the information that BPD is able to report is that of the 34 CAU cases where SAFEs were conducted, by the end of October 2023, 26 of those cases have been completed by the lab.

---

[16] It is common for child sexual abuse cases to not include SAFE exams for some key reasons. Principally, child sexual abuse reports are often delayed for various reasons, which is well-documented in research. Furthermore, when a child does report such abuse, medical providers are often disinclined to put a child through such an exam and take trauma and the likelihood that such an exam will yield evidentiary value in determining if it is appropriate to conduct such an exam.

While the forensic exam information for the CAU's cases continues to be limited in this report, BPD has been working on improving its data collection systems, most notably its case management system, to ensure that more detailed data is tracked for these forensic exams in CAU. For 2023 data, the available CAU SAFE kit data will continue to be partial in nature, since the new case management system came online midyear 2023. Nevertheless, BPD will be able to provide more detailed data in this arena for the full year of 2024 cases.

# Victim Survey

While not a requirement of the Consent Decree, BPD created a victim survey to provide sexual assault victims with the opportunity to give feedback on their experience with BPD's officers and investigators, if they so choose. BPD has included a link to its victim survey on the brochure that is provided by BPD officers to all victims of sexual offenses. BPD has also informed members of the Sexual Assault Response Team, such as personnel from Mercy Hospital, TurnAround Inc, MCASA, and the BCSAO about the availability of the survey for victims to provide feedback to BPD if they would like to do so.

As of November 2023, BPD has received one survey result. Due to confidentiality and privacy reasons, BPD will not be publishing the individual survey responses in this report but will consider them as BPD is looking to continually improve BPD's internal processes and service provision.

BPD is pleased to offer victims the opportunity to provide any feedback they wish to provide, but BPD also understands that many victims may not wish to fill out a survey of this nature due to trauma and/or any number of reasons. Therefore, while BPD continues to provide this survey as one avenue for victims to provide feedback about their experience with the Department, BPD will continue to prioritize a victim-centered and trauma-informed approach by pointing out the available survey to victims, but not insisting that they complete it.

BPD looks forward to seeing if it receives any additional information via the victim survey to help understand how the public feels regarding BPD's handling of sexual assault cases.

# Conclusion

This report on 2022 data for cases involving all degrees of sexual offenses provides a snapshot of the reports received by BPD, and on BPD's casework for rapes and other sex offenses. As always, this report not only informs the public of the basic numbers and progress of the 2022

casework, but it also allows BPD to reflect on the totality of this important casework and ensure its systems are capably capturing this work.

As stated in the executive summary, some key takeaways of this report are as follows:

- The SOU received 265 total cases in 2022 and the CAU received 211 total sex offense cases in 2022. In comparison, in 2021, the SOU received 327 total cases and CAU had received 331 total sex offense cases. Both SOU and CAU saw a decline in case numbers between 2021 and 2022. SOU's cases declined by 19% and CAU's cases declined by 36% from 2021 to 2022.

- BPD's Patrol Division handled a total of 126 cases of 4th degree sex offense, which are the only type of sex offense cases that Patrol officers may handle.

- Cases of rape constituted 70% of SOU's cases and 32% of CAU's sex offense cases in 2022.

- The majority of the cases handled by SOU (90%) and the Child Abuse Unit (95%) are cases where the victim and offender knew each other. For Patrol's cases, 88% of victims and offenders knew each other for the cases handled in 2022.

- By the end of 2022, SOU had sent 91 of its 2022 cases (34%) to the Baltimore City State's Attorney's Office (BCSAO) for review. CAU had sent 63 of its 2022 cases to BCSAO by the end of 2022. Most of the 2022 cases that were not yet sent to BCSAO for review were still under active investigation, and thus may have been sent to BCSAO since the end of 2022, or may still be sent to BCSAO in the future.

- By the end of 2022, zero SOU cases were closed by exception as compared to 2 in 2021, zero in 2020, 34 in 2019 and 44 in 2018. In 2022, 3 CAU cases were closed by exception, as compared to 4 in 2021, 1 in 2020, and 10 in 2019. This continues a trend that appears to have been established in 2020 whereby cases that are cleared by exception remain few, due to the Department modifying its closed by exception practices in 2020 to align them with national best practices.

- SOU's closed by arrest rate, calculated based on the total number of cases closed in calendar year 2022 divided by the total number of cases received in 2022, was 15%. A rate of 15% in 2022 was slightly higher than the rates in 2020 and 2021, which were estimated at approximately 13.5%. CAU's closed by arrest rate in 2022 was 11%, which was lower as compared to prior years, when it was 27.8% in 2021 and 24.7% in 2020.

- Median processing time for SOU's 2022 case SAFE kits was 203 days; approximately one week shorter than that observed in 2021 (211 days).

Despite continuing to focus efforts on providing all of the data required by paragraph 264 of the Consent Decree, there are still certain pieces of information that proved more difficult to compile and calculate due to BPD's reliance in 2022 on its old case management system, Lotus Notes. Fortunately, though, midway through 2023, BPD updated its case management system and anticipates that it will have even more reliable and pullable data for the coming years. More complete and reliable data collection and reporting should allow for greater transparency in the future, as well as increased agency legitimacy, better case management and outcomes, and the continual improvements to BPD's victim-centered, trauma-informed practices.

# Appendix A: Keywords and Abbreviations

## Key Words

**Aggravated Assault:** An unlawful attack by one person upon another for the purpose of inflicting severe or aggravated bodily injury. This type of assault is usually accompanied by the use of a weapon or by means likely to produce death or great bodily harm.

**Attempted Rape:** Attempted penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim.

**Baltimore City State's Attorney's Office (BCSAO):** Agency responsible for the prosecution of all crimes that occur in Baltimore City.

**Burglary:** The breaking and entering of a dwelling or storehouse of another person.

**Co-Occurring Crimes:** Crimes that occur together or simultaneously in the same incident and/or involving the same victim(s).

**Child Abuse Unit (CAU):** Unit within the Special Investigative Section (SIS) of the Baltimore Police Department (BPD) that handles physical and sexual abuse cases involving children.

**Lotus Notes:** A case management software used by BPD to create electronic casefiles for investigations. Allows for the tracking of criminal investigations and a variety of other types of information as an investigative tool.

**National Incident Based Reporting System (NIBRS)**: As of January 1, 2021, the FBI officially retired the Uniform Crime Report (UCR) system and every law enforcement agency in the country was required to switch to its replacement, NIBRS. This data tracking system provides more detailed information than UCR. Four of the main differences are the changes in offense, the elimination of the hierarchy rule, changes in classification, and ensuring success at the state level.

**Possible Sex Offense:** Case where it is not clear through the investigation whether or not a sex offense took place.

**Rape (including Rape Sodomy):** Penetration, no matter how slight, of the vagina or anus with any body part of object, or oral penetration by a sex organ of another person, without the victim's consent.

**Sex Offense:** Act or contact of a sexual nature without consent that does not rise to the level of rape (e.g., intentionally touching a person's genital, anal, or other inmate areas for sexual gratification or abuse of either party).

**Sex Offense Unit (SOU):** Unit within SIS that handles the following investigations involving victims who are 16 years of age or older: rapes and attempted rapes, sex offenses and attempts, and other complicated cases as deemed necessary by the commanding officer of SIS.

**Sexual Assault Forensic Exam (SAFE):** A free medical exam conducted by a Forensic Nurse Examiner for victims who have been sexually assaulted within the last 120 hours (5 day), or if otherwise determined to be necessary by hospital staff. The SAFE consists of a physical examination as well as collection of evidence from the victim's body and clothes, if applicable.

**Special Investigation Section (SIS):** An arm of BPD's Criminal Investigations Division, SIS houses 14 specialized units, such as the Sex Offense Unit and Child Abuse Unit.


## Abbreviations

**BCSAO:** Baltimore City State's Attorney's Office

**BPD:** Baltimore Police Department

**CAU:** Child Abuse Unit

**LGBTQ:** Lesbian, gay, bisexual, transgender, queer/questioning

**RMS:** Records Management System

**SAFE:** Sexual Assault Forensic Exam

**SIS:** Special Investigation Section

**SOU:** Sex Offense Unit

# Appendix B: Methodology

## I.      Statement of Purpose

This methodology was created to describe the Baltimore Police Department's (BPD) plan for complying with Paragraph 264 of the Consent Decree, requiring BPD to "enhance its data collection, analysis, and reporting" for sexual assault investigations. This methodology describes the data that is currently available, as well as the methods for extracting data from Axon and Lotus Notes Records Management Systems.

## II.     Timeline for Developing the Report

BPD originally developed this methodology pursuant to the Sixth Year Monitoring Plan which describes the timeline for production and publication of the report as follows:

- Finalization of methodology: May 26, 2023
- Analysis Conducted: May 26, 2023 through August 18, 2023
- Submission of draft report to DOJ and Monitoring Team: August 18, 2023
- Finalization of report and court filing: October 6, 2023
- Public Posting of the report: Quarter 4, 2023

However, due to unanticipated delays in July 2023, the following revised timeline will be pursued:

- Finalization of methodology: August 18, 2023
- Analysis Conducted: August 18, 2023 through September 22, 2023
- Submission of draft report to DOJ and Monitoring Team: September 29, 2023
- Finalization of report and court filing: February 29, 2024
- Public Posting of the report: Quarter 1, 2024

## III.    Design and Implementation

Data compiled for the 2022 Sex Assault Investigations Data Report originate from Axon and Lotus Notes Records Management Systems (hereafter referred to as "Axon" and "Lotus Notes"). Axon contains a majority of the data necessary for the Report, including information on incidents, offenders, and victims for Sex Offense Unit (SOU), Child Abuse Unit (CAU), and 4th Degree (Patrol) sex assault cases. However, because Axon's Case Management environment did not launch until June 2023, BPD investigators continued to use Lotus Notes to track and detail the progress of all cases in 2022[17]. Therefore, Lotus Notes data was used to assess deliverables related to case status (SOU and CAU), case outcomes (Patrol/4th Degree), and SAFE kit processing in this Report.

---

[17] Axon Case Management was launched on June 13, 2023, replacing Lotus Notes. Therefore, the sexual assault data report that addresses 2024 cases, which will be published in 2025, will be the first to pull from a single data source rather than multiple sources.

A. Data Required by Consent Decree Paragraph 264, Subparagraphs A-F

BPD continues to comprehensively compile data and report information on all cases of rape and sex offenses handled by SOU and CAU as well as data on 4th degree sex assaults handled by Patrol. These data include information on incidents that victims/complainants reported in 2022 and cases that BPD resolved in 2022, regardless of when victims/complainants first reported the incidents to BPD.

The following section provides an overview of the analyses required by subparagraphs A-F of Consent Decree paragraph 264 and the data source that was utilized to complete each analysis.

**Paragraph 264(a):** Under Paragraph 264(a), BPD must track "[t]he numbers of sex offenses, broken down by crime category, that are reported to BPD, identifying, where applicable, incidents involving co-occurring crimes (i.e., sexual assaults involving domestic violence or stalking)."

| | Analysis | Paragraph | Data Source |
|---|---|---|---|
| 1 | SOU Case Totals, 2018-2022 | 264(a) | Axon |
| 2 | Types of Offenses Handled by SOU, 2022 | 264(a) | Axon |
| 3 | SOU Co-Occurring Crimes | 264(a) | Axon |
| 4 | CAU Case Totals, 2018-2022 | 264(a) | Axon |
| 5 | Types of Offenses Handled by CAU, 2022 | 264(a) | Axon |
| 6 | CAU Co-Occurring Crimes | 264(a) | Axon |
| 7 | 4th Degree Sex Offense Case Totals, 2020-2022 | 264(a) | Axon |
| 8 | 4th Degree Co-Occurring Crimes | 264(a) | Axon |

**Paragraph 264(b):** Under Paragraph 264(b), BPD must track "[t]he number of [offenders], both the totals and broken down by gender (i.e., male, female, transgender[18], queer or non-binary) and the relationship of the [offender] to the victim (i.e., stranger or non-stranger)."

| | Analysis | Paragraph | Data Source |
|---|---|---|---|
| 9 | Number of Offenders – SOU, CAU, Patrol | 264(b) | Axon |
| 10 | Race of Offenders – SOU, CAU, Patrol | 264(b) | Axon |
| 11 | Gender of Offenders – SOU, CAU, Patrol | 264(b) | Axon |
| 12 | Age Range of Offenders – SOU, CAU, Patrol | 264(b) | Axon |
| 13 | Victim-Offender Relationship – SOU, CAU, Patrol | 264(b) | Axon |

---

[18] Currently, BPD officers can select from the following options when reporting a person's sex/gender: Female, Male, Unknown, or X. Therefore, we are unable to report on more specific categories for transgender and gender non-conforming persons.

**Paragraph 264(c):** Under Paragraph 264(c), BPD must track "[t]he number of victims/complainants, both the totals and broken down by gender, race, and age (i.e., under 18 and 18 and older)."

|    | Analysis                                  | Paragraph | Data Source |
|----|-------------------------------------------|-----------|-------------|
| 14 | Number of Victims – SOU, CAU, Patrol      | 264(c)    | Axon        |
| 15 | Race of Victims – SOU, CAU, Patrol        | 264(c)    | Axon        |
| 16 | Gender of Victims – SOU, CAU, Patrol      | 264(c)    | Axon        |
| 17 | Age Range of Victims – SOU, CAU, Patrol   | 264(c)    | Axon        |

**Paragraphs 264(d) and (e)**: Under Paragraphs 264 (d) and (e), BPD must also report data on the outcomes of reported cases, broken down by the BPD unit handling the report, including the total number of cases that BPD resolved as "unfounded," cases that BPD cleared by arrest or exceptional means, cases that remain open and inactive, and cases that were referred to the Baltimore City State's Attorney Office.

|    | Analysis                                   | Paragraph | Data Source    |
|----|--------------------------------------------|-----------|----------------|
| 18 | Unfounded Cases – SOU & CAU, 2019-2022     | 264(d)    | Lotus Notes    |
| 19 | Case Statuses – SOU & CAU, 2019-2022       | 264(e)    | Lotus Notes    |
| 20 | 4th Degree Case Outcomes                   | 264(e)    | Axon[19]       |
| 21 | Total Cases Closed – SOU & CAU, 2019-2022  | 264(e)    | Lotus Notes    |

**Paragraph 264(f):** Under Paragraph 254(f), BPD must track "[d]ata about the processing of forensic medical exams (often referred to as "rape kits"), including: (1) date of reported incident; (2) date of SAFE exam; (3) date detectives request lab analysis of SAFE exam; (4) date detectives receive lab analysis results."

|    | Analysis                                       | Paragraph | Data Source    |
|----|------------------------------------------------|-----------|----------------|
| 22 | Number of Cases with and without SAFE Kits     | 264(f)    | Lotus Notes    |
| 23 | Timeline of SAFE Kit Processing                | 264(f)    | Lotus Notes    |

B.  Plan for Extracting Data from Axon and Lotus Notes

To report on the requirements of **subparagraphs 264(a) through 264(c)**, BPD will:

Extract all Axon records pertaining to incidents of rape and sex offenses (including 4th degree sexual assaults) handled by SOU, CAU, and Patrol between January 1, 2022 and

---

[19] In some cases, SOU/CAU handle 4th degree sex offenses. Case status data for these incidents is not available for 2022 (as it was not pulled along with other case status data in January 2023). Therefore, case status statistics for 4th degree offenses will not include 4th degree cases investigated by SOU/CAU.

December 31, 2022[20]. These data include cases that have been closed and cases that remain open at the time of the data pull. Axon data provides the following information for analysis:

- Incident Number
- Incident Date/Time
- Offense Type[21]
- Offender First Name[22]
- Offender Last Name
- Offender Race
- Offender Sex
- Offender Age
- Victim-Offender Relationship
- Victim First Name
- Victim Last Name
- Victim Race
- Victim Sex
- Victim Age

Axon data was be extracted by a system administrator from BPD's Information Technology Division. After extraction, data is maintained and analyzed by CDIU's Research Analyst.

To report on the requirements of **subparagraphs 264(d) through 264(f)**, BPD:

Extracted all Lotus Notes cases pertaining to incidents of rape and sex offenses (including 4th degree sexual assaults) handled by SOU and CAU between January 1, 2022 and December 31, 2022. These data include cases that have been closed and cases that remain open at the time of the data pull. Lotus Notes data provides the following information for analysis:

- Case Status (e.g., Open/Closed, Unfounded)
- SAFE Kit Conducted (yes/no)
- SAFE Kit Conducted Date
- SAFE Kit Requested (yes/no)
- SAFE Kit Request Date
- SAFE Kit Results/Completion Date

---

[20] To arrive at the case population encompassing 4th degree sex offenses, BPD extracted cases that have an Offense Type of "Fondling", a code officers began using in 2021 as part of the transition to the National Incident-Based Reporting System (NIBRS). Similar to the previously used UCR definition of "placing hands", the NIBRS definition of "Fondling" most closely mirrors the Maryland legal definition of 4th degree sex offense, thus also serving as a relatively reliable proxy for 4th degree sex offenses in BPD's data systems.

[21] BPD provides offense information for all offense types associated with a given incident to allow for assessment of co-occurring crimes, per requirement of subparagraph 264(a).

[22] Offender and Victim names were used solely to calculate the total count of offenders (Analysis 9) and victims (Analysis 14). No personally identifiable information is included in this Data Report.

Lotus Notes data for 2022 was extracted by SOU/CAU staff and CDIU's Research Analyst in January 2023. By extracting the data in early January, BPD is able to more accurately address subparagraph 264(e), which requires the reporting of case statuses as they stood on December 31, 2022.

Lotus Notes does not contain case outcome data for 4th degree sexual assaults handled by Patrol. Therefore, to assess 4th degree case outcomes, BPD extracted all Axon records pertaining to 4th degree sexual assault cases between January 1, 2022 and December 31, 2022[23]. BPD's Axon representatives pulled these data in September 2023 and manual review was conducted by CDIU and Patrol commanders in November 2023.

- Case Outcome (e.g., Cleared by Arrest, Cleared by Exception)[24]

---

[23] To arrive at the case population encompassing 4th degree sex offenses, BPD extracted cases that have an Offense Type of "Fondling", a code officers began using in 2021 as part of the transition to the National Incident-Based Reporting System (NIBRS). Similar to the previously used UCR definition of "placing hands", the NIBRS definition of "Fondling" most closely mirrors the Maryland legal definition of 4th degree sex offense, thus also serving as a relatively reliable proxy for 4th degree sex offenses in BPD's data systems.

[24] For 4th degree cases handled by Patrol, BPD is able to report on some of the outcome information as required by the Consent Decree ('unfounded', cleared by arrest or exceptional means, and whether a case remains 'open'). However, data is not available on whether a case was forwarded to prosecutors by Patrol, nor does it include whether cases are open/inactive. The open/inactive designation is a management strategy used by SOU, as opposed to an official case status that would be recorded by Patrol for the cases in which they are primary.