# **EXHIBIT 1**

**Assessment of Arrests Resulting in a Release Without Charges (RWOC)**
*(Referred to as "BPD Analysis of District Court Commissioner Arrest Data Report" in the Sixth Year Monitoring Plan)*
*Baltimore Police Department*
*Fourth Quarter, 2023*

## Overview

The Baltimore Police Department (BPD) is dedicated to upholding the U.S. Constitution and enforcing laws in a fair, impartial, and ethical manner. As part of this commitment, BPD conducts a quarterly analysis of arrests that resulted in subjects being released without charges (RWOC) by the State's Attorney's Office (SAO) after being transported to the Central Booking Intake Facility (CBIF). In this analysis, BPD assesses the quality of those arrests, takes necessary corrective actions, and identifies opportunities to improve departmental performance.

If an arrest lacks Probable Cause (PC), it will be included in the list of RWOC dispositions. However, RWOC arrests also include all arrests the SAO has declined to prosecute. The SAO may decline to prosecute for many reasons, including prosecutorial discretion or if the SAO determined it was unable to prove the criminal charge(s) beyond a reasonable doubt, even if PC existed. This review encompasses an array of arrests declined for a variety of reasons.

This report is the 15th of continuous quarterly assessments on this topic. The first report examined RWOCs from Q2 2020. In 2020, BPD delivered training throughout the agency on stops, searches, and arrests based on newly developed policies which went live in February 2021. BPD has continued to deliver this training on an annual basis. Since Q2 2020, the number of RWOCs has declined significantly, both overall and as a percentage of arrests.

This report details the following elements of this review:

1. Methodology for this analysis;
2. Statistical analysis of RWOCs and any associated trends;
3. Case review findings regarding RWOCs demonstrating deficiencies;
4. Recommendations to address the findings of this report; and
5. Updates on recommendations from previous RWOC Assessments.

1

## Key Findings

- There were 17 total RWOCs in Q4 2023, an increase from the previous quarter (Q3 2023) (10).
- Since the RWOC reports began in Q2 2020, the highest number of RWOCs was in Q2 2020 at 161 and the lowest was in Q2 2022 at 7. The average number of RWOCs for the past four quarters (Q1 – Q4 2023) is 14.5.
- The Maryland Department of Public Safety and Correctional Services (DPSCS) reported 3,650 adult arrests by BPD in Q4 2023. The SAO released a total of 17 arrestees without charges, which represents 0.47% of the total BPD adult arrests.
- The most common reason identified by the SAO in Q4 2023 was "Prosecutorial Discretion" (59%).
- BPD reviewed all 17 RWOCs and found that valid PC existed in 16 cases.
- 1 case was found to lack probable cause. It was the officer's first CDS related arrest.

## Methodology

To conduct this assessment, BPD obtains a list of arrests from the SAO that concluded with releasing the subject without charges. Upon receipt of the list of RWOCs, the Inspections Unit separates RWOC arrests which the SAO categorized as "Prosecutorial Discretion," because these may represent policy decisions by the SAO rather than legal issues with the arrest.[1] To ensure that there were no legal or BPD policy issues, BPD randomly reviews 10%[2] of arrests that are labeled as "Prosecutorial Discretion". Within the 10%, arrests for "lesser offenses"[3] are prioritized. Additionally, BPD reviews all RWOC arrests that the SAO categorized for a reason other than prosecutorial discretion. Every case review will include an analysis of reports associated with the arrest, and BWC footage (if applicable) to determine if the arrest was made in accordance with appropriate legal standards. In order to assess patterns in arrest practices, demographics of the subjects and officers will be added to the SAO's RWOC list, as well as shifts, units, districts, and assignments of the arresting officer.[4]

BPD will focus its review on PC determinations and other important legal standards that may lead to developing PC for arrests. Following this review, BPD will take any appropriate action, which may include training and/or other corrective action for the involved officer(s); and/or referring incident(s) to the Public Integrity Bureau (PIB) for administrative or criminal investigation.

---

[1] For example, SAO may opt not to prosecute certain crimes due to policy decisions made other lesser offenses.
[2] Due to the low number of RWOCs for Q4 2023, all were reviewed during this inspection.
[3] "Lesser Offenses" include crimes such as disorderly conduct, trespassing, or obstructing/hindering.
[4] A redacted version of the SAO's RWOC spreadsheet will be released along with this report.

## Statistical Analysis

In the fourth quarter of 2023 (Q4), the Maryland Department of Public Safety and Correctional Services (DPSCS) reported 3,295 adult arrests by the BPD[5]. The SAO determined a total of 17 arrests as RWOCs during this time period, seven more than the previous quarter, and down 89% from 161 in the first completed quarterly RWOC assessment from Q2 2020, which was the highest quarter in both the number of RWOCs and percentage of arrests. Seventeen RWOCs represent 0.52% of the total BPD adult arrests during this time period.

The SAO categorized the 17 RWOCs for Q4 as follows in Table 1:

| SAO Reason for RWOC | Count | % of Total |
|---|---|---|
| 4th Amendment Violation | 2 | 12% |
| No Nexus | 1 | 6% |
| Elements of the crime not readily provable | 4 | 24% |
| Prosecutorial Discretion | 10 | 59% |
| **Total** | **17** | **100 %** |

*Table 1. SAO Reasons for RWOCs in Q4 2023*
*All percentages are rounded to the nearest whole number.*

The number of RWOCs compared to total BPD arrests is visualized in Chart 1:

---

[5] Juvenile arrests in Baltimore are processed by a separate system, and the SAO does not generate a list of juveniles released without charges.



*Chart 1. Percentage of Total Arrests RWOC by SAO*

The primary charge(s) for the 17 RWOCs is listed in Table 2:

| Charge | Count |
|---|---|
| Aggravated Assault | 1 |
| Car Theft | 1 |
| Handgun Violation | 1 |
| CDS Violations | 11 |
| Prostitution | 3 |
| Total | 17 |

*Table 2. Primary criminal charges for each RWOC in Q4 2023*

*Distribution of RWOCs by Command*

Table 3 below shows the distribution of Q4 RWOCs by command. Seven Districts had at least 1 RWOC during the quarter, with the Southeastern and Southern Districts having none.

These statistics and the accompanying case review details will be provided to the relevant commands for further analysis and discussion with their units regarding enforcement decisions and report writing.

| Command | # of RWOCs | % of Total |
|---|---|---|
| Central | 1 | 6% |
| Eastern | 4 | 24% |
| MMU | 1 | 6% |
| Northern | 2 | 12% |
| Northwestern | 2 | 12% |
| Western | 5 | 29% |
| Southwestern | 2 | 12% |
| Total | 17 | 100% |

*Table 3. RWOC Distribution by Command in Q4 2023.*
*\*All percentages are rounded to the nearest whole number.*

Table 4, below, shows the aggregate totals for RWOC data from Q2 of 2020 through Q4 of 2023 by command:

| Command | # of RWOCs | % of Total |
|---|---|---|
| Northeast | 144 | 24% |
| Central | 93 | 15% |
| Southern | 68 | 11% |
| Southwest | 65 | 11% |
| Southeast | 62 | 10% |
| Western | 53 | 9% |
| Northern | 37 | 6% |
| Eastern | 32 | 5% |
| Northwest | 26 | 4% |
| MMU | 10 | 1% |
| MFF | 6 | 1% |
| ACS | 3 | 0% |
| RATT | 2 | 0% |
| SWAT | 1 | 0% |
| **Total** | **602** | |

*Table 4. Q2 2020 through Q4 2023 Distribution by Command, Sorted for Frequency*

*\*All percentages are rounded to the nearest whole number.*

5

The following graphs represent the trends over two years of total RWOCs (Graph 1), RWOC percentage of total arrests (Graph 2), and Total BPD arrests (Graph 3).



*Graph 1: Total RWOCs over the past 7 quarters*



*Graph 2. RWOC percentage of total arrests over the past 7 quarters*



*Graph 3. Total BPD arrests over the past 7 quarters*

*Distribution of RWOCs by District and Shift in Q4 2023*

    Table 5 depicts a breakdown of RWOCs by district and shift for the quarter. This table includes all 17 RWOCs. The tour of duty for the A shift is 10:45 p.m. to 7:15 a.m., the B shift is 06:45 a.m. to 3:15 p.m., and the C shift is 2:45 p.m. to 11:15 p.m. Districts also deploy District Action Teams (DAT) for proactive enforcement.

    Patrol shift A had the highest total amount of RWOC cases this quarter with 6, followed by DAT with 5, and Patrol shift C with 4. Patrol shift B had the fewest number of cases with 2.

| District | A | B | C | DAT | District Total |
|---|---|---|---|---|---|
| Central | 1 | | | | 1 |
| Southeast | | | | | 0 |
| Eastern | 3 | 1 | 1 | | 5 |
| Northeast | | | | | 0 |
| Northern | 1 | | 1 | | 2 |
| Northwest | | | | 2 | 2 |
| Western | 1 | 1 | | 2 | 4 |
| Southwest | | | 1 | 1 | 2 |
| MMU | | | 1 | | 1 |
| **Shift/Unit Total** | **6** | **2** | **4** | **5** | **17** |

*Table 5. Distribution of RWOCs by District and Shift in Q4 2023*

There were seven more RWOCs this quarter when compared to Q3. RWOCs occurred on each shift (in the above Districts) with the highest amount occurring on the Adam shift, which had 6 RWOCS.

Figure 1, below, represents the cumulative RWOC trends for the past fifteen quarters:



*Figure 1. Q2 2020 through Q4 2023 RWOCs by District and Shift*

RWOCs account for 0.5% of total arrests, and BPD's Operations Bureau should continue to use these quarterly reports and supporting data to determine if there is a need to alter enforcement strategies.

**RWOCs Analyzed**

In order for an arrest to be legal, there needs to be at least Reasonable Articulable Suspicion (RAS) for the stop and Probable Cause (PC) for the arrest. BPD initiates its review process with a list of RWOCs, including a reason for the RWOC from the SAO. BPD then analyzes the RWOCs and provides a conclusion as to whether or not probable cause was established. BPD also reviews the reports from all RWOC arrests to determine whether or not they comply with BPD policy by accurately articulating the facts that support probable cause.

For Q4 2023, BPD reviewed all 17 RWOCs, and the results of the review are detailed on the following page:

*RWOC Review Results*

BPD determined that of the 17 reviewed cases, 16 had valid PC for arrest along with satisfactorily written reports. However, 1 case lacked PC.

BPD's analysis included a detailed review of the BWC footage and associated reports for each case. The analysis revealed that the officer(s) in all cases had adequate PC for arrest but were denied charges. The majority of the cases were CDS Violations.

Table 6 below represents the findings:

| Review Result | Count | % of Total |
|---|---|---|
| Lacked PC for Arrest | 1 | 6% |
| Valid PC but Poor Reporting | 0 | 0% |
| Valid PC and Adequate Reporting | 16 | 94% |
| Total | 17 | 100% |

*Table 6. Results of RWOC Review in Q4 2023*
*\*All percentages are rounded to the nearest whole number.*

*Distribution of Problematic RWOCs by Original SAO Reason for RWOC*

Table 7 shows BPD's conclusions on problematic RWOCs on the left and the original reason for the RWOCs from the SAO on the right in the aggregate across the quarter in which these reviews have occurred:

| BPD Review Result | SAO Reason | Count |
|---|---|---|
| Lacked PC / RAS for Arrest (1) | 4th Amendment Violation | 1 |
| | Elements of crime not readily provable | 0 |
| | Prosecutorial Discretion | 0 |
| Valid PC but Poor Reporting (0) | Elements of crime not readily provable | 0 |
| | Prosecutorial Discretion | 0 |
| | No Nexus | 0 |
| | 4th Amendment Violation | 0 |
| **Total** | | 1 |

*Table 7. Q4 2023 Distribution of Problematic RWOCs by Original SAO Reason.*

Table 8 summarizes the aggregate distribution of problematic RWOCs across the three years:

| Command | Lacked PC for Arrest / Invalid | PC but Poor Reporting | Incorrect Application of Civil Offense Charge | Total |
|---|---|---|---|---|
| Southeast | 4 | 2 | 1 | 7 |
| Central | 1 | 3 | | 4 |
| Northeast | 3 | 4 | | 7 |
| Northern | 2 | | | 2 |
| Education and Training | | 1 | | 1 |
| Eastern | 2 | | | 2 |
| Southern | | 2 | | 2 |
| Southwest | 1 | 2 | | 4 |
| Western | 1 | 1 | | 1 |
| **Total** | **14** | **15** | **1** | **30** |

*Table 8. Q2 2020 through Q4 2023 Distribution of Problematic RWOCs by District.*

*Distribution of RWOCs by Officer*

There were no patterns in the problematic RWOCs for officers during the Q4 2023 assessment period. 1 Officer had 2 non-problematic RWOCs this quarter (CDS: prosecutorial discretion and elements not readily provable). This continues a trend of few or no officers with multiple RWOCs in the past several quarters, but a significant decrease from Q1 2021 in which 15 officers had multiple RWOCs, and Q4 2020 in which 24 officers had multiple RWOCs.

**Case Review Findings**

This section provides a summary of the RWOC deemed by BPD to lack probable cause.

- *CDS Possession*
- *Western District*
- *SAO declination reason: 4th Amendment Violation*

On 11-2-23 at approx. 0932 hrs., Western District Patrol Officers conducted a traffic stop in the area of the 900 blk of W North Ave due to a vehicle having a faulty brake light. Officers approached the vehicle and observed two occupants (the operator who was a male subject and a female front passenger). Officers requested the operator's driver's license and vehicle registration. The male driver produced the license as requested but was unable to immediately locate the registration. At this time, both the driver and female passenger searched the glove compartment as well as some bags for the vehicle registration. This occurred for over two minutes; however, the passenger eventually produced the Officer with the document.

While the occupants were attempting to locate the vehicle registration, a back-up Officer on scene observed a needle fall from a bag in which the female passenger was engaging. Officers advised the driver and passenger of their observation and asked both of them to exit the vehicle to which the passenger refused. The passenger advised that she was a part of a needle exchange program and was authorized to have the needle. The female passenger advised Officers that she was in possession of an authorization card to prove this. She searched her bag for a few minutes but was unable to produce the card. She was also unable to provide a picture of said card. Officers conversed with the passenger for more than five minutes about the details and location of the card, but the efforts yielded no result as the passenger was still unable to produce the authorization card for the needle.

While the female passenger was attempting to locate the card, the back-up Officer observed the driver clinching and pushing his hand in the front seat area of the vehicle in a manner which led the Officer to believe the driver was attempting to conceal a small item. The primary and back up Officer then walked behind the stopped vehicle where they discussed the aforementioned observation of the back-up Officer. This resulted in both Officers temporarily not observing the complete subsequent actions of the driver and passenger. A supervisor responded to the scene, and Officers asked the driver and passenger to exit the vehicle to which they complied. This was done to further investigate the perceived action of the driver's attempt to conceal an unknown item. Upon exiting the vehicle, the driver was detained, and a pat down was conducted by the primary Officer, but there was no expressed RAS that the driver was believed to be armed.

The primary Officer then proceeded to search the vehicle. However, this search was based on RAS and not Probable Cause, which does not fit the criteria for a warrant exception to search a vehicle. The Officer observed a green handbag, and a black bag on the seat between the driver and passenger seats. Both bags were directly seated between the driver and passenger while both of them (driver and passenger) were still inside the vehicle. The Officer searched both bags and recovered 6 gel caps containing white powdery substance (suspected CDS), as well as multiple used and unused needles from the green handbag. The

11

driver advised Officers he was the owner of the green handbag, and also the owner of the recovered suspected CDS from the same bag. The driver was subsequently arrested.

As Officers loaded the arrestee inside the transport vehicle, the arrestee advised Officers they (the arrestee) believed there was 1 vile of suspected CDS inside their boxers. Officers advised the arrestee that they (Officers) would check upon arrival at the district. At the District, Officers allowed the arrestee to remove the 1 vile containing white powdery substance (suspected CDS) from arrestee's boxers.

The arresting Officer's report was inadequately authored as it lacked complete and detailed accounts of the totality of the facts and circumstances. This was the arresting Officer's first CDS related arrest.

The totality of the Officers' observation of the needle falling from the bag, as well as the perceived observation of the driver's attempt to conceal a small item from Officers' view, led the Officers to believe that CDS was the possible item being hidden by the driver. However, there was no indication that Officers believed that the driver was armed or was attempting to conceal a weapon. Based on this BPD finds that there was no probable cause for the Officer to search the vehicle and subsequently make an arrest based on the findings of the search.

## Recommendations[6]

Compliance Bureau:

1. Present findings and supporting data to BPD Commanders to influence the continued downward trend of problematic BPD RWOCs

Education and Training

*CDS Possession, Western District*

1. Provide supplemental training to the Arresting Officer in the areas of:
   - Policy 1109, *Warrantless Searches*
   - Report Writing
   - CDS Investigations

---

[6] The Compliance Bureau will monitor the progress of approved recommendations through a "Recommendation Tracker" mechanism, which will provide due dates to the responsible BPD entity along with mandates of written documentation certifying completion.

# Appendix A

## Summary of RWOC Case Reviews

| Date | Time | Arrestee's Gender | Arrestee's Race | Primary Charge | Reason for RWOC | fficer's Gende | Officer's Race | District | Unit Assigned | Shift | BPD Finding |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/18/2023 | 0218hrs | Male | African American | Prostitution | Elements of the Crime Not Readily Provable. | Male | Caucasian | Eastern | patrol | Adam | Valid PC |
| 10/18/2023 | 1100hrs | Male | African American | Possession Cannabis | Prosecutorial Discretion | Male | Caucasian | Western | DAT | Baker | Valid PC |
| 10/18/2023 | 0425hrs | Male | African American | Prostitution | Prosecutorial Discretion | Female | Caucasian | Eastern | VICE | Adam | Valid PC |
| 10/19/2023 | 0050hrs | Male | African American | Prostitution | Prosecutorial Discretion | Male | Caucasian | Eastern | VICE | Adam | Valid PC |
| 11/2/2023 | 0932hrs | Male | Caucasian | Possession CDS | 4th Amendment Violation | Male | Caucasian | Western | Patrol | Baker | Lacked PC |
| 11/30/2023 | 0006hrs | Male | African American | Car Theft | Elements of the Crime Not Readily Provable | Male | African American | Central | Patrol | Adam | Valid PC |
| 11/2/2023 | 2220hrs | | African American | Possession Cannabis | Prosecutorial Discrection | Male | Caucasian | Eastern | Patrol | Charlie | Valid PC |
| 12/3/2023 | 0005hrs | | African American | PWID Cannabis | Prosecutorial Discretion | Male | African American | Southwestern | Patrol | Charlie | Valid PC |
| 12/4/2023 | 0926 hrs | Male | African American | PWID CDS | Elements of the Crime Not Readily Provable | Male | African American | Northwestern | DAT | Baker | Valid PC |
| 12/6/2023 | 1100hrs | Male | African American | PWID CDS | No Nexus | Male | Caussasian | Southwestern | DAT | Baker | Valid PC |
| 12/10/2023 | 1635hrs | Male | African American | Distribution Cannabis | Prosecutorial Discretion | Male | Asian | Northern | Patrol | Charlie | Valid PC |
| 12/15/2023 | 1242hrs | Male | African American | Handgun Violation | 4th Amendment Violation | Male | Caucasian | Western | DAT | Baker | Valid PC |
| 12/20/2023 | 0130hrs | Female | African American | Attempted Murder | Elements of the Crime Not Readily Provable. | Male | African American | Western | Patrol | Adam | Valid PC |
| 12/28/2023 | 1849hrs | Male | African American | PWID Cannabis | Prosecutorial Discretion | Male | Caucasian | Western | MMU | Charlie | Valid PC |
| 12/29/2023 | 0055hrs | Female | African American | PWID Cannabis | Prosecutorial Discretion | Male | African American | Northern | Patrol | Adam | Valid PC |
| 12/29/2023 | 1343hrs | Male | African American | Distribution Cannabis | Prosecutorial Discretion | Male | African American | Northwestern | DAT | Baker | Valid PC |
| 12/29/2023 | 1212hrs | Male | African American | Distribution Cannabis | Prosecutorial Discretion | Female | African American | Eastern | DAT | Baker | Valid PC |

14