## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,　　　　*

　　　Plaintiff,　　　　　　　　　*

　　　v.　　　　　　　　　　　　*　　　　CIVIL NO. JKB-17-0099

BALTIMORE POLICE　　　　　　　*
DEPARTMENT, et al.,
　　　　　　　　　　　　　　　*
　　　Defendants.

　　　　　　　　　　　　***

### MEMORANDUM AND ORDER

Before the Court is the Parties' Joint Motion for Partial Termination. (ECF No. 809.) The Motion seeks that the Court find that the Mayor and City Council of Baltimore ("the City") and the Baltimore Police Department ("BPD") have sustained full and effective compliance for the required one-year sustainment period with two sections of the Consent Decree: Transportation of Persons in Custody and Officer Assistance and Support. (*Id.*) The Motion also seeks that the Court terminate those two sections of the Decree. (*Id.*)

For the reasons stated herein and in open court, the Court will grant the pending Motion. The Court finds that the City and BPD have sustained full and effective compliance for the requisite one-year period, and that these two sections of the Decree are severable. The Court will therefore terminate these two sections of the Decree.

### I.　Consent Decree Requirements

The Consent Decree provides that "[u]pon the Court's determination that the City and BPD have achieved Full and Effective Compliance with this Agreement as defined below and have maintained such compliance for at least one year for [certain sections of the Decree], and for at

least two years for [certain sections of the Decree], the Court will terminate the Agreement and dismiss the case." (Consent Decree ¶ 504.)

The Consent Decree provides that, "[t]o achieve 'Full and Effective Compliance,' the City and BPD must demonstrate that they have (a) incorporated all Material Requirements of this [Consent Decree] into policy, trained relevant personnel as necessary to fulfill their responsibilities pursuant to the material requirements, and ensured that each material requirement is being carried out in practice; and (b) shown sustained and continuing improvement in constitutional policing as demonstrated by the [Consent Decree's] Outcome Assessments." (*Id.* ¶ 506.) While there is no "numerical test" to satisfy, BPD must demonstrate "substantial adherence" with the Decree's requirements, "continual improvement," and that "the overall purpose of the Material Requirements has been met." (*Id.*) A "Material Requirement" is defined as "[a] requirement of the [Consent Decree] that has a significant relationship to achieving the purposes of [the Consent Decree]." (*Id.* ¶ 511.aaa.) "BPD [] bear[s] the burden of demonstrating by a preponderance of the evidence its Full and Effective Compliance with [the Decree]." (*Id.* ¶ 493.)

Once the Court determines that Full and Effective Compliance has been reached, a one- or two-year sustainment period begins,[1] and Full and Effective Compliance must be maintained for that sustainment period. (*Id.* ¶¶ 504, 506.) After that period, "[t]he City and BPD may move the Court . . . to terminate [the Consent Decree] upon a showing by a preponderance of the evidence that BPD has reached Full and Effective Compliance and maintained that compliance according to the time periods set forth in Paragraph 504. The Parties may also agree to jointly ask the Court to terminate [the Consent Decree] at any time after BPD has been in Full and Effective compliance with [the Consent Decree] in accordance with Paragraph 504." (*Id.* ¶ 507.)

---

[1] The two sections at issue today have a one-year sustainment period.

To the extent that BPD and the City have reached Full and Effective Compliance and have complied with the requisite sustainment period with a part of the Consent Decree (as opposed to the Decree as a whole), the City and BPD may move to terminate just that part of the Decree. (*Id.* ¶ 508.) "To terminate a part of the Agreement, that part must be sufficiently severable from the other requirements of the Agreement that noncompliance with those other requirements does not implicate BPD's ability to police in accordance with federal law and this Agreement in the part to be terminated. In determining whether there is Full and Effective Compliance with a part of the Agreement, all the requirements of the Agreement may be assessed collectively to determine whether the intended outcome of the part has been achieved." (*Id.*) And "for any motion to terminate, the Court shall hold a hearing on the motion and the burden will be on the City and BPD to demonstrate that they are in Full and Effective Compliance with this Agreement or any severable part and have maintained such compliance in accordance with Paragraph 504." (*Id.* ¶ 510.)

## II.    Background

After a hearing, and in an order dated January 25, 2024, the Court concluded that BPD and the City reached Full and Effective Compliance with respect to Transportation of Persons in Custody and Officer Assistance and Support. (ECF No. 687.) After reviewing the parties' submissions and the Monitoring Team's reports, the Court concluded that Full and Effective Compliance had been demonstrated with respect to these topics. (*Id.*) The Court also concluded that the sustainment period would begin on January 25, 2024 and end on January 25, 2025. (*Id.*)

The Court set deadlines for BPD to provide self-assessment plans regarding these topics to the parties, the Monitor, and the Court. (*Id.*) BPD and the City submitted sustainment plans to the Court that were reviewed and approved by the Department of Justice ("DOJ") and by the Monitoring Team. (ECF Nos. 695, 697.)

3

Close to the end of the sustainment period, the Court also set deadlines in connection with BPD and the City's filings of their final self-assessment reports, and for the filing of any motions seeking termination of the Decree. (ECF No. 789.)

BPD filed its self-assessments, (ECF Nos. 801, 804), and the parties have filed a Joint Motion for Partial Termination, (ECF No. 809). In the Motion, they seek partial termination of the Consent Decree because they contend that BPD and the City have sustained full and effective compliance for one year with respect to Transportation of Persons in Custody and Officer Assistance and Support. (*Id.*) BPD and the City provided a memorandum in support (ECF No. 809-1), as has the DOJ (ECF No. 810). The Monitoring Team docketed its recommendation, in which it agrees that the Motion should be granted. (ECF No. 813.) The parties and the Monitoring Team also presented their views at a hearing on April 17, 2025.

## III.    Analysis

The Court has carefully reviewed the submissions of the parties and the Monitoring Team, including BPD and the City's self-assessments. The Court, accepting these representations, and upon on its own review of evidence and the filings submitted by the parties and the Monitor, finds that BPD and the City have sustained Full and Effective Compliance for the requisite one-year period with respect to Transportation of Persons in Custody and Officer Assistance and Support. The Court also concludes that these two sections are sufficiently severable from the Decree as to warrant termination of those two sections of the Decree.

### A.  Transportation of Persons in Custody

Section IX of the Decree addresses Transportation of Persons in Custody. (Consent Decree ¶¶ 222–38.) The Decree provides that the "[t]he Parties recognize that safe and effective transportation of detainees is an essential step in the process of taking a person into custody, and

4

must be conducted in a manner that protects the wellbeing and personal security of officers, the public, and the people being transported" and that BPD must "ensure that officers responsible for prisoner transportation are aware of detainees' physical well-being to ensure that the individual is transported safely." (*Id.* ¶ 222.) The Decree includes requirements relating to transportation equipment, procedures, monitoring, polices, and training. (*Id.* ¶¶ 222–38.) The Court concluded in January 2024 that BPD had demonstrated that it reached Full and Effective Compliance with respect to this section of the Decree. (ECF No. 687.)

The Court now finds that BPD has sustained that compliance for the requisite one-year period and that this section of the Decree is sufficiently severable as to warrant termination. In short, BPD's self-assessment, as well as the briefing from the parties, reflects that BPD has maintained very high compliance scores throughout the sustainment period. (*See generally* ECF No. 804.) For instance, BPD achieved an overall score of 100% in functioning equipment in prisoner transport vehicles. (*Id.* at 9.) It also achieved a 100% score with respect to taking immediate action in response to medical distress or injury. (*Id.* at 34.) And of course, some scores were less than perfect. For example, transport vehicle camera or "TVC" footage was stored adequately in 93% of cases. (*Id.* at 11.) However, as BPD has explained, the assessment was based on BPD's old camera systems and vans, and BPD anticipates that this score will improve as new models were introduced in February 2024. (*Id.* at 12.) With respect to safe driving, BPD attained compliance scores of 90% in obeying the posted speed limit and an 89.3% score in safe driving. (*Id.* at 49.) However, these scores appear to have been due in large part to the small margin of error permitted by BPD in its auditing. (*Id.*)

Significantly, the Consent Decree does not require perfection. It requires "substantial adherence" to the Decree's requirements and "continual improvement." (Consent Decree ¶ 506.)

BPD has shown this, certainly by a preponderance of the evidence. And, importantly, this assessment from BPD demonstrates its ability to self-monitor and self-correct. This, ultimately, is the goal of the Consent Decree. And the Court—and the parties and the Monitoring Team—are confident that BPD has demonstrated its ability to achieve and sustain compliance, and to monitor its own compliance.

The Court also finds it critical here that both the DOJ—the plaintiffs in this case—and the Monitoring Team agree that BPD has sustained Full and Effective Compliance for the one-year period, (*see* ECF Nos. 810, 813), and that the Court should so find.

Further, both parties agree that this section is severable given its unique characteristics that make it distinct from other sections, and the Court agrees.

Accordingly, the Court concludes that this section of the Decree should be terminated.

### B. Officer Assistance and Support

Section XVIII of the Decree addresses Officer Assistance and Support. (Consent Decree ¶¶ 436–41.)[2] The Decree requires BPD to provide for its employees' wellness. (*Id.*) With respect to this topic too, the Court concluded in January 2024 that BPD had demonstrated that it reached Full and Effective Compliance with respect to this section of the Decree. (ECF No. 687.) The Court now finds that BPD has sustained that compliance for the requisite one-year period and that this section of the Decree is sufficiently severable as to warrant termination.

The Court again turns to the BPD's self-assessment, which reflects that it has sustained Full and Effective Compliance during the sustainment period. (*See generally* ECF No. 801-1.) BPD has continued to provide support to its employees through its Officer Safety and Wellness

---

[2] As the Court has previously explained, paragraph 438.b (which relates to the peer intervention program) will be considered in connection with Misconduct Investigations and Discipline, rather than Officer Assistance and Support.

6

("OSW") Unit and its employee-assistance program ("EAP"). (*Id.* at 14–15.) BPD has explained that the utilization rate of its EAP is nearly 9%, higher than the industry national average of 5%. (*Id.* at 15.) BPD also provides a peer support program, which provided an average of 94 contact sessions in each quarter of 2024. (*Id.* at 16.) One paragraph of the Decree requires BPD to offer voluntary mental health evaluations following a traumatic incident. (*Id.* at 17.) To assess this provision, BPD reviewed after-action reports ("AARs") covering critical and traumatic events that occurred during the sustainment period. (*Id.*) BPD identified three issues in the first two quarters of 2025 (two documentation errors, and one instance of the peer support member not conducting a follow up referral, although the follow-up referral occurred later by the OSW director), but identified no issues with the AARs submitted in the last two quarters of 2024. (*Id.* at 18.)

Again, the Court also finds it significant here that both the DOJ and the Monitoring Team agree that BPD has sustained Full and Effective Compliance for the one-year period, (*see* ECF Nos. 810, 813), and that the Court should so find.

Further, the Court concludes that this section of the Decree is severable, and both parties agree.

Accordingly, the Court concludes that this section of the Decree should be terminated.

## IV. Conclusion

For the foregoing reasons, and for the reasons stated during the April 17, 2025 Quarterly Public Hearing, it is ORDERED that:

    1. The Parties' Joint Motion for Partial Termination (ECF No. 809) is GRANTED, the Court having found that:

a.  The City and BPD have sustained Full and Effective Compliance for the requisite one-year period with respect to Transportation of Persons in Custody and Officer Assistance and Support.

b.  Those sections are severable from the Decree.

2.  The following provisions of the Decree ARE TERMINATED: (1) Transportation of Persons in Custody and (2) Officer Assistance and Support.

DATED this ___18___ day of April, 2025.

BY THE COURT:

James K. Bredar
United States District Judge

8