IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-17-0099 |
| | * | |
| **BALTIMORE POLICE DEPARTMENT, et al.,** | * | |
| Defendants. | * | |

**SUBMISSION OF EIGHTH-YEAR MONITORING PLAN FOR APPROVAL**

Under paragraphs 461 through 463 of the Consent Decree entered in this matter, ECF No. 2-2 (as modified by ECF Nos. 39 and 410), the Baltimore Police Department Monitoring Team ("Monitoring Team") hereby submits for approval its Eighth-Year Monitoring Plan, attached as **Exhibit A** ("Monitoring Plan" or "Eighth-Year Plan"). The Monitoring Plan is the culmination of substantial collaboration among the Baltimore Police Department ("BPD"), the City of Baltimore (the "City"), the United States Department of Justice ("DOJ"), and the Monitoring Team. It also reflects input from community residents.

As with past years, the Monitoring Plan establishes goals and deadlines for complying with critical requirements of the Consent Decree and establishes vital procedures for community participation in the compliance process. The overarching goal of the Monitoring Plan is to ensure that the implementation of the Consent Decree promotes safe, effective, and constitutional policing—policing that fosters mutual trust and respect between BPD and the communities it serves.

With the concurrence of the parties, the Monitoring Team respectfully requests that the Court approve the Monitoring Plan.

## I.   OVERVIEW OF THE PLAN

The Eighth-Year Plan provides a detailed timetable for implementing certain Consent Decree requirements during the upcoming year. Informed by what BPD and the City have accomplished during the first seven years of monitoring, the Plan furnishes a road map for ensuring that (1) BPD and the City continue to make progress toward adopting lasting, sustainable reform and (2) all stakeholders—Baltimore residents, BPD, the City, and DOJ—know what needs to be done, and when it needs to be done, as the compliance process unfolds.

The Monitoring Plan identifies the obligations of BPD, the City, DOJ, and the Monitoring Team for the eighth year of monitoring, which runs from March 2025 through March 2026. The Monitoring Plan is detailed. It provides numerous deadlines that obligate BPD and the City to comply with the Consent Decree requirements that the Monitoring Team believes ought to be prioritized, and can be achieved, by March 2026. As described in greater detail below, these requirements include conducting in-service training; a review of policies revised earlier in the Consent Decree process; and, most centrally, the completion of a number of assessments of compliance by BPD and the City with the Consent Decree's requirements in almost every area of the Consent Decree.

The Eighth-Year Plan does not contain every step that BPD and the City must take to achieve full and effective compliance with the Consent Decree. It covers only one year of a multi-year project—the eighth year. *See* Consent Decree, ECF No. 2-2 ("CD") ¶¶ 446–47. The Monitoring Team, in collaboration with the Parties and with public input, will provide the plan for

the ninth year in early 2026, with subsequent plans developed and provided to the Court on an annual basis thereafter.

## II.    PROCESS FOR DEVELOPING THE EIGHTH-YEAR PLAN

Gauging the progress made during the first seven years of monitoring, using the Consent Decree as a guide, and relying on the experiences of Monitoring Team members who have assisted with other reform initiatives, the Monitoring Team drafted a plan that attempted to account for what BPD should do, and what it is capable of doing, in the eighth year of monitoring. As with prior Monitoring Plans, the Monitoring Team provided BPD, the City and DOJ with a draft of the plan. The parties provided their feedback and then collaborated with the Monitoring Team to produce a refined draft. On **May 9, 2025**, the draft was issued for public comment.

The public comment period ran from **May 9, 2025, through June 9, 2025**. All written public comments received by the Monitoring Team are included in **Exhibit B**.

When the comment period concluded, the Monitoring Team and the parties considered the comments and generated the final proposed Plan in **Exhibit A**.

## III.    COMMUNITY FEEDBACK AND MONITORING TEAM RESPONSE

Below is a summary of the written comments the Monitoring Team received, as well as the Monitoring Team's response. Among the comments is a letter the Monitoring Team received from the NAACP Legal Defense and Education Fund, Inc. ("LDF"), which contained inciteful suggestions. The Monitoring Team addresses each as follows.

- **Promotion of Transparency**. LDF suggested that the Monitoring Team enhance transparency by 1) including a survey of youth residents in its upcoming resident survey; and 2) broadcasting as broadly as possible notice of the issuance of compliance assessments and other reports, community forums, and policies subject

to public comment. As to the community survey, according to the Monitoring Plan the Monitoring Team will be issuing a request for proposal and selecting a vendor to conduct the survey in the second half of 2025. The Monitoring Team will consult with potential vendors and social scientists as to the feasibility of surveying youth residents. As to communicating notice of reports, forums, and policies subject to public comment, the Monitoring Team has a dedicated roster of neighborhood liaisons led by lead community liaison Wanda Watts. Ms. Watts and her team communicate notice of these events at community meetings, over social media, and through a regular newsletter. The Monitoring Team is regularly exploring ways to continue to reach more of the community with these communications and will continue to do so.

- **Use of Force Policies**. LDF further requested that the Monitoring Team review BPD's policies to ensure that they are consistent with the U.S. Supreme Court's recent decision in *Felix v. Barnes*, which held that court should analyze the reasonableness of a use of force by assessing the totality of all the circumstances of the event, including those leading up to the event, and not limit the evaluation to the "moment-of-threat." While the Supreme Court's decision is recent, the rule it endorsed was not, having previously been the law in Sixth and Seventh Circuits and the predominate view of a majority of law enforcement experts. Not only is BPD's policy consistent with the holding in *Felix v. Barnes*, but the Monitoring Team's subject matter experts have observed BPD training and performance review board evaluations and found that they follow the majority rule, which the Supreme Court followed in its decision.

- **911 Diversion**. LDF also requested that BPD continue to expand the diversion of 911 calls to non-law enforcement resources. Three of the public comments made online also requested greater focus on this effort, and data on its progress.[1] Expansion of this program is part of the City's work to comply with paragraph 97 of the Consent Decree, and the Monitoring Team will assess those efforts in its upcoming assessment of the City's compliance with paragraph 97.

- **Stops, Searches, and Arrests.** LDF asked that public comment on the third suite of BPD stop, search, and arrest policies occur after the Monitoring Team issues the report on its compliance assessment of that area. Currently, according to the Monitoring Plan, the assessment report will be issued by September 19. The public comment period will end on October 10, after that date, thus satisfying LDF's request. Both the review of the policies and the assessment report, however, are complicated tasks and those dates, as with all the deadlines in the Monitoring Plan, are subject to adjustment. LDF also requested that BPD publish data from the system of tracking "quality of life" offense that is required by Consent Decree paragraph 62. *See* CD ¶ 62 and Monitoring Plan Row 15. While such transparency may be beneficial, it is not required by paragraph 62, and thus it is outside the scope of the Monitoring Plan.[2]

---

[1] There were five other comments made online, but all were general comments about the state of BPD and the reform effort. None requested any specific change to the Monitoring Plan.

[2] LDF also made a comment on anticipated revisions to BPD's policy on interactions with youth (Policy 1202) but does not request any adjustments to the Monitoring Plan with respect to that policy.

IV.  **FEATURES OF THE PROPOSED EIGHTH-YEAR PLAN**

   A.  **Year Eight Objectives**

As in the seventh year, the primary focus in the eighth year will be assessments of the compliance of BPD and the City with Consent Decree requirements. The Monitoring Team will start assessments of 11 of the 12 areas not yet in "Full and Effective Compliance."

There is a logical progression for achieving sustainable reform in each area of the Consent Decree that implicates police behavior. BPD first must establish revised *policies* in each area. Then it must develop and conduct *training* on those revised policies.

During the first seven years of monitoring, BPD and the City have neared full implementation of the Consent Decree's foundational reforms. BPD has successfully revised almost all policies implicated by the Consent Decree—upwards of 50. It also has completed Department-wide, Consent Decree-required training in most core areas, including de-escalation and use of force; impartial policing; stops, searches and arrests; behavioral health awareness; responses to reports of sexual assault; peer intervention ("Ethical Policing Is Courageous"); community policing; and First Amendment-protected activities. In addition, BPD has delivered specialized training to Public Integrity Bureau detectives on internal affairs investigations; to sex offense investigators on sex assault investigations; and to crisis intervention team officers, dispatchers and 911 call-takers on crisis intervention and behavioral health awareness.

Further, BPD replaced its antiquated, paper-based reporting system with a new Records Management System, which relies on electronic field-based reporting from officers. BPD and the City also have completed foundational studies and implementation plans, and have proceeded with implementation, in the areas of staffing, officer recruitment/hiring/retention, youth diversion, community policing, and the City's behavioral health system.

In addition, for the first time, the Court has found BPD in sustained compliance in two areas of the Consent Decree—transportation of persons in custody and officer assistance and support. This finding was recommended by DOJ and the Monitoring Team based on the results of BPD's performance during a one-year sustainment period. The Court has granted the parties' joint motion to partially terminate the Consent Decree and BPD is no longer under supervision as to those two areas.

In addition, BPD also reached full and effective compliance in three additional areas: First Amendment protected activities, coordination with Baltimore City School Police, and the Community Oversight Task Force. Like transportation of persons in custody and officer assistance and support, BPD must now complete a one-year sustainment period.

Accordingly, the Eighth-Year Plan continues to take BPD and the City into the advanced phase of the reform process. That phase involves primarily assessments of compliance by BPD and the City with the requirements of the Consent Decree, and assessment of outcome measures that track the real-world impact of the reforms, and, for the three areas in which BPD has reached full and effective compliance, a review of internal BPD assessments of their sustainment of compliance. The Eighth-Year Plan, however, also includes continuing oversite over BPD's training, finalizing of the last few policies implicated by the Consent Decree that have yet to be revised, and a review of policies revised earlier in prior years.

*Policies*

This year, BPD will be finalizing its Community Policing Policy. It will also be reviewing policies related to officer misconduct and discipline; stops, searches, and arrests; interactions with youth, and fair and impartial policing.

*Training*

In the Eighth Year, DOJ and the Monitoring Team will continue their oversight over officer training. BPD has now consolidated its in-service training so that it is administered collectively as one program. That program will cover, community policing, stops, searches and arrests (including training on taking such actions in a non-discriminatory manner), use of force, and behavioral health crisis intervention for all officers. BPD will also provide training conducted by outside experts for all officers who conduct or supervise sexual assault investigations, and training for Public Integrity Bureau investigators. Finally, BPD will conduct training of field training officers and Crisis Intervention Team ("CIT") officers.

*Accountability and Transparency*

The Eighth-Year Plan seeks to continue bolstering departmental and officer accountability by increasing transparency into BPD practices and strengthening BPD's systems for self-evaluation and self-correction. Thus, in the eighth year, BPD will:

- Prepare and publish reports on use of force data covering 2024 incidents.

- Continue to prepare and publish annual reports on community policing, responses to First Amendment activity, and sexual assault investigations.

- Continue to prepare regular, periodic reports on misconduct complaints and investigations, interactions with individuals in crisis, and arrests that result in release without charge.

- Begin preparing quarterly reports on stops, searches and arrests data once the new Record Management System is confirmed to be reliably capturing such data.

- Implement a new civilian complaint intake testing program intended to assess compliance with new misconduct complaint intake policies.

- Develop and begin conducting a comprehensive audit of its disciplinary process.

- Prepare and publish a report assessing its recruitment, hiring and retention efforts.

- Publish reports on the progress of BPD and the City in implementing recommendations in a previously published report analyzing deficiencies or "gaps" in its behavioral health

systems, including the City's progress toward completing the specific requirements imposed on the City under Paragraph 97 of the Consent Decree, as agreed to recently by the parties.

**B. Assessing Progress in the Eighth Year**

For each "deliverable" BPD and the City must complete under the Eighth-Year Plan, the Monitoring Team will assess whether it satisfies the requirements of the Consent Decree. In addition, the Eighth-Year Plan contains several explicit obligations for the Monitoring Team. Together with DOJ, the Monitoring Team will continue to observe in-service training and will provide BPD with routine technical assistance on training, data collection and analysis, misconduct investigations, sexual assault investigations, recruitment, retention, staffing, and promotions.

The Monitoring Team also will continue to conduct analyses aimed at determining whether, on the street and in practice, BPD and its officers are engaging in constitutional policing and making progress toward compliance with the Consent Decree's substantive requirements. This continues to be the most significant and most time-consuming work of the Monitoring Team going forward.

In the Seventh Year, the Monitoring Team published comprehensive reports on BPD's performance in five different areas: the Community Oversight Task Force, interactions with youth and coordination with Baltimore City School Police, First Amendment protected activities, training, officer misconduct investigations and discipline. The Monitoring Team also issued its Tenth Semiannual Report.

The Eighth-Year Plan calls for the Monitoring Team to complete other evaluations already underway, conduct and complete additional evaluations, and develop methodologies for conducting evaluations that will extend into Year Nine. These include the following:

- Complete ongoing evaluations of:

  - BPD's use of force (second assessment)

  - BPD's investigation of allegations of sexual assault (second assessment)

  - BPD's stops and searches and compliance with fair and impartial policing areas of the Consent Decree

- Finalize methodologies for and conduct evaluations of:

  - BPD's use of force (second assessment)

  - BPD's supervision of officers

  - BPD's interactions with individuals experiencing behavioral health crises (second assessment)

  - The City's compliance with paragraph 97 of the Consent Decree related to behavioral health

  - BPD's officer recruitment, hiring, and retention (second assessment)

  - BPD's investigation of officer misconduct and discipline (third assessment)

  - BPD community policing and engagement (second assessment)

  - BPD's interactions with youth (second assessment)

  - BPD's compliance with the technology area of the Consent Decree

- Finalize methodologies for:

  - BPD's third assessment of use of force (third assessment)

  - BPD's sexual assault investigations (third assessment)

The Monitoring Team will also review BPD's internal assessment of its sustainment of compliance of areas where the Court has found BPD in full and effective compliance:

  - BPD's compliance with the First Amendment protected activities of the Consent Decree

> BPD's coordination with Baltimore City School Police

Under the Eighth-Year Plan, the Monitoring Team also will plan its third survey to gauge community attitudes toward BPD.

Finally, the Monitoring Team will continue to report on BPD's progress in a third comprehensive reassessment report and in court hearings and public forums.

### C. Mechanisms for Community Participation and Engagement

The parties have recognized that if policing in Baltimore is to be "responsive to community priorities," the community must have a direct, ongoing role in the reforms that the Consent Decree requires. CD ¶ 1. The Court has similarly emphasized the importance of "ensur[ing] that the community's voice is heard throughout the implementation of the Consent Decree." ECF No. 68 at 11. The Consent Decree itself requires that the Plan "[e]stablish a method of communicating with the public and receiving public input" throughout the implementation process. CD ¶ 461(i).

Also, the proposed Eighth-Year Plan outlines some of the Monitoring Team's own engagement with the community. The Monitoring Team will publish detailed reports on BPD's progress toward satisfying the Consent Decree's requirements. Three times during the year—in April and October 2025, and in January 2026—the Monitoring Team will hold community meetings, which will be paired with formal presentations to the Court regarding BPD's progress.

In addition to these Consent Decree-mandated engagements, the Monitoring Team will continue its community outreach efforts by attending meetings with community-based organizations (including community associations, faith-based organizations, and advocacy groups, among others); hosting Facebook Live chats, as well as more intimate discussions through announced appearances in city neighborhoods; using its website (www.bpdmonitor.com), press releases, e-mail account (info@bpdmonitor.com), and Facebook

11

(https://www.facebook/bpdmonitor/) and X (https://X.com/BPDmonitor) accounts to communicate regularly about Consent Decree-related issues; and relying on its team of neighborhood liaisons to engage in routine discussions with both individual community members and community groups about the Consent Decree process and BPD. The neighborhood liaisons provide Baltimoreans access to the Monitoring Team that is both localized and familiar.

## V.     ADDITIONAL ELEMENTS OF THE PROPOSED EIGHTH-YEAR PLAN

### A.     Required Protocols for Communication with BPD and the Parties

The Eighth-Year Plan implicitly establishes a protocol for Monitoring Team communications with BPD, the City, and DOJ, as the Consent Decree requires. *See* CD ¶ 461(h). For each deliverable in the Eighth-Year Plan, there is a prescribed give-and-take involving the Monitoring Team and the parties. In addition, while the Monitoring Team may communicate with only one party to facilitate compliance logistics and administration as needed, the Monitoring Team and the parties agree that the compliance process is a collaborative one, so for any meetings, telephone calls or electronic communications that address how BPD is expected to achieve compliance, the Monitoring Team will include all parties.

### B.     Roles and Responsibilities of Monitoring Team Members

The Monitoring Team responsible for assessing BPD's compliance with the Consent Decree—and for creating a monitoring plan to facilitate that assessment—includes specialists in policing and police reform, civil rights enforcement, psychology, social science, organizational change, data and technology, and community engagement.

The leadership of the Monitoring Team includes Kenneth Thompson, the Lead Monitor; Charles Ramsey, Principal Deputy Monitor; Theron Bowman, Deputy Monitor; Hassan Aden, Deputy Monitor; and Evan Shea, Deputy Monitor. Mr. Thompson oversees the entire project and

is the final decision-maker for the Team. Mr. Ramsey assists Mr. Thompson in his general oversight role. So does Mr. Shea, who is also the principal drafter of the Monitoring Team's public reports, manages the bulk of the Monitoring Team's administration, and is a member of the Monitoring Team's community engagement, impartial policing, training, First Amendment-protected activities, assessments, and stops/searches/arrests subgroups. Mr. Bowman and Mr. Aden are also responsible for directly overseeing Team responsibilities in certain areas. Mr. Bowman manages Monitoring Team responsibilities for policies (generally), stops/searches/arrests, interactions with people with behavioral health disabilities and in crisis, sexual assault investigations, community policing, recruitment, and technology. Mr. Aden manages Monitoring Team responsibilities for misconduct investigations and discipline, use of force, transportation of persons in custody, supervision, training, interactions with youth, coordination with school police, early intervention systems, staffing and promotions, and officer assistance and support.

Other active team members include Matthew Barge, Crime and Justice Institute ("CJI") staff, Jessica Drake, Dr. Randy Dupont, Emily Gunston, Erin Pilnyak, Maggie Goodrich, Nola Joyce, Wanda Watts, Tracey Meares, Sean Smoot, Roberto Villasenor, Christine Cole, and Gabriela Wasileski.

As paragraph 461(g) of the Consent Decree requires, the roles of each Monitoring Team member are set forth in the following chart:

|  | Team Lead | Other Team Members Assigned |
|---|---|---|
| **Community Engagement** | Chuck Ramsey | Wanda Watts (primary liaison)<br>Jessica Drake<br>Hassan Aden<br>Evan Shea |
| **Community Policing** | Chuck Ramsey | Nola Joyce |

13

| | | |
|---|---|---|
| **Stops, Searches, Arrests, and Voluntary Police-Community Interactions** | Theron Bowman | Tracey Meares<br>Evan Shea |
| **Impartial Policing** | Tracey Meares | |
| **Responding to and Interacting with People with Behavioral Health Disabilities or in Crisis** | Randy Dupont | Roberto Villasenor |
| **Use of Force** | Roberto Villasenor | Matthew Barge<br>Chuck Ramsey<br>Hassan Aden<br>Theron Bowman<br>Nola Joyce<br>Roberto Villasenor<br>Kathleen O'Toole<br>Sean Smoot |
| **Interactions with Youth and Coordination with Baltimore School Police** | Roberto Villasenor<br>Randy Dupont | |
| **Transportation of Persons in Custody** | Roberto Villasenor | Sean Smoot |
| **First Amendment Protected Activities** | Evan Shea | Chuck Ramsey |
| **Handling of Reports of Sexual Assault** | Nola Joyce | Chuck Ramsey<br>Hassan Aden<br>Theron Bowman<br>Roberto Villasenor |
| **Technology** | Maggie Goodrich | |
| **Policies (Coordination)** | Theron Bowman | |
| **Training** | Matthew Barge | Roberto Villasenor |
| **Supervision (including Field Training Officer Program and Early Intervention System)** | Sean Smoot | Nola Joyce<br>Maggie Goodrich (EIS) |
| **Misconduct Investigations and Discipline** | Hassan Aden | Matthew Barge |
| **Recruitment, Hiring, and Retention** | Sean Smoot | Nola Joyce |
| **Staffing, Performance Evaluations, and Promotions** | Nola Joyce | Sean Smoot |
| **Officer Assistance and Support** | Sean Smoot | Roberto Villasenor |

14

| | | |
|---|---|---|
| **Compliance Reviews and Outcome Assessments** | Matthew Barge | Evan Shea<br>Erin Pilnyak<br>Emily Gunston<br>Christine Cole<br>Gabriela Wasileski<br>Hassan Aden |

## V.   CONCLUSION

For the foregoing reasons, the Monitoring Team, with the parties' concurrence, requests that the Court approve the proposed Eighth-Year Monitoring Plan.

A proposed Order is attached.

Respectfully submitted,

_____/s/_____
Kenneth Thompson, Monitor
VENABLE LLP
750 E. Pratt Street
Baltimore, MD  21202
Ken.thompson@bpdmonitor.com
(410) 244-7400