

# BALTIMORE POLICE DEPARTMENT
# CONSENT DECREE MONITORING TEAM

### COMPLIANCE & OUTCOME ASSESSMENT
### REGARDING BPD TECHNOLOGY

October 2025



**CD**
Monitoring
Team

# TABLE OF CONTENTS

I.     EXECUTIVE SUMMARY .................................................................................1

II.     BACKGROUND, APPROACH & METHODOLOGY ....................................2

     A.     Evaluating Compliance ......................................................................2

     B.     The Role and Purpose of this Assessment ........................................3

     C.     Methodology ......................................................................................6

          1.     Review of Resource Study and Plan ......................................6

          2.     Assessment of Compliance with General Technology Requirements ..........................................................................6

III.     COMPLIANCE ASSESSMENT ....................................................................7

     A.     Paragraph 267 ...................................................................................7

     B.     Paragraph 268 ...................................................................................7

     C.     Paragraph 269 ...................................................................................8

     D.     Paragraph 270 ...................................................................................9

     E.     Paragraph 271 .................................................................................11

     F.     Paragraph 272 .................................................................................11

     G.     Paragraph 273 .................................................................................12

     H.     Paragraph 274 .................................................................................13

     I.     Paragraph 275 .................................................................................13

     J.     Paragraph 276 .................................................................................13

     K.     Paragraph 277 .................................................................................14

     L.     Paragraph 278 .................................................................................14

IV.     SUMMARY OF COMPLIANCE DETERMINATIONS .................................16

**APPENDICES**

A.    Technology Resource Study (Source: BPD)........................................................................17

B.    Technology Resource Plan (Source: BPD).........................................................................17

## I.    EXECUTIVE SUMMARY

Section XII of the Consent Decree ("CD") requires the Baltimore Police Department ("BPD") to "provide its officers with the Technology necessary to implement the Material Requirements of this Agreement . . .." Paragraphs 267-278 then outline the Consent Decree's technology requirements.

BPD and the City previously completed and submitted a Resource Study (CD ¶ 268, 270), which identified current BPD systems, described the current state of those systems, and made preliminary recommendations for improvements. Following completion of the Resource Study, BPD and the City produced and submitted a Resource Plan (CD ¶¶ 269-70, 272), and the Monitoring Team filed its notice of approval on December 1, 2018. See ECF No. 164. The Resource Plan, which must be updated annually (CD ¶ 275), addressed how BPD will provide the necessary computer equipment and access required for personnel to discharge their duties, acquire a centralized records management system, and ultimately develop of an Early Intervention System ("EIS"). BPD is required to use its best efforts to implement the Resource Plan (CD ¶ 274).

The Monitoring Team has now conducted an assessment of BPD's compliance with these requirements. This review has determined that the Department has come far. Using the compliance scoring framework the Monitoring Team has adopted, BPD is in "Initial Compliance" with respect to every requirement of the Consent Decree section relating to technology (CD ¶¶ 267–278), and thus the Monitoring Team will recommend that the Court find BPD in "Full and Effective Compliance" with this area. If the Court so finds, BPD will begin a one-year sustainment period. If BPD establishes that it has remained in compliance during that one-year period, it can ask the Court to find it in "Sustained Compliance" with this area and ask that the Consent Decree, and court supervision, be terminated as to the technology requirements.

To assess compliance with the Consent Decree's technology requirements, the Monitoring Team conducted evaluations of BPD's Technology Resource Study and Technology Resource Plan. The Monitoring Team also reviewed BPD's body worn camera policy, and its "New Technology Initiatives" web page, as well as BPD's regular technology status reports to the Court.

The Monitoring Team has found that BPD has:

- Completed a Resource Study, which includes an extensive IT inventory and preliminary findings.
- Developed a Resource Plan, which contains a thorough IT roadmap, including priorities, costs, level of effort, and intended goals and benefits of each initiative.
- Modernized its IT infrastructure and several key data systems necessary to support the collection and review of data.
- Issued a body worn camera policy that meets the requirements of the Consent Decree.

- Launched a "New Technology Initiatives" web page that describes for the public any new equipment and technology to be deployed and how it is intended to be used, along with any relevant procurement information.

## II.    BACKGROUND, APPROACH & METHODOLOGY

### A.    Evaluating Compliance

The Monitoring Team is charged with assessing whether BPD is in compliance with the requirements of the Consent Decree. The Monitoring Team, in collaboration with BPD and the United States Department of Justice ("DOJ" or "the Department of Justice"), has previously adopted the following standardized way of characterizing BPD's current compliance status:

**0 – Not Assessed**: The Monitoring Team has yet to assess if the City/Department has made progress or complied with the requirement.

**1 – Not Started**: The City/Department has not yet demonstrated progress toward implementing the requirement, possibly in order to work on other, necessary projects.

**2 – Planning/Policy Phase:** The City/Department is addressing the planning and/or policy provisions for the requirement.

**3 – Training Phase**: The City/Department is addressing the training provisions for the requirement, based on approved policy.

**4 – Implementation Phase:** The City/Department is in the implementation phase for the requirement, having developed any required plan or policy and conducted any required training, but has not yet demonstrated compliance with the requirement.

> **4a – Implementation - Not Assessed:** The City/Department has initiated the implementation phase for the requirement, but the Monitoring Team has not yet assessed the City/Department's progress in implementation.

> **4b – Implementation - Off Track:** The City/Department is not making satisfactory progress toward compliance with the requirement.

> **4c – Implementation - On Track:** The City/Department is making satisfactory progress toward compliance with the requirement.

> **4d – Implementation - Initial Compliance:** The City/Department has demonstrated compliance with the requirement but has not sustained

compliance for the required time period specified in Paragraph 504 of the Consent Decree.

**5a – Full and Effective Compliance:** The City/Department has demonstrated compliance with all requirements in a Consent Decree section but has not yet sustained compliance for the time period specified in paragraph 504 of the Consent Decree. This score applies only to an entire Consent Decree section, not to individual requirements within a section.

**5b – Sustained Compliance**: The City/Department has demonstrated sustained compliance with all requirements in a Consent Decree section by consistently adhering to all such requirements for the time period specified in paragraph 504 of the Consent Decree.

### B.    The Role and Purpose of this Assessment

The Monitoring Team has previously described the two major types of assessment that the Consent Decree requires: (1) "Compliance Reviews," and (2) "Outcome Assessments." Compliance Reviews, which almost always have qualitative elements and may also have quantitative elements, are evaluations of BPD's performance across time, incidents, cases, events, and officers that are conducted to determine if BPD is adhering in practice to the specific requirements of the Consent Decree.

In this way, Compliance Reviews consider whether the Department is meaningfully doing what the Decree requires. Within the classification scheme that the Monitoring Team has previously adopted, the purpose of this and other Compliance Reviews is to determine whether BPD is in initial compliance with each of the Consent Decree's requirements.

Outcome Assessments are largely quantitative assessments that are "designed to determine whether the reforms required by the Consent Decree in each area are having a tangible, measurable impact—whether, independent and apart from BPD's progress toward compliance with Consent Decree requirements, policing is changing in the real world."[1]

As Paragraph 506 of the Consent Decree describes:

To achieve "Full and Effective Compliance," the City and BPD must demonstrate that they have (a) incorporated all Material Requirements of this Agreement into policy, trained relevant personnel as necessary to fulfill their responsibilities pursuant to the material requirements, and ensured that each material requirement is being carried out in practice; and (b) shown sustained and continuing

---

[1] Consent Decree, *United States of America v. Police Department of Baltimore City, et al.*, Case No. 1:17-CV-00099-JKB (D. Md. Jan. 12, 2017), https://www.justice.gov/opa/file/925056/download.

improvement in constitutional policing as demonstrated by the Agreement's Outcome Assessments.

A core issue in determining whether BPD has reached "initial" compliance with any material requirement of the Consent Decree is determining whether that requirement "is being carried out in practice" by BPD. To that end, the Monitoring Team considers the following:

1. **The quality of BPD's performance across a material span of time, number of incidents/events, and number of officers.** Successfully carrying out a requirement in practice requires more than meeting expectations on one day, in one case or event, or for one officer. Instead, it requires adhering to Decree requirements across a material span of time, number of incidents, and number of officers. In this way, isolated compliance does not establish "initial compliance" in practice. At the same time, however, isolated non-compliance does not, by itself, eliminate the possibility of systemic compliance. The issue is whether, across time, events, and people, BPD is, in aggregate, sufficiently doing what the Decree requires.

2. **The severity or significance of deviations from Consent Decree requirements, BPD policy, and/or law.** In its focus on accountability, supervision, and mechanisms for fostering critical self-analysis within BPD, the Consent Decree contemplates that BPD must remedy deficiencies in departmental and officer performance. Consequently, the Monitoring Team in its compliance reviews considers not simply whether BPD's performance has deviated in some instances from the Decree's requirements but also the severity or significance of that deviation.

3. **The extent to which BPD is identifying and appropriately addressing problematic performance.** Consistent with the Decree, the Monitoring Team's compliance reviews will consider whether, when BPD has deviated from policy, law, or Decree requirements, the Department has identified the deviation and, if so, if it has appropriately addressed the issue. With respect to Consent Decree implementation and meaningful change, the Department is in a different place if a policy deviation is identified and appropriately addressed than if the deviation goes unnoticed and unaddressed.

4. **BPD's progress over time.** Where possible, the Monitoring Team aims to situate its evaluation of BPD's performance in terms of progress over time. Steady improvement over time suggests positive, meaningful adoption of Consent Decree requirements in a way that erratic swings in performance over time may not.

Courts regularly apply multi-factor approaches where the application of determinative, bright-line rules are impossible, do not adequately incorporate the array of relevant circumstances at issue, or

fail to adequately address competing considerations.[2] Even as the test articulated above requires different considerations to be weighed together, the test is an "objective" one because the Monitoring Team "must explain how they derived their conclusions from the verifiable facts."[3]

In applying this multi-factor test for compliance, the first factor—the quality of BPD's performance across a material span of time, number of incidents/events, and number of officers—is the initial, threshold inquiry. If BPD and its officers' performance is not what it should be across a sufficient number or portion of relevant circumstances, then things like progress over time or BPD's identification of the issues are unlikely to cure the basic deficiencies with performance. For example, if BPD meets some Decree requirement in only 25% of cases, the fact that it may have marked an improvement over time would be unlikely to put the Department into compliance with the requirement.

Although the multi-factor test for compliance works to ensure that all relevant objective factors are reasonably weighed, the Monitoring Team seeks to provide guidance to the Department and to the community about the benchmarks that it expects and how various levels of BPD performance may shape compliance determinations.

As a working standard, the Monitoring Team considers a compliance rate with any relevant requirement of 85% or above as possibly, though certainly not conclusively or even presumptively, consistent with initial compliance. In such instances, the Team weighs the other factors (severity of deviations, BPD's identification of noncompliance, and progress over time). Where the Team determines that BPD has adhered to expectations in 95% or more of relevant circumstances, initial compliance will be found unless one of the other factors—severity of deviations, Department identification of noncompliance, and progress over time—starkly point in the other direction.

On the other hand, where BPD has adhered to expectations less than 85% of the time, initial compliance will not be certified unless one of the other factors points definitively in a positive direction. For instance, if BPD complied with requirements in 80% of relevant circumstances but the Monitoring Team could certify that the significance or severity of instances where requirements were not followed was relatively minimal, that BPD identified and took appropriate corrective action in instances where requirements were not followed, and the Department had made and maintained progress over time, then finding initial compliance with the Decree requirement may be possible.

---

[2] *See, e.g.*, *Murr v. Wisconsin*, 582 U.S. __ (2017) (adopting a multi-factor test for determining whether governmental regulations effectuated a decline in the value of private property so as to be considered a government taking under the Fifth Amendment); *EBay v. MercExchange*, 547 U.S. 388 (2006) (applying four-factor test to determinations about permanent injunctive relief in disputes arising under the Patent Act); *Mathews v. Eldridge*, 424 U.S. 319 (1976) (articulating three factors for courts to consider when determining whether additional governmental and/or judicial procedures are necessary to satisfy the Due Process Clause).
[3] James G. Wilson, "Surveying the 'Forms of Doctrine' on the Bright Line Balancing Test Continuum," 27 *Ariz. St. L.J.* 773, 802 (1995).

Additionally, some important requirements apply to, or are activated by, a relatively more limited number of encounters, incidents, or circumstances. Where the absolute number of instances where the requirement applies becomes lower, the application of the percentage-based rules of thumb for determining compliance becomes less useful.

Ultimately, to establish initial compliance with the Consent Decree's provisions and to sustain "full and effective" compliance pursuant to Paragraph 506, BPD must do more than show that it has adopted the pertinent policies, procedures, and protocols. Instead, it must demonstrate through officers' actions on the street that, as an agency, it is complying with the policies. Otherwise, the reforms the Consent Decree requires would be nothing more than "paper" reforms, with no obligation to police constitutionally in actuality.

The following report outlines the methodology and results of the Monitoring Team's Compliance Review of the technology requirements of the Consent Decree. Consistent with the findings from DOJ's initial investigation, and the pertinent paragraphs of the Consent Decree, this assessment will cover compliance with the central requirements in this area (¶¶ 267–278).

### C.    Methodology

This Technology Assessment and Compliance Review considers BPD's compliance with the Consent Decree's technology requirements. The assessment evaluated compliance in the following ways.

#### 1.    *Review of Resource Study and Plan*

BPD and the City previously completed and submitted a Resource Study (CD ¶¶ 268, 270), which identified current BPD systems, described the current state of those systems, and made preliminary recommendations for improvements.

Following completion of the Resource Study, BPD and the City produced and submitted a Resource Plan (CD ¶¶ 269-70, 272), and the Monitoring Team filed its notice of approval on December 1, 2018. See ECF No. 164.

#### 2.    *Assessment of Compliance with General Technology Requirements*

After reviewing BPD's approach to technology and BPD's publishing and continued update of the Technology Resource Plan, this assessment reviewed BPD compliance with the Consent Decree's other general technology requirements. This assessment included a review of BPD's body worn camera policy, as well as a review of BPD's New Technology Initiatives web page.

### III.    COMPLIANCE ASSESSMENT

#### A.    Paragraph 267

*BPD will provide its officers with the Technology necessary to implement the Material Requirements of this Agreement, as set forth in this Section. The Parties agree that the data collection and review required by this Agreement is dependent upon BPD acquiring or developing the appropriate technology for such data collection and review.*

Paragraph 267 requires BPD to deploy technology for its officers to enable the implementation of the material requirements of the Consent Decree. From the beginning of this effort, BPD, the Monitoring Team, DOJ, and the Court all agreed that many of the technology requirements in the Consent Decree are critical for BPD to complete the data collection and review required by the Consent Decree.

To that end, BPD has been committed to modernizing its technology infrastructure, equipment, and data systems to support the collection and review of data. Early on in its efforts, BPD upgraded its IAPro platform (a program used to document and track misconduct complaints and use of force investigations) to better support the collection and review of data related to its administrative investigations. Later, BPD focused on procuring and implementing a modern RMS to document law enforcement encounters with members of the community. Subsequently, BPD implemented case management capabilities to support criminal investigations. Most recently, BPD procured a modern EIS software to meet the requirements of the Consent Decree related to EIS.[4]

Thus, the monitoring team concludes that **BPD and the City have achieved Initial Compliance (4d) with paragraph 267.**

#### B.    Paragraph 268

*Within the first year of the Effective Date of the Agreement, BPD will complete a comprehensive study of the Technology (the "Resource Study") necessary to satisfy the Material Requirements of this Agreement. The design, objectives, and deadline for completion of the Resource Study shall be set forth in the Monitoring Plan.*

Paragraph 268 requires BPD to conduct a comprehensive resource study on the technology required to comply with the requirements of the Consent Decree. This study was to ultimately inform a resource plan to procure and implement that technology. To complete the resource study, BPD worked with the National Police Foundation ("NPF"). In late 2017 through early 2018, BPD

---

[4] The Consent Decree requirements related to EIS are contained in the Supervision section of the Decree. *See* CD ¶¶ 312-327.

and the NPF, "conducted interviews and observed business processes, reviewed departmental policies and other process documentation, inventoried information systems, and examined open source media related to BPD and their use of technology." (Resource Study, June 8, 2018 at 5).

The NPF reviewed the various IT solutions and data systems that BPD had in place, covering areas such as 9-1-1 and computer aided dispatch, incident reporting, case management, administrative investigations, human resources, training, and equipment inventory.

The assessment team ultimately developed an extensive inventory of BPD's technology and made several findings and observations.

> Finding 1. BPD did not have a central authority that could advocate for sound IT decision making throughout the department.

> Finding 2. Siloed systems created disparate information and difficulty integrating data sets, both within the department and with Baltimore City and Maryland State systems.

> Finding 3. IT initiatives suffered from a lack of funding that may affect hardware.

> Finding 4. Training was lost over time creating distrust in systems.

> Finding 5. BPD lacked a data retention policy.

> Finding 6. Over time records management functions and crime analysis were centralized, but since district commanders still sought updated and easily accessible information, some functions were capable of being replicated.

BPD and the City submitted the completed Resource Study in 2018, which was approved by DOJ and the Monitoring Team. The Monitoring Team filed a notice of approval of the Resource Plan on June 22, 2018. *See* ECF No. 116. **BPD and the City have achieved Initial Compliance (4d) with paragraph 268.**

### C.    Paragraph 269

*BPD will develop a resource plan ("Resource Plan") for adopting the Technology necessary to satisfy the Material Requirements of this Agreement. The deadline for submitting the Resource Plan shall be set forth in the Monitoring Plan.*

Paragraph 269 requires that the City and BPD develop a Resource Plan that lays out how BPD will procure and implement the technology identified in the Resource Study needed to comply with the

requirements of the Consent Decree. In 2018, BPD and the City engaged Gartner Consulting to assist with the development of a Resource Plan. BPD and the City ultimately produced and submitted a Resource Plan (CD ¶ 269-70, 272), and the Monitoring Team filed its notice of approval on December 1, 2018. *See* ECF No. 164.

The Resource Plan identified specific IT system needs (e.g., Records Management System, administrative systems), and addressed other foundational business and management needs, including the need for proper IT governance, organizational change management, and IT staffing and resources. The Resource Plan also thoroughly addressed data management, governance and integration.

Ultimately, the Resource Plan addressed all IT priorities and detailed an IT Strategic Roadmap. Based on the development of the Resource Plan and the Monitoring Team approval in December 2018, BPD and the City **have achieved Initial Compliance (4d) with paragraph 269.**

### D.    Paragraph 270

*The Resource Study and the Resource Plan shall address how BPD can best and most cost-effectively:*
> *a. Provide BPD personnel with an adequate number of computers or equivalent electronic devices for accessing and processing data as necessary to discharge their duties;*
> *b. Provide BPD personnel with access to law enforcement databases as necessary to discharge their duties, containing:*
>> *i. Basic information about the civilians with whom they interact;*
>> *ii. The call history associated with the locations to which they are responding;*
>> *iii. Warrant and driver's license information;*
>> *iv. Information concerning restraining orders.*
> *c. Create a centralized data and records management system that is:*
>> *i. Capable of storing, in an easily searchable manner, all data required by this Agreement;*
>> *ii. Capable of using unique numbers or other identifiers to track all officer activities and supervisory reviews that are required by this Agreement. For example, the system shall be capable of using a single unique identifier to identify all documents related to a pedestrian or vehicle Stop, any Search or Arrest connected to that Stop, any Use of Force connected to the Stop, Search, or Arrest, and all reviews, investigations, and complaints arising from a Stop, Search, Arrest, or Use of Force;*
> *d. Develop an Early Intervention System ("EIS") as described in Section XIII(E).*

Together, BPD's Resource Study and Resource Plan described all of the IT infrastructure improvements and an IT service delivery plan required to ensure the needs of its personnel would be met. *See* CD ¶ 270 a., 270 b. Specifically, Resource Plan initiative *4B – IT Service Delivery Optimization* called for an IT inventory to provide a central, consistent register of all IT assets to ensure BPD personnel will have the necessary equipment and resources to do their job. See ECF No. 164-1, *Resource Plan 2018*, Initiative 4B at 73.

The Resource Plan contained an application modernization plan that included a move to a modern, centralized Records Management System ("RMS"). *See* CD ¶ 270 b., 270 c. Application Modernization Initiative *5A-1 – RMS Modernization* includes goals to:

> ▪ *Plan and implement a new RMS to support BPD operational requirements for processes such as, but not limited to: incident reporting, incident tracking, bookings, arrests, warrants, case management and operational reporting.*
> ▪ *Migrate (and retire) the current Case Management into RMS, migrating legacy Lotus Notes data.*

*See* ECF No. 164-1, *Resource Plan 2018*, Initiative 5A-1 at 77.

The intended benefits of the RMS initiative were to consolidate legacy BPD systems into a single platform, to eliminate data silos, provide an improved user experience, and streamline the collection of data to reduce human error and improve data quality. Ultimately, the goal was to implement a modern platform to provide to officers with access to the data they need to discharge their duties in an effective and efficient manner. *See* CD ¶ 270 b., 270 c.

The Resource Plan also includes an initiative for the procurement and implementation of EIS software. *See* CD ¶ 270 d. Specifically, the Resource Plan lays out the goal to:

> *Modernize Early Intervention technology capabilities for the purposes of helping BPD meet the requirements of Consent Decree and addressing BPD future state requirements in terms of user experience, improved application functionality, alignment with the BPD data management plan, improved data sharing and implementing a suitable underlying solution platform.*

*See* ECF No. 164-1, *Resource Plan 2018*, Initiative 5C-3 at 87.

Based on the development of the Resource Study and publication of the Resource Plan in 2018, that included all the necessary components to ensure BPD could achieve compliance with the requirements of the Consent Decree, the BPD and the City **have achieved Initial Compliance**

(4d) with paragraph 270.

### E.     Paragraph 271

*In conjunction with the Monitor and with DOJ, BPD will ensure that its policy on body-worn cameras addresses the use of cameras, retention of videos, access and privacy issues, the use of recordings as evidence in force and complaint reviews, and the use of recordings for other criminal justice purposes (such as evidence in prosecutions or evidence required to be turned over to defense attorneys). At a minimum, BPD's body-worn camera policy will:*

> *a. Clearly state which officers are required to use body-worn cameras and under which circumstances;*
> *b. Specify the location(s) on the body where the camera should be worn;*
> *c. Require officers to articulate in writing their reasons for failing to record an activity that BPD policy otherwise requires to be recorded;*
> *d. Require officers to inform subjects that they are being recorded unless doing so would be unsafe, impractical, or impossible;*
> *e. Establish a protocol governing the download, supervisory review, and retention of body-worn camera recordings;*
> *f. Require officers to document the existence of any camera footage on all required reports, and require officers to report to their supervisor, and document in writing, any non-recorded event that should have been recorded under BPD policy, as well as any interruptions or terminations of recordings; and*
> *g. Require periodic random review and auditing of officers' videos to assess whether the officer activity was conducted consistent with law and BPD policy.*

In 2018, the BPD submitted its body worn camera policy to the Monitoring Team and DOJ for review and approval. After review and several revisions, the Parties ultimately agreed that the policy contained all the components required by the Consent Decree. The Monitoring Team submitted a notice of approval of the policy on September 5, 2018. *See* ECF No. 135.

Accordingly, because the Monitoring Team and DOJ have reviewed and approved the BPD body worn camera policy required by the Consent Decree, the Monitoring Team finds that **BPD is in Initial Compliance (4d) with Paragraph 271.**

### F.     Paragraph 272

*To the extent that BPD already provides, or is in the process of providing, the items specified above, nothing in this Agreement requires BPD to delay its procurement*

*or use of that technology. The Resource Plan shall identify any of the items specified in Paragraph 270 that BPD either (a) already provides or (b) is in the process of providing to officers. For technology that BPD is in process of providing, the Resource Plan shall indicate how BPD will finish acquiring or implementing the technology.*

Paragraph 272 requires BPD to take steps to determine how and when BPD will acquire and implement the technology required by paragraph 270. As described above, in the discussion regarding paragraph 270, the Resource Plan contains a plan for the procurement and implementation of all of the technology and equipment, systems, and platforms that the Consent Decree requires. In fact, for each initiative, a project charter details the key activities, estimated effort, timeframe, and cost, as well as any dependencies among project tasks that impact the sequence and timing of tasks and assumptions that might impact the project (e.g. assumptions regarding the availability of resources or funding).

Accordingly, because the Monitoring Team reviewed and approved the Resource Plan in 2018, and found it to include all of the elements required by the Consent Decree, the Monitoring Team finds that **BPD is in Initial Compliance (4d) with Paragraph 272.**

### G.    Paragraph 273

*BPD shall submit the Resource Plan to the Monitor and DOJ for review and approval based on the schedule set forth in the Monitoring Plan. DOJ and the Monitor shall assess whether the Resource Plan sets out a reasonable and cost-effective plan for complying with the Material Requirements of this Agreement. If an objection is noted by either DOJ or the Monitor, DOJ, the Monitor, and BPD shall meet and confer to resolve any objections. If the objections are not resolved, the Parties may seek relief from the Court.*

Paragraph 273 requires that BPD submit the Resource Plan to the Monitoring Team and DOJ so that both can assess whether the Resource Plan sets forth steps to comply with the material requirements of the Consent Decree in a reasonable and cost-effective manner. The Monitoring Team and DOJ were provided the Resource Plan in 2018 and, after taking time to comment and seek clarification on various components of the plan, communicated the requisite approval of the Resource Plan. *See* ECF No. 164.

Accordingly, because the Monitoring Team and DOJ have reviewed and approved BPD's Resource Plan and deemed it to be both reasonable and cost effective, the Monitoring Team finds that **BPD is in Initial Compliance (4d) with Paragraph 273.**

### H.    Paragraph 274

*BPD will employ its best efforts to implement the Resource Plan over the period*
*of time set forth in the approved Monitoring Plan.*

BPD has made great progress in implementing the Resource Plan over the past seven years.  In the early years, BPD focused on getting its foundation IT and infrastructure in place. BPD IT established IT governance and organizational change management processes, made infrastructure improvements, and upgraded aging systems, such as the IA Pro platform that tracks its administrative investigations. In later years, BPD successfully procured and implemented a new RMS, achieving NIBRS compliance and enabling robust data collection and reporting. Most recently, BPD has procured an EIS and is moving forward with the implementation.

BPD continues to use its best efforts to implement the Resource Plan. As such, the Monitoring Team finds that **BPD is in Initial Compliance (4d) with Paragraph 274.**

### I.    Paragraph 275

*BPD will annually update the Resource Plan to take into account the needs of BPD*
*regarding the Material Requirements of this Agreement.*

Since its publication in 2018, BPD has made annual updates to the Resource Plan. The updates have ensured the information in the Resource Plan reflects the current and relevant needs of BPD both globally, and regarding the material requirements of the Consent Decree. Most recently, the BPD updated the Resource Plan in early 2025 to reflect the current status of the recently implemented RMS and the ongoing implementation of the EIS.

Because BPD has annually updated its Resource Plan based on an assessment that considers the current needs of BPD, the Monitoring Team finds that BPD has achieved **Initial Compliance (4d) with Paragraph 275.**

### J.    Paragraph 276

*When acquiring any new type of equipment or technology that is used in*
*enforcement activities or oversight of such activities, including records*
*management systems, computers and mobile data terminals, service weapons and*
*less lethal weapons, and surveillance or tracking equipment, BPD shall timely*
*disclose to the public on its website or disclose to any civilian oversight entity*
*agreed upon by the Parties: (1) the type of new equipment or technology sought;*
*and (2) BPD's intended use of the equipment. BPD shall make these disclosures*
*prior to deploying the equipment or technology. The disclosure requirement shall*

13

*not apply when BPD is merely purchasing an additional quantity of an existing technology, such as additional patrol vehicles.*

Paragraph 276 requires BPD to inform the public of new equipment and technology that BPD intends to deploy. On June 14, 2021, BPD established a New Technology Initiatives web page, in compliance with paragraph 276. Since the inception of the web page, BPD has publicly disclosed its new equipment and technology prior to deployment. These disclosures have included new duty pistols, various investigative technologies, its new RMS, gunshot detection technology, unmanned aircraft systems, and its recently acquired EIS. The disclosures provide descriptions of the technologies and their intended use and hyperlinks to further detail on the various technology solutions.

Because BPD has regularly published information required by paragraph 276 regarding new equipment and technology and its intended use since 2021, the Monitoring Team finds that BPD is in **Initial Compliance (4d) with Paragraph 276.**

### K.    Paragraph 277

*For equipment or technology procured through the public process conducted by the Baltimore City Board of Estimates, BPD may satisfy the requirements of the preceding paragraph by identifying the new type of equipment or technology on BPD's website and providing a link to relevant procurement information maintained by the Board of Estimates.*

Since launching its New Technology Initiatives web page, in 2021, in compliance with paragraph 276, BPD has also included links to the Board of Estimates meeting agenda for any related procurement.

The Monitoring Team thus concludes that BPD is in **Initial Compliance (4d) with Paragraph 277 of the Consent Decree.**

### L.    Paragraph 278

*If BPD seeks to acquire or develop new technology without advising the public, BPD shall timely disclose the technology to DOJ and the Monitor and explain why BPD believes non-disclosure is necessary to achieve law enforcement objectives. If the Parties are unable to resolve any disagreement about the necessity of public non-disclosure of a particular technology, DOJ may seek an order from the Court to have the technology disclosed to the public.*

The Monitoring Team has not observed any instances where BPD sought to deploy new technology without advising the public. As such, the steps outlined in paragraph 278 for dispute resolution regarding non-disclosure have not been applicable. Accordingly, the Monitoring Team concludes that BPD is in **Initial Compliance (4d) with Paragraph 278 of the Consent Decree.**

## IV.    SUMMARY OF COMPLIANCE DETERMINATIONS

| ¶ | Requirement | Compliance Score (2025) |
|---|---|---|
| 267 | BPD will provide its officers with the Technology necessary to implement the Material Requirements of this Agreement, as set forth in this Section. The Parties agree that the data collection and review required by this Agreement is dependent upon BPD acquiring or developing the appropriate technology for such data collection and review. | **4d Initial Compliance** |
| 268 | Within the first year of the Effective Date of the Agreement, BPD will complete a comprehensive study of the Technology (the "Resource Study") necessary to satisfy the Material Requirements of this Agreement. The design, objectives, and deadline for completion of the Resource Study shall be set forth in the Monitoring Plan. | **4d Initial Compliance** |
| 269 | BPD will develop a resource plan ("Resource Plan") for adopting the Technology necessary to satisfy the Material Requirements of this Agreement. The deadline for submitting the Resource Plan shall be set forth in the Monitoring Plan. | **4d Initial Compliance** |
| 270 | The Resource Study and the Resource Plan shall address how BPD can best and most cost-effectively: <br> a. Provide BPD personnel with an adequate number of computers or equivalent electronic devices for accessing and processing data as necessary to discharge their duties; <br> b. Provide BPD personnel with access to law enforcement databases as necessary to discharge their duties, containing: <br> i. Basic information about the civilians with whom they interact; <br> ii. The call history associated with the locations to which they are responding; <br> iii. Warrant and driver's license information; <br> iv. Information concerning restraining orders. <br> c. Create a centralized data and records management system that is: <br> i. Capable of storing, in an easily searchable manner, all data required by this Agreement; <br> ii. Capable of using unique numbers or other identifiers to track all officer activities and | **4d Initial Compliance** |

| | | |
|---|---|---|
| | supervisory reviews that are required by this Agreement. For example, the system shall be capable of using a single unique identifier to identify all documents related to a pedestrian or vehicle Stop, any Search or Arrest connected to that Stop, any Use of Force connected to the Stop, Search, or Arrest, and all reviews, investigations, and complaints arising from a Stop, Search, Arrest, or Use of Force;<br>d. Develop an Early Intervention System ("EIS") as described in Section XIII(E). | |
| 271 | In conjunction with the Monitor and with DOJ, BPD will ensure that its policy on body-worn cameras addresses the use of cameras, retention of videos, access and privacy issues, the use of recordings as evidence in force and complaint reviews, and the use of recordings for other criminal justice purposes (such as evidence in prosecutions or evidence required to be turned over to defense attorneys). At a minimum, BPD's body-worn camera policy will:<br><br>a. Clearly state which officers are required to use body-worn cameras and under which circumstances;<br>b. Specify the location(s) on the body where the camera should be worn;<br>c. Require officers to articulate in writing their reasons for failing to record an activity that BPD policy otherwise requires to be recorded;<br>d. Require officers to inform subjects that they are being recorded unless doing so would be unsafe, impractical, or impossible;<br>e. Establish a protocol governing the download, supervisory review, and retention of body-worn camera recordings;<br>f. Require officers to document the existence of any camera footage on all required reports, and require officers to report to their supervisor, and document in writing, any non-recorded event that should have been recorded under BPD policy, as well as any interruptions or terminations of recordings; and<br>g. Require periodic random review and auditing of officers' videos to assess whether the officer activity was conducted consistent with law and BPD policy. | **4d Initial Compliance** |
| 272 | To the extent that BPD already provides, or is in the process of providing, the items specified above, nothing in this Agreement requires BPD to delay its procurement or use of that technology. The | **4d Initial Compliance** |

| | Resource Plan shall identify any of the items specified in Paragraph 270 that BPD either (a) already provides or (b) is in the process of providing to officers. For technology that BPD is in process of providing, the Resource Plan shall indicate how BPD will finish acquiring or implementing the technology. | |
|---|---|---|
| 273 | BPD shall submit the Resource Plan to the Monitor and DOJ for review and approval based on the schedule set forth in the Monitoring Plan. DOJ and the Monitor shall assess whether the Resource Plan sets out a reasonable and cost-effective plan for complying with the Material Requirements of this Agreement. If an objection is noted by either DOJ or the Monitor, DOJ, the Monitor, and BPD shall meet and confer to resolve any objections. If the objections are not resolved, the Parties may seek relief from the Court. | **4d Initial Compliance** |
| 274 | BPD will employ its best efforts to implement the Resource Plan over the period of time set forth in the approved Monitoring Plan. | **4d Initial Compliance** |
| 275 | BPD will annually update the Resource Plan to take into account the needs of BPD regarding the Material Requirements of this Agreement. | **4d Initial Compliance** |
| 276 | When acquiring any new type of equipment or technology that is used in enforcement activities or oversight of such activities, including records management systems, computers and mobile data terminals, service weapons and less lethal weapons, and surveillance or tracking equipment, BPD shall timely disclose to the public on its website or disclose to any civilian oversight entity agreed upon by the Parties: (1) the type of new equipment or technology sought; and (2) BPD's intended use of the equipment. BPD shall make these disclosures prior to deploying the equipment or technology. The disclosure requirement shall not apply when BPD is merely purchasing an additional quantity of an existing technology, such as additional patrol vehicles. | **4d Initial Compliance** |
| 277 | For equipment or technology procured through the public process conducted by the Baltimore City Board of Estimates, BPD may satisfy the requirements of the preceding paragraph by identifying the new type of equipment or technology on BPD's website and providing a link to relevant procurement information maintained by the Board of Estimates. | **4d Initial Compliance** |
| 278 | If BPD seeks to acquire or develop new technology without advising the public, BPD shall timely disclose the technology to DOJ and the Monitor and explain why BPD believes non-disclosure is necessary to achieve law enforcement objectives. If the Parties are unable to resolve any disagreement about the necessity of public non-disclosure of a particular technology, DOJ may seek an order from the Court to have the technology disclosed to the public. | **4d Initial Compliance** |

## APPENDICES

**A.  Technology Resource Study** (Source: BPD)
https://www.baltimorepolice.org/sites/default/files/General%20Website%20PDFs/BPD_Final_Technology_Inventory_Study_06-21-18.pdf

**B.  Technology Resource Plan** (Source: BPD)
https://www.baltimorepolice.org/sites/default/files/General%20Website%20PDFs/BPD_IT_Strategic_Plan_and_Roadmap.pdf