IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-17-0099 |
| BALTIMORE POLICE DEPARTMENT, et al., | * | |
| | * | |
| Defendants. | | |

*** 

## MEMORANDUM AND ORDER

Before the Court is the Parties' Joint Motion for Partial Termination. (ECF No. 899.) The Motion seeks that the Court find that the Mayor and City Council of Baltimore ("the City") and the Baltimore Police Department ("BPD") have sustained full and effective compliance for the required one-year sustainment period with respect to three sections of the Consent Decree: Community Oversight Task Force ("COTF"); First Amendment Protected Activities; and Coordination with Baltimore City School Police Force. (*Id.*) The Motion also seeks that the Court sever and then terminate those three sections of the Decree. (*Id.*)

For the reasons stated herein and in open court, the Court will grant the pending Motion. The Court finds that the City and BPD have sustained full and effective compliance for the requisite one-year period, and that these three sections of the Decree are severable. The Court will therefore terminate these three sections of the Decree.

## I.    Consent Decree Requirements

The Consent Decree provides that "[u]pon the Court's determination that the City and BPD have achieved Full and Effective Compliance with this Agreement as defined below and have maintained such compliance for at least one year for [certain sections of the Decree], and for at

least two years for [certain sections of the Decree], the Court will terminate the Agreement and dismiss the case." (Consent Decree ¶ 504.)

The Consent Decree provides that "[t]o achieve 'Full and Effective Compliance,' the City and BPD must demonstrate that they have (a) incorporated all Material Requirements of this [Consent Decree] into policy, trained relevant personnel as necessary to fulfill their responsibilities pursuant to the material requirements, and ensured that each material requirement is being carried out in practice; and (b) shown sustained and continuing improvement in constitutional policing as demonstrated by the [Consent Decree's] Outcome Assessments." (*Id.* ¶ 506.) While there is no "numerical test" to satisfy, BPD must demonstrate "substantial adherence" with the Decree's requirements, "continual improvement," and that "the overall purpose of the Material Requirements has been met." (*Id.*) A "Material Requirement" is defined as "[a] requirement of the [Consent Decree] that has a significant relationship to achieving the purposes of [the Consent Decree]." (*Id.* ¶ 511.aaa.) "BPD [] bear[s] the burden of demonstrating by a preponderance of the evidence its Full and Effective Compliance with [the Decree]." (*Id.* ¶ 493.)

Once the Court determines that Full and Effective Compliance has been reached, a one- or two-year sustainment period begins,[1] and Full and Effective Compliance must be maintained for that sustainment period. (*Id.* ¶¶ 504, 506.) After that period, "[t]he City and BPD may move the Court . . . to terminate [the Consent Decree] upon a showing by a preponderance of the evidence that BPD has reached Full and Effective Compliance and maintained that compliance according to the time periods set forth in Paragraph 504. The Parties may also agree to jointly ask the Court to terminate [the Consent Decree] at any time after BPD has been in Full and Effective compliance with [the Consent Decree] in accordance with Paragraph 504." (*Id.* ¶ 507.)

---

[1] The three sections at issue here have a one-year sustainment period.

2

To the extent that BPD and the City have reached Full and Effective Compliance and have complied with the requisite sustainment period with a part of the Consent Decree (as opposed to the Decree as a whole), the City and BPD may move to terminate just that part of the Decree. (*Id.* ¶ 508.) "To terminate a part of the Agreement, that part must be sufficiently severable from the other requirements of the Agreement that noncompliance with those other requirements does not implicate BPD's ability to police in accordance with federal law and this Agreement in the part to be terminated. In determining whether there is Full and Effective Compliance with a part of the Agreement, all the requirements of the Agreement may be assessed collectively to determine whether the intended outcome of the part has been achieved." (*Id.*) And "for any motion to terminate, the Court shall hold a hearing on the motion and the burden will be on the City and BPD to demonstrate that they are in Full and Effective Compliance with this Agreement or any severable part and have maintained such compliance in accordance with Paragraph 504." (*Id.* ¶ 510.)

## II. Background

After a hearing, and in a Memorandum and Order dated January 24, 2025, the Court concluded that BPD and the City reached Full and Effective Compliance with respect to COTF, First Amendment Protected Activities, and Coordination with Baltimore City School Police Force. (ECF No. 792.) After reviewing the parties' submissions and the Monitoring Team's reports, the Court concluded that Full and Effective Compliance had been demonstrated with respect to these topics. (*Id.*) The Court also concluded that the sustainment period would begin on January 25, 2025, and end on January 25, 2026. (*Id.*)

The Court set deadlines for BPD to provide self-assessment plans regarding First Amendment Protected Activities and Coordination with Baltimore City School Police Force to the

parties, the Monitor, and the Court.[2] (*Id.*) BPD and the City submitted sustainment plans to the Court that were reviewed and approved by the Department of Justice ("DOJ") and by the Monitoring Team. (ECF Nos. 798, 799.)

BPD and the City have now filed their final self-assessment reports (ECF Nos. 897, 901), and the parties have filed a Joint Motion for Partial Termination (ECF No. 899). In the Motion, they seek partial termination of the Consent Decree because they contend that BPD and the City have sustained full and effective compliance for one year with respect to COTF, First Amendment Protected Activities, and Coordination with Baltimore City School Police Force. (*Id.*) The Monitoring Team docketed its recommendation, in which it agrees that the Motion should be granted. (ECF No. 900.) The parties and the Monitoring Team also presented their views at a hearing on March 26, 2026.

## III. Analysis

The Court has carefully reviewed the submissions of the parties and the Monitoring Team, including BPD and the City's Sustainment Reports. The Court, accepting these representations, and upon on its own review of the evidence and the filings submitted by the parties and the Monitor, finds that BPD and the City have sustained Full and Effective Compliance for the requisite one-year period with respect to COTF, First Amendment Protected Activities, and Coordination with Baltimore City School Police Force. The Court also concludes that these three sections are sufficiently severable from the Decree as to warrant their termination from the Decree.

---

[2] Agreeing with the parties, the Court determined that because there were "no ongoing obligations with respect to the COTF provisions, . . . there [was] no need for the City and BPD to create a self-assessment plan" for this Section. (ECF No. 792 at 5 n.4.)

### A. Community Oversight Task Force

Section II of the Decree addresses the COTF. (Consent Decree ¶¶ 10–14.) The Decree required the COTF to be established "within 90 days of the Effective Date of the Agreement," and stated that it must consist of five members who were "representative of diverse communities in Baltimore." (*Id.* ¶ 11.) The COTF was designed to review how the civilian oversight system of BPD actually functioned, how it was meant to function, and what impediments to change existed. (*Id.* ¶ 12.) It was then empowered to "make recommendations based on that information." (*Id.*) The COTF concluded its work, and published a final report, in 2018. (ECF No. 136.)

The Court concluded in January 2025 that BPD had demonstrated that it reached Full and Effective Compliance with respect to this section of the Decree. (ECF No. 792.) Because the COTF had fulfilled all of its obligations, there were no further requirements for this Section of the Decree during the sustainment period. Therefore, the parties and the Monitoring Team agree that the COTF Section of the Decree is in sustained compliance. The Court now finds that BPD has sustained its compliance for the requisite one-year period and that this section of the Decree is sufficiently severable as to warrant termination. Additionally, the Court has already found that this Section is severable (*id.* at 6), and it reiterates that finding now. Thus, Section II of the Decree, governing the Community Oversight Task Force, will be terminated.

### B. First Amendment Protected Activities

Section X of the Decree addresses First Amendment Protected Activities. (Consent Decree ¶¶ 239–56.) This Section requires BPD to ensure that it is not infringing upon the First Amendment rights of the people of Baltimore. With respect to this topic too, the Court concluded in January 2025 that BPD had demonstrated that it reached Full and Effective Compliance with respect to this Section of the Decree. (ECF No. 792.) The Court now finds that BPD has sustained

5

that compliance for the requisite one-year period and that this Section of the Decree is sufficiently severable as to warrant termination.

BPD's self-assessment, as well as the briefing from the parties, reflects that BPD has maintained strong compliance scores throughout the sustainment period. (*See generally* ECF No. 897-1.) Baltimore saw a significant amount of protest activity between January 2025 and January 2026. But BPD was prepared. For major events, it created operational plans and it conducted after action reviews. (*Id.* at 12.) It also created a reference guide for commanders that instructed them on how to properly police during protests. (*Id.* at 21.) This guide emphasized de-escalation and protecting free speech. (*Id.*) This preparation by BPD paid off. BPD reported that there was not a single use of force or arrest at any major protest in 2025. (*Id.* at 19.)

To be sure, BPD was not perfect. For instance, the Department identified a small number of Disorderly Conduct and Failure to Obey arrests that may have involved a First Amendment policy violation. (*Id.* at 10.) And there were a few misconduct complaints relating to First Amendment protected activities. (*Id.* at 11.) But these cases—and there truly were very few of them—were immediately referred to the Public Integrity Division for further investigation. The Court does not expect, nor does the Consent Decree require, that BPD be perfect. As the Monitoring Team noted, BPD is a large agency, and it will always have officers who make mistakes. (ECF No. 900 at 3.) But the Sustainment Report demonstrates that BPD can identify and correct those errors. This proven ability to self-monitor is critical to the long-term success of the reforms being implemented at BPD.

Finally, the Court finds—and the parties agree—that this section is severable. Therefore, the Court concludes that, given BPD's sustained compliance, this Section of the Decree will be terminated.

6

### C. Coordination with Baltimore City School Police Force

Finally, Section XV of the Decree addresses Coordination with Baltimore City School Police Force. (Consent Decree ¶¶ 416–18.) This Section requires BPD to evaluate and enhance its coordination with the Baltimore City School Police Force. As with the other two Sections, the Court previously determined in January 2025 that BPD had achieved Full and Effective Compliance with respect to this Section. (ECF No. 792.) The Court now finds that BPD has successfully maintained compliance with respect to this Section for the requisite one-year period.

The relationship between BPD and the School Police is governed by a Memorandum of Understanding ("MOU"), in which BPD authorizes the School Police to exercise law enforcement powers in Baltimore City, under specific circumstances. (Consent Decree ¶ 416.) The Decree requires BPD to periodically evaluate its relationship with the School Police pursuant to the MOU. (*Id.* ¶ 417.) The current MOU between BPD and the School Police runs until April of this year. (ECF No. 901-1.) The Sustainment Plan called upon BPD to edit the MOU based on the findings from its latest assessments of its cooperation with the School Police. (ECF No. 798-1.) BPD and the School Police have now exchanged several rounds of edits, and they expect to finalize a revised MOU within the next month. (ECF No. 901-1.) Although the Sustainment Plan called for this to be completed by December 2025, this slight delay does not ultimately affect the Court's finding of sustained compliance. BPD has dutifully evaluated and intensified its cooperation with the School Police, and the revised MOU will see that this strong relationship continues for years to come.

Finally, as with the other two Sections, the Court finds—and the parties agree—that this section is severable. Accordingly, the Court concludes that BPD is in sustained compliance with this Section of the Decree, and it will be terminated.

## IV.  Conclusion

For the foregoing reasons, and for the reasons stated during the March 26, 2026, hearing, it is ORDERED that:

1. The Parties' Joint Motion for Partial Termination (ECF No. 899) is GRANTED, the Court having found that:

    A. The City and BPD have sustained Full and Effective Compliance for the requisite one-year period with respect to Community Oversight Task Force; First Amendment Protected Activities; and Coordination with Baltimore City School Police Force.

    B. Those sections are severable from the Decree.

2. The following provisions of the Decree are TERMINATED: (1) Community Oversight Task Force (Section II); (2) First Amendment Protected Activities (Section X); and (3) Coordination with Baltimore City School Police Force (Section XV).

DATED this 30 day of March, 2026.

BY THE COURT:

James K. Bredar
United States District Judge

8